# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

EDELSON PC, an Illinois professional
corporation, individually, and on behalf of all
others similarly situated,

        Plaintiff,

    v.

THE BANDAS LAW FIRM PC, a Texas
professional corporation, CHRISTOPHER
BANDAS, an individual, LAW OFFICES OF
DARRELL PALMER PC d/b/a DARRELL
PALMER LAW OFFICE, a suspended
California professional corporation, JOSEPH
DARRELL PALMER, an individual,
NOONAN PERILLO & THUT LTD., an
Illinois corporation, C. JEFFERY THUT, an
individual, GARY STEWART, an individual,
and JOHN DOES 1-20,

        Defendants.

Case No.  1:16-cv-11057

## MEMORANDUM IN SUPPORT OF CHRISTOPHER BANDAS AND THE BANDAS LAW FIRM PC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Darren VanPuymbrouck
Alexander Vesselinovitch
Matthew Connelly
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL  60606
312-360-6000
dvan@freeborn.com
avesselinovitch@freeborn.com
mconnelly@freeborn.com
*Attorneys for Christopher Bandas and the Bandas Law Firm PC*

# TABLE OF CONTENTS

**Page**

BACKGROUND ...................................................................................................1

STANDARD...........................................................................................................2

ARGUMENT..........................................................................................................2

I.     EDELSON FAILS TO STATE A CLAIM IN COUNT I UNDER RICO ...........2

     A.     Edelson's complaint does not allege a predicate act of a Hobbs Act
         violation .........................................................................................3

         1.     Threatening meritless litigation does not constitute
               extortion under  the Hobbs Act because it is not the
               wrongful use of fear ...................................................................3

         2.     The claim of right rule prevents any liability under the
               Hobbs Act.................................................................................7

     B.     The Illinois Attorney Act is not a predicate act of "racketeering
         activity."........................................................................................8

     C.     Edelson's complaint does not allege a predicate act of Wire Fraud ..........9

         1.     Litigation activities cannot form the basis for wire fraud .............9

         2.     Edelson cannot allege any reliance on the Bandas
                Defendants' allegedly fraudulent statement.................................11

         3.     Edelson fails to satisfy the heightened pleading
                requirements for fraud claims under Federal Rule of Civil
                Procedure 9(b) .........................................................................12

     D.     Edelson fails to plead a "pattern" of racketeering activity .....................14

     E.     Edelson's complaint does not allege a RICO enterprise .........................15

II.    THE COURT MUST DISMISS THE COMPLAINT UNDER THE
     NOERR-PENNINGTON DOCTRINE...............................................................17

III.   EDELSON CANNOT BRING A CLAIM UNDER THE ALL WRITS
     ACT....................................................................................................................20

IV.    THE COURT SHOULD NOT EXERCISE PENDENT JURISDICTION
     OVER THE STATE LAW ABUSE OF PROCESS CLAIM .............................21

CONCLUSION......................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Associates In Adolescent Psych., S.C. v. Home Life Ins. Co.*, 941 F.2d 561 (7th Cir. 1991)........11

*Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633 (7th Cir. 2015)....................................9, 16

*California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)...........................18

*Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014)....................................12

*Carthan-Ragland v. Stand. Bank and Trust*, 2012 WL 1658244 (N.D. Ill. May 11, 2012)...........9

*Cement-Lock v. Gas Tech. Inst.*, 2005 WL 2420374 (N.D. Ill. Sept. 30, 2005)..........................17

*Cement-Lock v. Gas Tech. Inst.*, 523 F. Supp. 2d 827 (N.D. Ill. 2007)......................................2

*ChampionsWorld, LLC v. U.S. Soccer Federation, Inc.*, 890 F. Supp. 2d 912 (N.D. Ill. 2012).......................................................................................................................7

*Clark v. Gannett Co., Inc.*, Case No. 16-CH-06603 ............................................................passim

*Community Nat. Bank in Monmouth v. McCrery*, 509 N.E.2d 122 (Ill. App. 1987)...................22

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014) .........................................................................................................4

*Curtis & Associates, P.C. v. L. Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153 (E.D. N.Y. 2010).....................................................................................................10

*Deck v. Engineered Laminates*, 349 F.3d 1253 (10th Cir. 2003) ...........................................4, 5

*Dias v. Bogins*, 134 F.3d 361 (1st Cir. 1998) .........................................................................4

*Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839 (N.D. Ill. 2013) ....................9, 11

*E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 13 (D.D.C. 2014)....................................3

*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815 (7th Cir. 2016).. 14, 15

*Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983 (7th Cir. 2010)....................21

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ..............................................................7

*First P. Bancorp, Inc. v. Bro*, 847 F.2d 542 (9th Cir. 1988)....................................................4

*Frayne v. Chicago 2016*, 2009 WL 3229625 (N.D. Ill. Oct. 2, 2009)........................................20

*Glamour Girlz, LLC v. D.M. Merch., Inc.*, 2012 WL 6004233 (N.D. Ill. Sept. 24, 2012) ............7

*Guaranteed Rate, Inc. v. Barr*, 912 F. Supp.2d 671 (N.D. Ill. 2012) ..........................................2

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989)..............................................................8, 14

*Holiday Magic, Inc. v. Scott*, 282 N.E.2d 452 (1972)...........................................................22, 23

*I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984)....................................4, 5

*In re Campbell*, 264 F.3d 730 (7th Cir. 2001) ......................................................................21

*In re Innovatio IP Ventures, LLC Pat. Litig.*, 921 F. Supp. 2d 903 (N.D. Ill. 2013)...................17

*Intl. Broth. of Teamsters, Loc. 734 Health and Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818 (7th Cir. 1999) ..................................................................................................18

*Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466 (7th Cir. 2007)........................................14

*Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321 (7th Cir. 1994) ....................................................12

*Kerik v. Tacopina*, 64 F. Supp. 3d 542, 562 (S.D. N.Y. 2014) ..................................................6

*Lockhart v. HSBC Fin. Corp.*, 2014 WL 3811002 (N.D. Ill. Aug. 1, 2014)..................................5

*Matter of VMS Securities Litig.*, 103 F.3d 1317 (7th Cir. 1996) ..............................................21

*Meier v. Musburger*, 588 F. Supp. 2d 883 (N.D. Ill. 2008) .................................................9, 15

*Menzies v. Seyfarth Shaw LLP*, 2016 WL 3854626 (N.D. Ill. July 15, 2016) ..............................2

*Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834 (7th Cir. 2011)................................18

*Michael v. Letchinger*, 2011 WL 3471082 (N.D. Ill. 2011) ...................................................... 19

*Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986) .................................................. 14

*Neurosurgery and Spine Surgery, S.C. v. Goldman*, 790 N.E.2d 925 (Ill. App. 2003) ............... 22

*Nino v. Johnson*, 2016 WL 6995563 (N.D. Ill. Nov. 30, 2016) ................................................ 21

*Nowicki v. Delao*, 506 Fed. App'x. 514 (7th Cir. 2013) ........................................................... 5

*Prof. Real Est. Inv'rs, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993) .......... 18, 19

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ....................................................................... 15

*Roger Whitmore's Auto. Servs., Inc. v. Lake Cty., Illinois*, 424 F.3d 659 (7th Cir. 2005) ........... 14

*Rubloff Dev. Group, Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732 (N.D. Ill. 2012) ........ 18, 19, 20

*Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003) ............................ 6, 7

*Shaun Fauley, Sabon, Inc. v. Metropolitan Life Ins. Co.*, 2016 IL. App. ................................... 8

*Singh v. NYCTL 2009-A Trust*, 2016 WL 3962009 (S.D. N.Y. July 20, 2016) ........................... 13

*Skelton v. General Motors Corp.*, 860 F.2d 250 (7th Cir. 1988) ............................................... 8

*Sommese v. Am. Bank and Trust Co.*, 2012 WL 3006824 (N.D. Ill. July 23, 2012) .................. 22

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ............................................................ 12

*U.S. v. Denedo*, 556 U.S. 904 (2009) ................................................................................... 21

*U.S. v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002) .............................................................. 4

*United Food and Com. Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) ......................................................... 16

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) .................................................. 21

*United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016) ......................................................... 13

*Vemco, Inc. v. Camardella*, 23 F.3d 129 (6th Cir. 1994) .......................................................... 4

*Vollmer v. Selden*, 350 F.3d 656 (7th Cir. 2003) ..................................................................... 6

*Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294 (7th Cir. 2003) ................................... 11

*Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244 (7th Cir. 1994) .................................. 21

*Wrightsell v. Cook County, Ill.*, 599 F.3d 781 (7th Cir. 2010) ................................................... 8

## STATUTES

705 ILCS 205 .......................................................................................................................... 9

705 ILCS 205/1 ....................................................................................................................... 9

18 U.S.C. § 1951(a) ................................................................................................................. 3

18 U.S.C. § 1951(b)(2) ............................................................................................................. 3

18 U.S.C. § 1961(5) ............................................................................................................... 14

28 U.S.C. § 1651 ................................................................................................................... 20

18 U.S.C. § 1962, Racketeer Influenced and Corrupt Organizations Act ("RICO") ............ passim

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 9(b) ...................................................................................... 12

Federal Rule of Civil Procedure 11 .......................................................................................... 6

Federal Rule of Civil Procedure 12(b)(6) .............................................................................. 1, 2

Federal Rule of Civil Procedure 23 (e)(5) ................................................................................. 7

Federal Rule of Evidence 408 ................................................................................................ 13

Federal Rule of Evidence 408(a) ............................................................................................ 13

U.S. Const. amend. I ............................................................................................................. 17

## INTRODUCTION

Defendants, Christopher Bandas and the Bandas Law Firm PC (collectively, the "Bandas Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully moves this Honorable Court to dismiss Plaintiff Edelson PC's ("Edelson") complaint with prejudice because it fails to state a claim upon which relief can be granted. Specifically, Edelson fails to adequately plead a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and improperly asserts a private cause of action under the All Writs Act. Further, since the RICO statute is the complaint's only basis for federal jurisdiction, this Court should decline to exercise pendent jurisdiction over Edelson's state law abuse of process claim. For these reasons, discussed more thoroughly below, the Court should dismiss this action.

## BACKGROUND

This purported civil RICO case was filed by Edelson against one of its clients, Gary Stewart, as well as against others, including the Bandas Defendants, in retaliation over an objection raised in a class-action matter pending in Cook County Circuit Court--*Clark v. Gannett Co., Inc.*, Case No. 16-CH-06603. (*See* Docket No. 1 at ¶¶ 6; 8; 50). Mr. Stewart, a member of the *Gannett* class, filed an objection to the proposed class settlement on the grounds that Edelson failed to provide sufficient information to the class members, and that Edelson's proposed award of $5,000,000 in attorney's fees was excessive. (*Id.* at ¶ 61).

On November 14, 2016, the Cook County Circuit Court overruled Mr. Stewart's objection on the merits. (*Id.* at ¶¶ 50, 62, 64). Mr. Stewart's appeal of that ruling is currently pending in the Illinois Appellate Court.

On December 5, 2016, just days after an unsuccessful mediation of Mr. Stewart's objection, Edelson filed its 49-page complaint against Mr. Stewart, the Bandas Defendants, as well as two other attorneys allegedly involved in this matter. (*Id.* at ¶ 65). The complaint asserts

a civil RICO claim, an abuse of process claim, and seeks relief under the All Writs Act. Only the RICO claim has the potential to provide federal jurisdiction to this case. As set forth below, because Edelson's complaint fails to state a claim under civil RICO, it should be dismissed.

## STANDARD

"To survive a Rule 12(b)(6) motion, the complaint must not only provide defendants with fair notice of a claim's basis, but must also be 'facially' plausible." *Menzies v. Seyfarth Shaw LLP*, 2016 WL 3854626, at *1 (N.D. Ill. July 15, 2016) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court assumes all well pleaded facts alleged in the complaint are true and construes all reasonable inferences in the plaintiff's favor. *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp.2d 671, 680 (N.D. Ill. 2012) (citations omitted). However, Edelson's complaint fails even under this liberal standard.

## ARGUMENT

Edelson's complaint fails to state a RICO claim because it does not adequately allege that any underlying predicate acts occurred, any pattern of racketeering activity transpired, or that a RICO enterprise even existed. Further, assuming Edelson did properly state a RICO claim, the Bandas Defendants are nevertheless immune from any liability pursuant to the *Noerr-Pennington* doctrine. In addition, Edelson's claim under the All Writs Act fails because that statute does not confer any rights that private parties can assert to acquire federal jurisdiction. Finally, because the RICO claim fails, Edelson cannot establish federal jurisdiction; therefore, this Court should refuse to exercise pendent jurisdiction over the remaining state law abuse of process claim.

## I.     EDELSON FAILS TO STATE A CLAIM IN COUNT I UNDER RICO

In order to state a claim in Count I against the Bandas Defendants pursuant to Section 1962(c) of the RICO statute, Edelson's complaint must allege: "(1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cement-Lock v. Gas Tech. Inst.*, 523

F. Supp. 2d 827, 849 (N.D. Ill. 2007) (*citing Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 644 (7th Cir.1995)); *see also* 18 U.S.C. § 1962(c).

     **A.**     **Edelson's complaint does not allege a predicate act of a Hobbs Act violation.**

     The Hobbs Act punishes an individual who, "in any way or degree obstructs, delays, or affects commerce … by … extortion or attempts or conspires so to do." 18 U.S.C. § 1951(a). Extortion is defined under the statute as: "obtaining of property from another, with his consent, induced by *wrongful use* of actual or threatened force, violence, *or fear*, or under color of official right." 18 U.S.C. § 1951(b)(2) (emphasis added).

     Edelson alleges that the Bandas Defendants committed extortion by threatening to file a "frivolous appeal" of Mr. Stewart's objection to the proposed *Gannett* class settlement, thereby causing Edelson "financial harm in the delay, substantial reduction, or cancellation of court-approved attorneys' fees," unless Edelson paid the Bandas Defendants $225,000. (*See* Docket No. 1 at ¶ 90). Edelson, however, fails to allege that the Bandas Defendants induced this payment through the use or threatened use of force, violence, or under color of official right. Thus, Edelson can only state a claim for extortion if the Bandas Defendants induced the $225,000 payment through the wrongful use of fear.

          1.     Threatening meritless litigation does not constitute extortion under the Hobbs Act because it is not the *wrongful use* of fear.

     While the Bandas Defendants do not concede that the appeal of Mr. Stewart's objection was meritless; assuming for purposes of the motion to dismiss that Edelson's allegation is true, that still does not constitute a Hobbs Act violation. Federal courts across the country have found that, as a matter of law, threatening meritless litigation does not constitute extortion under the Hobbs Act. *See E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 13 (D.D.C. 2014) (collecting cases finding that abusive or meritless litigation "does not constitute a RICO

predicate act"). Every circuit that has examined this issue has come to this same conclusion. *See Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) ("We recognize that litigation can induce fear in a defendant; and it would be fair, at least in other contexts, to characterize as 'wrongful' the filing of a groundless lawsuit … But we join a multitude of other courts in holding that meritless litigation is not extortion under § 1951."); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) ("A threat of litigation if a party fails to fulfill even a fraudulent contract, moreover, does not constitute extortion."); *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267–68 (8th Cir. 1984) ("If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary."); *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 n.2 (Fed. Cir. 2014); *Dias v. Bogins*, 134 F.3d 361 (1st Cir. 1998); *First P. Bancorp, Inc. v. Bro*, 847 F.2d 542, 547 (9th Cir. 1988); *U.S. v. Pendergraft*, 297 F.3d 1198, 1207 (11th Cir. 2002) ("Allowing litigants to be charged with extortion would open yet another collateral way for litigants to attack one another. The reality is that litigating parties often accuse each other of bad faith. The prospect of such civil cases ending as criminal prosecutions gives us pause.").

In *Deck v. Engineered Laminates*, the plaintiff alleged a Hobbs Act violation because the defendant threatened to file meritless litigation if the plaintiff exercised its right to compete against the defendant. 349 F.3 at 1257. The Tenth Circuit Court of Appeals found that the defendant's actions were not extortion. *Id.* at 1257-58. The Court explained:

> **Extortion is the antithesis of litigation as a means of resolving disputes.** To promote social stability, we encourage resort to the courts rather than resort to force and violence. Yet recognizing abusive litigation as a form of extortion would subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim. Whenever an adverse verdict results from failure of the factfinder to believe some evidence presented by the plaintiff, the adverse party could contend that the plaintiff engaged in extortionate litigation. Comfortable that the adjective "wrongful" in the extortion statute was not

intended to apply to litigation, we hold that Plaintiff's allegations of bad-faith litigation do not state the predicate act of extortion.

*Id.* at 1258 (emphasis added).

Several courts in this district have adopted this same rule. In *Harris Custom Builders, Inc. v. Hoffmeyer*, the plaintiff alleged that the defendant obtained "invalid copyright registrations" and used them to file frivolous lawsuits to "extract money from others." 1994 WL 329962, at *4 (N.D. Ill. July 7, 1994). The Court cited the Eighth Circuit's holding in *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, (8th Cir. 1984), as well as several cases from the Southern District of New York, in finding that filing frivolous lawsuits, even if brought in bad faith, does not constitute extortion. *Id. See also Lockhart v. HSBC Fin. Corp.*, 2014 WL 3811002, at *7 (N.D. Ill. Aug. 1, 2014) (finding that filing false statements in foreclosure documents cannot constitute a predicate act under RICO). Further, in an unpublished opinion, the Seventh Circuit found that a party's proposed settlement offer could not constitute extortion under the Hobbs Act because the plaintiffs "were perfectly free to reject the settlement offer." *See Nowicki v. Delao*, 506 Fed. App'x. 514, 516 (7th Cir. 2013) (unpublished).

Moreover, this Court should consider *FindtheBest.com, Inc. v. Lumen View Technology LLC* as persuasive authority due to its analogous facts. 20 F. Supp. 3d 451 (S.D. N.Y. 2014). In *Lumen*, a "patent troll" filed frivolous infringement lawsuits and demanded "nuisance settlements" to go away. *Id.* at 454. The plaintiff alleged that the patent troll had no business operations other than filing infringement lawsuits, conducted no investigations prior to filing such lawsuits, had no intention of actually litigating any claim, and was unable to explain the basis for its suit against the plaintiff, but still demanded payment. *Id.* at 454-55. The plaintiff filed a civil RICO suit alleging that the patent troll committed extortion in violation of the Hobbs

Act by filing "frivolous lawsuits with the wrongful intent and effect of causing fear of economic loss." *Id.* at 457.

The Court, however, dismissed the complaint because "the instigation of meritless litigation cannot constitute extortion under the Hobbs Act." *Id.* The Court observed that all federal courts of appeals that have addressed this issue have found that threats of meritless litigation are not extortion. *Id.* Further, if frivolous litigation constituted extortion, then all unsuccessful plaintiffs would likely face RICO countersuits from vengeful defendants looking to claim treble damages. *Id.*; *see also Kerik v. Tacopina*, 64 F. Supp. 3d 542, 562 (S.D. N.Y. 2014) ("courts would be wary of holding that the filing of a meritless lawsuit is ... extortionate lest every unsuccessful lawsuit lead to an extortion claim"). The Court also stated that a chilling effect could occur if all claimants were hesitant to bring their disputes to the judicial system for fear of facing a RICO countersuit. *FindtheBest.com, Inc.*, 20 F. Supp. 3d at 457.

Edelson's reliance on *Vollmer v. Selden* for its definition of extortion in this matter is unavailing because that case did not involve the Hobbs Act; it involved Rule 11 sanctions. (*See* Docket No. 1 at ¶ 29); *Vollmer v. Selden*, 350 F.3d 656 (7th Cir. 2003). *Vollmer* also relied on Black's Law Dictionary's definition of extortion to analyze whether to impose sanctions; *not* the Hobbs Act's statutory definition. *Vollmer*, 350 F.3d at 660. This distinction is critical, since Rule 11 only imposes monetary sanctions, while the Hobbs Act is a *criminal statute*. The Supreme Court has cautioned that the Hobbs Act's definition of extortion "must be strictly construed" and "any ambiguity must be resolved in favor of lenity." *See Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 408-409 (2003) (citation omitted).

Therefore, this Court should adopt the precedent established by federal courts across the nation that threatening meritless or even frivolous litigation does not constitute extortion under the Hobbs Act as a matter of law.

2.     The claim of right rule prevents any liability under the Hobbs Act.

This Court also has to dismiss Edelson's allegations of "extortion" under the Seventh Circuit's claim of right rule, which prevents any liability against the Bandas Defendants.

In *Rennell v. Rowe*, the Seventh Circuit addressed the issue of how to determine when imposing fear of economic harm is "hard bargaining," and when it is "extortion" under the Hobbs Act. 635 F.3d 1008, 1011 (7th Cir. 2011). The Court developed the following rule to distinguish between hard bargaining and extortion: "If a defendant has no claim of right to property, the use of fear to obtain that property—including the fear of economic loss—may also amount to extortion." *Id.* at 1012. But, "where the defendant has a *claim of right to property* and exerts economic pressure to obtain that property, that conduct is not extortion and no violation of the Hobbs Act has occurred." *Id.* (emphasis added). Courts have relied on *Rennell* to find that if the defendant had a claim of right to the property at issue, then asserting economic duress or imposing "unpleasant hard dealing" in obtaining said property does not constitute extortion under the Hobbs Act. *See ChampionsWorld, LLC v. U.S. Soccer Federation, Inc.*, 890 F. Supp. 2d 912, 941-42 (N.D. Ill. 2012); *Glamour Girlz, LLC v. D.M. Merch., Inc.*, 2012 WL 6004233, at *2 (N.D. Ill. Sept. 24, 2012).

Individual class members have the right to object to proposed class settlements. *See* Fed. R. Civ. P. 23(e)(5). In fact, the Seventh Circuit has recognized that objectors play an important role in ensuring that class counsel do not conspire with defense counsel to obtain settlements that provide substantial attorney's fees at the expense of the class members. *See Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). Further, the law certainly gives class members the

right to appeal their objection.[1] *See, e.g.*, *Wrightsell v. Cook County, Ill.*, 599 F.3d 781, 784 (7th Cir. 2010) (*citing Devlin v. Scardelletti*, 536 U.S. 1, 10-11 (2005)). Moreover, the law allows parties to reach settlement agreements that waive their right to appeal. *See, e.g.*, *Skelton v. General Motors Corp.*, 860 F.2d 250, 259 (7th Cir. 1988).

Indeed, Edelson's complaint does not allege that Mr. Stewart did not possess the right to object to the proposed class settlement in the *Gannett* case, which as a class member, Mr. Stewart had a right to do so. Nor does the complaint allege that Mr. Stewart did not have a right to appeal the denial of his objection, which, of course, he did. Moreover, the complaint does not allege that the Bandas Defendants did not have the right to negotiate a possible settlement of Mr. Stewart's objection. Further, if Edelson believed that $225,000 was an excessive amount to settle the objection, then it was free to reject the proposal and to challenge the merits of any appeal. Edelson's fear of appellate review of its $5 million attorney's fees award does not constitute extortion. Thus, because all of the misconduct alleged in the complaint was permitted under law, the "claim of right" rule shields the Bandas Defendants from any liability under the Hobbs Act.

**B.     The Illinois Attorney Act is not a predicate act of "racketeering activity."**

Section 1961(1) of the RICO statute defines what specific acts constitute "racketeering activity." "'Racketeering activity' is defined in RICO to mean 'any act or threat involving' specified state-law crimes, any 'act' indictable under various specified federal statutes, and certain federal 'offenses.'" *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989) (*citing* 18 U.S.C. § 1961(1)). The only violations of state law that constitute racketeering activity are "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing

---

[1] The Illinois Rules of Civil Procedure also authorize class members to file objections to proposed class settlements, and appeal their objections. *See Shaun Fauley, Sabon, Inc. v. Metropolitan Life Ins. Co.*, 2016 IL. App. (2d) 150236, at ¶ 35 (*citing* 735 ILCS 5/2-803).

in obscene matter, or dealing in a controlled substance or listed chemical …, which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1).

Edelson's complaint alleges that the Bandas Defendants' violation of the Illinois Attorney Act constituted a predicate act of racketeering activity that supports its RICO claim. (*See* Docket No. 1 at ¶¶ 96-104). The Illinois Attorney Act is not part of the Illinois Criminal Code, and violators are not subject to imprisonment for more than one year. *See* 705 ILCS 205. Rather, the statute specifies that courts may punish violators by imposing civil relief. *See* 705 ILCS 205/1. Since the Illinois Attorney Act only provides for *civil liability*, it cannot constitute a state offense that qualifies as racketeering activity under the RICO statute. Other courts in this district have reached the same conclusion. *See Meier v. Musburger*, 588 F. Supp. 2d 883, 910 (N.D. Ill. 2008) (finding that since Illinois law only authorizes civil liabilities for the unauthorized practice of law, such activities cannot constitute racketeering activity under RICO).

### C.    Edelson's complaint does not allege a predicate act of Wire Fraud.

To establish wire fraud, Edelson must allege that: (1) the Bandas Defendants participated in a scheme to defraud; (2) the Bandas Defendants committed an act with an intent to defraud; and (3) the Bandas Defendants used the wires to further their fraudulent scheme. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 657 (7th Cir. 2015) (*citing* 18 U.S.C. § 1343).

1.    Litigation activities cannot form the basis for wire fraud.

Federal courts in this district and elsewhere have found that the mail and wire fraud statutes do not extend to prosecute communications sent in litigation activities. *Carthan-Ragland v. Stand. Bank and Trust*, 2012 WL 1658244, at *2 (N.D. Ill. May 11, 2012) ("filing and prosecuting a complaint is not considered mail or wire fraud or a predicate act under RICO"); *Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 848 (N.D. Ill. 2013) (finding defendant's alleged act of filing false foreclosure complaints could not constitute mail or wire

fraud); *Curtis & Associates, P.C. v. L. Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 172 (E.D. N.Y. 2010) (citations omitted).

In *Spiegel v. Continental Illinois National Bank*, the district court examined whether correspondence from the opposing party's attorney during a pending state court proceeding could constitute predicate acts of mail fraud under the RICO statute. 609 F. Supp. 1083, 1087-88 (N.D. Ill. 1985), *aff'd*, 790 F.2d 638 (7th Cir. 1986). The Court found that, "Congress could not have intended that the mail fraud statute sweep up correspondence between attorneys, dealing at arm's length on behalf of their parties, concerning an issue in pending litigation, especially where the presiding judge is aware of the alleged scheme and will ultimately rule on the acts in question." *Id.* at 1089. Moreover, subjecting such communications to mail fraud would "chill an attorney's efforts and duty" in representing his or her client. *Id.* (citations omitted).

This case is analogous to *Spiegel*. Here, Edelson's wire fraud claim relies on its allegation that while the *Gannett* litigation was pending in the state court, the defendants sent an e-mail to Edelson representing that they "had a non-frivolous objection to the *Gannett* Settlement that could be resolved to the benefit of the class." (Docket No. 1 at ¶ 107). Edelson alleges that during mediation, the Bandas Defendants never suggested any changes to the class settlement. (*Id.* at ¶¶ 108-109). This Court should follow *Spiegel* and reject an overbroad application of the wire fraud statute that criminalizes communications between counsel during litigation. Further, since the *Gannett* case remains pending in state court, any issues that Edelson has with the Bandas Defendants' objection can be addressed by the Cook County Circuit Court, rather than in this collateral RICO suit.

2. Edelson cannot allege any reliance on the Bandas Defendants' allegedly fraudulent statement.

"A necessary element of a scheme to defraud is the making of a false statement or material misrepresentation, or the concealment of a material fact." *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003) (citations omitted). Moreover, the statement/misrepresentation is only actionable as fraud if "a person of ordinary prudence and comprehension would rely on the misrepresentations." *See Associates In Adolescent Psych., S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 570 (7th Cir. 1991) (citation omitted).

Edelson's complaint alleges that the Bandas Defendants claimed they had a non-frivolous objection that could benefit the class; Edelson relied on this statement to agree to mediation; at mediation the Bandas Defendants offered to withdraw their objection for $225,000 without requiring any changes to the *Gannett* class settlement; and that Edelson agreed to pay $225,000. (Docket No. 1 at ¶¶ 107-110). Edelson does not claim that it relied on the Bandas Defendants' allegedly false statement that its objection would benefit the entire class when it agreed to pay $225,000. Rather, Edelson only relied on this statement in agreeing to mediate the objection. Edelson also never alleges that the Bandas Defendants refused to reveal the substance of their objection during mediation; nor could the Bandas Defendants have done this, as the mediation occurred *after* both parties had already litigated the objection before the Circuit Court of Cook County. (*See* Docket No. 1 at ¶ 50). Edelson knew exactly what the objection was before it even received the e-mail from the Bandas Defendants containing the alleged misrepresentation. Therefore, Edelson has not, and cannot, allege how it relied on any fraudulent statement in agreeing to pay the Bandas Defendants to drop the appeal. *See Drobny*, 929 F. Supp. 2d at 849 (dismissing RICO complaint because plaintiffs failed to show they relied on false statements in foreclosure documents).

Moreover, given Edelson's recitation of an alleged "playbook," concerning objections to class action settlements set forth in its complaint, Edelson cannot allege that it was deceived or defrauded by any communication regarding a possible settlement of Mr. Stewart's objection.

> 3. Edelson fails to satisfy the heightened pleading requirements for fraud claims under Federal Rule of Civil Procedure 9(b).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard on all litigants asserting any claim involving fraud; it requires plaintiffs to state "'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (citations omitted).

Edelson's complaint omits an essential detail--on what specific statement did Edelson rely on for its fraud claim against the Bandas Defendants? Here, the complaint merely describes the content of the alleged communication. (Docket No. 1 at ¶ 107). It does not quote any language from an alleged e-mail sufficient to form the basis for a fraud claim. Further, even if this were enough to satisfy Rule 9(b), which it is not, the statement that the defendants "had a non-frivolous objection to the *Gannett* Settlement that could be resolved to the benefit of the class" is not a fraudulent statement.

An attorney who characterizes his or her client's objection as "non-frivolous" merely expresses the legal opinion of the attorney. An attorney's opinion cannot form the basis for fraud. *See, e.g.*, *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1329-30 (7th Cir. 1994) (finding that an attorney's opinion in a legal proceeding does not "supply the foundation for a fraud claim"); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006) ("It is well established, however, that misrepresentations of the law are not actionable as fraud, including under the mail and wire fraud statutes, because statements of the law are considered merely opinions and may not be relied

upon absent special circumstances not present here.") (Citations omitted). "Permitting RICO claims based on legal positions taken by litigation adversaries 'would result in the inundation of federal courts with civil RICO actions that could potentially subsume all other state and federal litigation in an endless cycle where any victorious litigant immediately sues opponents for RICO violations.'" *Singh v. NYCTL 2009-A Trust*, 2016 WL 3962009, at *8 (S.D. N.Y. July 20, 2016).

Further, the fact that the Bandas Defendants suggested that they *could* resolve their objection to the benefit of the class, but ultimately did not propose such an offer during mediation, does not mean the original statement was fraudulent. The Seventh Circuit has held that statements made in negotiations regarding a party's bargaining position cannot form the basis for wire fraud. *See United States v. Weimert*, 819 F.3d 351, 366 (7th Cir. 2016). "Congress could not have meant to criminalize deceptive misstatements or omissions about a [party's] negotiating positions … . To state the obvious, [negotiating parties] will often try to mislead the other party about the prices and terms they are willing to accept. Such deceptions are not criminal." *Id.* at 357. Thus, even if the Bandas Defendants' e-mail conveyed that Mr. Stewart would settle his objection on grounds that would benefit the entire class, but then they revealed during mediation that Mr. Stewart was willing to settle for less, this cannot constitute a fraudulent statement indictable under the federal wire fraud statute.

Moreover, under Federal Rule of Evidence 408, Edelson cannot introduce statements made during negotiations into evidence at trial. Fed. R. Evid. 408(a). Therefore, Edelson cannot allege wire fraud on the basis of statements made by the Bandas Defendants as part of their negotiation of the *Gannett* objection; as those statements are inadmissible.

Edelson's complaint does not allege any predicate acts of Hobbs Act violations or wire fraud. The Court must dismiss the RICO count for that reason alone.

### D.   Edelson fails to plead a "pattern" of racketeering activity.

Edelson's complaint fails to plead a "pattern" of racketeering activity. The RICO statute defines a "pattern" of racketeering activity as at least two predicate acts of racketeering activity committed over a ten year period. 18 U.S.C. § 1961(5). The Supreme Court has expounded upon this by also imposing "continuity" and "relationship" requirements amongst the predicate acts. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Continuity is established by pleading either "close-ended" or "open-ended" continuity. *See Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 473 (7th Cir. 2007). Close-ended is where the criminal activity has ended, but carries an implicit threat of continuation due to the "substantial period of time" and "repetition" involved with the acts. *Id.* (citation omitted). Open-ended is where the criminal activity presents an on-going threat, despite lacking "duration and repetition." *Id.* (citations omitted). "Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986).

Edelson fails to state whether it is pleading open or close-ended continuity. However, Edelson claims that the defendants' scheme was to file a frivolous objection to the *Gannett* class settlement, and then threaten to appeal the objection unless Edelson paid them. This alleged "scheme" clearly ended when Edelson agreed to pay $225,000 if Mr. Stewart would agree to forgo an appeal of the denial of his objection. As a result, Edelson has not established open-ended continuity because there is no on-going threat, as "schemes with a 'clear and terminable goal have a natural ending point.'" *Roger Whitmore's Auto. Servs., Inc. v. Lake Cty., Illinois*, 424 F.3d 659, 674 (7th Cir. 2005) (citation omitted); *see also Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 829 (7th Cir. 2016) ("We have repeatedly held that schemes fail to satisfy open-ended continuity where they have a 'natural ending point.'").

Moreover, Edelson's complaint also fails to adequately plead close-ended continuity. The complaint attempts to establish a pattern of racketeering activity by focusing on one incident: the "Objector Enterprise's" plot to extort $225,000 from Edelson in exchange for dropping its appeal. (Docket No. 1 at ¶¶ 84-85). Edelson's allegations reveal that this scheme began on October 26, 2016, when Mr. Stewart filed his objection to the proposed class settlement, and concluded on December 1, 2016, when Edelson agreed to pay $225,000 for the "Objector Enterprise" to drop its appeal. (*Id.* at ¶¶ 50, 65, 68). A "scheme" that barely lasts more than one month cannot satisfy the close-ended continuity requirement under RICO. *See Meier*, 588 F. Supp. 2d at 903 (citing cases that found no continuity present for schemes lasting from six to thirteen months). Further, the *Gannett* scheme involved a single victim, Edelson, and is the only scheme alleged against the "Objector Enterprise."[2]

Edelson did not allege the necessary "continuity" requirement to demonstrate any pattern of racketeering activity. For this additional reason, the Court must dismiss the RICO claim.

### E. Edelson's complaint does not allege a RICO enterprise.

Even if the Court assumes that the individual defendants engaged in the activity alleged in Edelson's complaint, it does not constitute a RICO claim because, as explained above, the alleged acts do not constitute predicate acts under RICO. In addition, Edelson's complaint fails to state a RICO claim because it fails to show that the individual defendants were part of an enterprise engaged in a pattern of racketeering activity.

Under the RICO statute, a plaintiff must plead that the defendants conducted predicate acts on behalf of an "enterprise," and that such enterprise was a distinct association-in-fact

---

[2] While Edelson's complaint alleges that several of the defendants have been individually involved with filing frivolous objections to class settlements for decades, (*see, e.g.*, Docket No. 1 at ¶¶ 34; 44; 51), Edelson only states that the alleged "Objector Enterprise" of Bandas, Palmer, Thut, and Stewart was involved with one scheme: the *Gannett* objection. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) ("[RICO] liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's affairs*,' not just their *own affairs*.") (Emphasis in original).

separate from the individual defendants. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655 (7th Cir. 2015). An enterprise must have "'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *United Food and Com. Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013) (*citing Boyle v. United States*, 556 U.S. 938, 944 (2009)). The individuals and/or entities composing the enterprise must have *acted through and on behalf of the enterprise*; as opposed to acting individually and for their own self-interest. *Id.* at 855-56 (finding no evidence that two companies acted in concert on behalf of an enterprise, as opposed to acting individually in their own self-interest as part of a routine commercial transaction). The law imposes this distinction to prevent converting every conspiracy to commit fraud into a RICO claim. *See Bible*, 799 F.3d at 656 (citations omitted).

Edelson fails to plead a sufficient RICO enterprise existed because the complaint's allegations only illustrate a group of individuals acting on their own for their own self-interest in a single conspiracy, rather than acting through and in the interest of an "enterprise." Edelson claims that the "enterprise" in this case is an association of three lawyers, their respective law firms, and their client; all of whom had histories of objecting to class settlements. (Docket No. 1 at ¶¶ 1, 11-16). But most of the complaint's allegations focus on prior objections raised by the *individual defendants* acting in their *individual capacity* as attorneys and for their own benefit. (*Id.* at ¶¶ 33-54). The only allegations that involve the alleged enterprise are those involving the *Gannett* case. Specifically, Edelson alleges that Mr. Palmer convinced his friend Mr. Stewart to file a frivolous objection to the proposed class settlement, Mr. Thut filed the objection on behalf of Mr. Stewart, and Mr. Bandas wrote the actual brief. (*Id.* at ¶¶ 50, 61). Mr. Bandas also

mediated on behalf of Mr. Stewart regarding dropping the appeal. (*Id.* at ¶¶ 63, 65-67). This is the full extent of the allegations regarding the alleged "Objector Enterprise."

These allegations *do not* show a group of individuals acting on behalf of or through an enterprise. Mr. Palmer convinced his friend Mr. Stewart to file a class action objection, not by acting through an "enterprise," but by using his own individual relationship. Mr. Thut filed the objection, not through an act of an "enterprise," but through himself, an individual licensed attorney in Illinois. Moreover, the complaint alleges that Mr. Bandas wrote the brief and mediated the objection on behalf of Mr. Stewart, *his clien*t; rather than on behalf of a so-called enterprise. Also, there is no allegation that the defendants' overall goal of obtaining $225,000 was for any purpose other than for their own self-interests.

Edelson fails to demonstrate how the defendants acted on behalf of or through a RICO enterprise, as opposed to themselves acting in their own individual capacity; there was no common goal other the single scheme to defraud Edelson for their own individual self-interests. Thus, since there is no enterprise, the Court must dismiss Edelson's RICO count for this additional reason as well. *See Cement-Lock v. Gas Tech. Inst.*, 2005 WL 2420374, at *18-19 (N.D. Ill. Sept. 30, 2005) (dismissing RICO claim since the allegations only demonstrated group of defendants "'strung together' by the label 'enterprise'" without any common purpose separate from their own individual gain).

## II. THE COURT MUST DISMISS THE COMPLAINT UNDER THE *NOERR-PENNINGTON* DOCTRINE

"The *Noerr–Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people ... to petition the Government for a redress of grievances,' U.S. Const. amend. I, and provides protection from liability for those who petition any department of the government." *In re Innovatio IP Ventures, LLC Pat. Litig.*, 921 F. Supp. 2d 903, 910 (N.D. Ill.

2013). This includes petitioning the courts. *See, e.g*, *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Although the *Noerr-Pennington* doctrine originated in the realm of antitrust, the Seventh Circuit has extended its immunity to RICO lawsuits. *See Intl. Broth. of Teamsters, Loc. 734 Health and Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999) (citations omitted).

In this case, Edelson attempts to hold the Bandas Defendants liable for a civil RICO violation because the defendants filed Mr. Stewart's objection to the proposed *Gannett* class settlement, and then threatened to appeal the objection. Since these litigation activities involve petitioning the court, the Bandas Defendants are entitled to immunity under the *Noerr Pennington* doctrine. *See Rubloff Dev. Group, Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 742-744 (N.D. Ill. 2012) (finding *Noerr-Pennington* doctrine provided immunity from RICO suit).

There are two exceptions to *Noerr-Pennington*'s absolute immunity: the "fraudulent litigation" exception and the "sham litigation" exception. *Id.* at 742. The fraudulent litigation exception requires the plaintiff to show that: (1) the defendant intentionally made a misrepresentation, with knowledge of its falsity; and (2) the misrepresentation "was material, in the sense that it actually altered the outcome of the proceeding." *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 843 (7th Cir. 2011). Edelson cannot and does not allege that the objection filed on behalf of Mr. Stewart contained any misrepresentations. Further, even if the objection did contain misrepresentations, they did not alter the outcome of the proceeding, since the Circuit Court of Cook County ultimately denied the objection.

Regarding the sham litigation exception, a plaintiff cannot establish this exception merely because the "subjective expectation of success [did] not motivate the litigant." *Prof. Real Est. Inv'rs, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 57 (1993). The Supreme Court

has held that the subjective intent of the party petitioning the court cannot, by itself, constitute sham litigation. *Id.* Instead, that Court created a two-part test: first, courts have to examine whether the suit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60. "If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized … [and] the sham exception must fail." *Id.* If, however, the litigation is "objectively meritless," then the Court can examine the litigant's subjective motive. *Id. See also Rubloff Dev. Group, Inc.*, 863 F. Supp. 2d at 742 (applying the analysis).

The sham litigation exception does not apply here, despite Edelson's numerous allegations of Mr. Bandas' suspect motives, because Edelson has not demonstrated that the objection to the proposed *Gannett* settlement was objectively baseless. Edelson does provide conclusory opinions that the objection and appeal were "frivolous," but to survive a motion to dismiss, Edelson has to establish more than threadbare legal assertions. Rather, Edelson has to demonstrate that the substantive arguments raised in Mr. Stewart's objection and appeal actually were frivolous.

The closest Edelson comes to approaching this subject is in paragraph 61, in which the complaint alludes to the fact that the objection was based on the objector's "lack of information" and disagreement with Edelson receiving $5 million in attorney's fees under the settlement. (Docket No. 1 at ¶ 61). Edelson never explains why no reasonable litigant could object to Edelson receiving $5 million in attorney's fees under the *Gannett* settlement, but instead simply states that the objection was "meritless." (*Id.*) This is not enough to establish the sham litigation exception.[3] *See Michael v. Letchinger*, 2011 WL 3471082, at *11 (N.D. Ill. 2011) (finding

---

[3] In addition, the complaint alleges (based off data from an obscure website) that 90% of Mr. Bandas' objections have been over-ruled. (Docket No. 1 at ¶ 37). This necessarily means that 10% of his objections prevail. Courts have

plaintiffs not entitled to sham litigation exception merely by alleging that judicial proceedings were instituted in "bad faith" and "for discriminatory purposes," but instead had to plausibly suggest that they were "objectively baseless"); *see also Rubloff Development Group, Inc.*, 863 F. Supp. 2d at 742 (finding that although plaintiff alleged the defendant's suits were filed "without regard to merit," the plaintiff did "not allege that they were objectively meritless").

Finally, the complaint concedes that the Cook County Circuit Court in the underlying *Gannett* litigation overruled Mr. Stewart's objection "on the merits." (Docket No. at ¶ 64). Plaintiff never alleges that the court found that the objection was "objectively meritless." Rather, the Circuit Court reviewed the objection's merits, but ruled against it. This in and of itself establishes that the objection was not frivolous, so the sham litigation exception cannot apply.

## III.  EDELSON CANNOT BRING A CLAIM UNDER THE ALL WRITS ACT

Although Edelson's complaint only cites the RICO statute as its basis for federal jurisdiction, (*see* Docket No. 1, at ¶ 17), the complaint also asserts in Count II a claim against the Bandas Defendants pursuant to the All Writs Act, 28 U.S.C. § 1651. The All Writs Act, however, does not confer a private right or authorize a cause of action as a matter of law. Instead, the All Writs Act states:

> (a)  The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
>
> (b)  An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

28 U.S.C. § 1651.

The All Writs Act grants *courts* vast authority to ensure that they have the ability to enforce their orders. It does not grant any rights to *private parties*, nor does it provide a basis for

---

found that litigation is not objectively meritless when the party has favorable precedent to rely upon. *See Frayne v. Chicago 2016*, 2009 WL 3229625, at *7 (N.D. Ill. Oct. 2, 2009).

private parties to petition federal courts for equitable relief. *See In re Campbell*, 264 F.3d 730, 731 (7th Cir. 2001) ("The All Writs Act authorizes federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law,' ... The Act does not enlarge our jurisdiction.") (Citations omitted); *see also Matter of VMS Securities Litig.*, 103 F.3d 1317, 1324 (7th Cir. 1996), overruled on other grounds by *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983 (7th Cir. 2010), (finding that the All Writs Act is not a "jurisdictional blank check"). "[T]he All Writs Act and the extraordinary relief the statute authorizes are not a source of subject-matter jurisdiction." *U.S. v. Denedo*, 556 U.S. 904, 913 (2009) (citation omitted).

Therefore, Edelson cannot seek relief from a federal court by simply alleging that its complaint is brought pursuant to the All Writs Act. *See Nino v. Johnson*, 2016 WL 6995563, at *7 (N.D. Ill. Nov. 30, 2016) ("the All Writs Act ... [does not] provide[] an independent basis of jurisdiction"). Further, the Court has not entered any order in this case that would justify it resorting to the All Writs Act to ensure compliance. Thus, the Court must dismiss Count II.

## IV. THE COURT SHOULD NOT EXERCISE PENDENT JURISDICTION OVER THE STATE LAW ABUSE OF PROCESS CLAIM

The Court should deny exercising pendent jurisdiction over Edelson's state law abuse of process claim in Count III because "judicial economy, convenience and fairness to litigants" does not require the Court to retain jurisdiction. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Since the lawsuit is still young, as it was only filed a few months ago, the Court "has not committed 'substantial judicial resources' to the state claims such that dismissal 'will

cause a substantial duplication of effort.'" *Sommese v. Am. Bank and Trust Co.*, 2012 WL 3006824, at *8 (N.D. Ill. July 23, 2012) (citations omitted). Moreover, Edelson is seeking redress for the alleged abuse of process in the Cook County Circuit Court where it has filed a motion for sanctions against the Bandas Defendants. Therefore, the Court should refuse to exercise pendent jurisdiction over Count III of the complaint.

Regardless, Edelson fails to state a claim for abuse of process as well. Under Illinois law, a plaintiff must demonstrate: "(1) the existence of an ulterior purpose or motive and (2) some act in the use of process that is not proper in the regular course of proceedings." *Neurosurgery and Spine Surgery, S.C. v. Goldman*, 790 N.E.2d 925, 929 (Ill. App. 2003) (citation omitted). "Because the tort of abuse of process is not favored under Illinois law, the elements must be strictly construed." *Id.* at 929-30 (*citing Erlich v. Lopin—Erlich*, 195 Ill.App.3d 537, 539 (1990)). "The test for sufficiency of the allegations pertaining to the second element is whether the process has been used to accomplish some result which is beyond the purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally be compelled to do." *Community Nat. Bank in Monmouth v. McCrery*, 509 N.E.2d 122, 124 (Ill. App. 1987).

Edelson alleges that the improper process used by the Bandas Defendants was filing "frivolous objections" to proposed class settlements and then appealing or threatening to appeal them. (Docket No. 1 at ¶ 130). However, Illinois law has long established that instituting proceedings does not constitute a "process" that can give rise to abuse of process liability because instituting actions are accomplished by individual parties filing documents with the court; while "process" must be an official act issued by the court. *See McCrery*, 509 N.E.2d at 124 (instituting mortgage foreclosures could not constitute abuse of process); *see also Holiday*

*Magic, Inc. v. Scott*, 282 N.E.2d 452, 455–56 (1972) ("It has been repeatedly held in Illinois that mere institution of proceedings does not in and of itself constitute abuse of process.").

Merely filing an objection to a proposed class settlement cannot constitute "process" under Illinois law that can give rise to an abuse of process claim. Such an act is instituted by the individual defendants, *not* the Court. Similarly, filing an appeal cannot constitute an abuse of process claim for the same reason; filing an appeal is instituted by the individual defendants and not by the Court. *See Holiday Magic, Inc.*, 282 N.E.2d at 456 (defining "process" as "any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property").

Thus, the Court must dismiss Count III because Edelson fails to state a claim for abuse of process under Illinois law.

## CONCLUSION

Therefore, for the reasons stated above, the Bandas Defendants respectfully request this Court dismiss Edelson's complaint with prejudice.

Respectfully submitted,

CHRISTOPHER BANDAS and THE
BANDAS LAW FIRM P.C.

/s/      Darren VanPuymbrouck
One of their attorneys.

Darren VanPuymbrouck
Alexander Vesselinovitch
Matthew Connelly
Freeborn & Peters LLP
311 South Wacker Drive Suite 3000 Chicago, IL  60606
312-360-6000
dvan@freeborn.com

Dated: January 25, 2017

- 23 -

## CERTIFICATE OF SERVICE

By my signature below, I hereby certify that on January 25, 2017, I electronically filed the foregoing Memorandum in Support of the Bandas Defendant's Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Eve-Lynn J. Rapp
Benjamin Harris Richman
Rafey S. Balabanian
Edelson PC
350 N. LaSalle Street, 13th Floor
Chicago, IL 60654
(312) 589-6370
erapp@edelson.com
**Attorneys for Plaintiff**

Chris C. Gair
Kristi Lynn Nelson
Thomas R. Heisler
Gair Eberhard Nelson Dedinas Ltd
1 East Wacker Drive
Suite 2600
Chicago, IL 60601
312-600-4900
cgair@gairlawgroup.com
**Attorneys for Defendants Noonan Perillo & Thut Ltd. and C. Jeffery Thut**


/s/ Darren VanPuymbrouck