**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| EDELSON PC, an Illinois professional corporation, individually, and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:16-cv-11057 |
| THE BANDAS LAW FIRM PC, a Texas professional corporation, CHRISTOPHER BANDAS, an individual, LAW OFFICES OF DARRELL PALMER PC d/b/a DARRELL PALMER LAW OFFICE, a suspended California professional corporation, JOSEPH DARRELL PALMER, an individual, NOONAN PERILLO & THUT LTD., an Illinois corporation, C. JEFFERY THUT, an individual, GARY STEWART, an individual, and JOHN DOES 1-20, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF CHRISTOPHER BANDAS AND THE BANDAS
LAW FIRM PC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Darren M. VanPuymbrouck
Alexander S. Vesselinovitch
Matthew T. Connelly
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
312-360-6000
312-360-6520
dvan@freeborn.com
avesselinovitch@freeborn.com
mconnelly@freeborn.com

*Attorneys for Christopher Bandas and the Bandas Law Firm PC*

# TABLE OF CONTENTS

**Page**

BACKGROUND ............................................................................................................... 1

STANDARD ..................................................................................................................... 2

ARGUMENT .................................................................................................................... 3

I.      THERE IS NO DIVERSITY JURISDICTION OVER THIS MATTER ......................... 3

II.     THE AMENDED COMPLAINT FAILS TO STATE A  RICO CLAIM ......................... 4

        A.      Litigation activities cannot constitute predicate acts of racketeering
                activity ...................................................................................................... 4

        B.      Edelson fails to adequately plead any of the alleged predicate acts of
                racketeering activity scattered throughout its amended complaint ...................... 9

                1.      The amended complaint does not adequately allege a Hobbs Act
                        violation ........................................................................................ 9

                        a.      Threatening meritless litigation does not constitute
                                extortion under the Hobbs Act ................................................ 10

                        b.      The claim of right rule prevents any liability under the
                                Hobbs Act .......................................................................... 13

                2.      The amended complaint does not adequately allege a wire fraud ........... 14

                        a.      Litigation activities cannot form the basis for wire fraud ............ 15

                        b.      Edelson cannot show any material misrepresentation ................ 16

                        c.      Edelson cannot establish that the "Illinois Objector
                                Enterprise" committed wire fraud through Defendant
                                Thut's daughter's involvement with In re Lifetime Fitness ......... 17

                3.      The amended complaint does not adequately allege mail fraud ............. 18

                4.      The amended complaint cannot allege predicate acts of obstruction
                        of justice or witness tampering because those statutes only apply to
                        federal proceedings ........................................................................ 19

                5.      The amended complaint does not adequately allege predicate acts
                        of bribery ...................................................................................... 21

                6.      The amended complaint does not adequately allege money
                        laundering ..................................................................................... 24

        C.      The amended complaint does not allege a pattern of racketeering activity ......... 25

        D.      The Noerr-Pennington Doctrine bars any RICO liability in this matter ............. 25

III.    THE AMENDED COMPLAINT CANNOT STATE A CLAIM FOR RICO
        CONSPIRACY ............................................................................................... 28

**TABLE OF CONTENTS**
(continued)

**Page**

IV.    THE AMENDED COMPLAINT CANNOT BRING A CLAIM UNDER THE ALL WRITS ACT ........................................................................................ 30

V.    THE COURT SHOULD NOT EXERCISE PENDENT JURISDICTION OVER THE STATE LAW ABUSE OF PROCESS CLAIM ...................................... 31

VI.    THE AMENDED COMPLAINT CANNOT STATE A CLAIM UNDER THE ILLINOIS ATTORNEY ACT ...................................................................... 33

CONCLUSION ........................................................................................................ 34

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bible v. United Student Aid Funds, Inc.*,
    799 F.3d 633 (7th Cir. 2015) .......................................................................15

*California Motor Transport Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972).......................................................................................26

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) .......................................................................19

*Carthan-Ragland v. Standard Bank and Trust*,
    2012 WL 1658244 (N.D. Ill. May 11, 2012) ...........................................7, 15, 18

*Cement-Lock v. Gas Tech. Inst.*,
    523 F. Supp. 2d 827 (N.D. Ill. 2007) ...........................................................4

*ChampionsWorld, LLC v. U.S. Soccer Federation, Inc.*,
    890 F. Supp. 2d 912 (N.D. Ill. 2012) ..........................................................13

*Clark v. Gannett Co., Inc.*,
    Case No. 16-CH-06603...................................................................... passim

*Com. St. Express LLC v. Sara Lee Corp.*,
    2008 WL 5377815 (N.D. Ill. Dec. 18, 2008).............................................3, 4

*Community Nat. Bank in Monmouth v. McCrery*,
    509 N.E.2d 122 (Ill. App. 1987) ..................................................................32

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014).............................................................10, 22

*Corley v. Rosewood Care Ctr., Inc. of Peoria*,
    388 F.3d 990 (7th Cir. 2004) .......................................................................18

*Curtis & Associates, P.C. v. L. Offices of David M. Bushman, Esq.*,
    758 F. Supp. 2d 153 (E.D. N.Y. 2010) ......................................................6, 15

*Davit v. Davit*,
    366 F. Supp. 2d 641 (N.D. Ill. 2004) ..........................................................19

*Deck v. Engineered Laminates*,
    349 F.3d 1253 (10th Cir. 2003) .............................................................10, 11

*Dias v. Bogins*,
 134 F.3d 361 (1st Cir. 1998) ...................................................................................10

*Drobny v. JP Morgan Chase Bank, NA*,
 929 F. Supp. 2d 839 (N.D. Ill. 2013) ................................................................7, 15

*E. Sav. Bank, FSB v. Papageorge*,
 31 F. Supp. 3d 1, 13 (D. D.C. 2014) ................................................................6, 22

*Envision Healthcare, Inc. v. PreferredOne Ins. Co.*,
 604 F.3d 983 (7th Cir. 2010) ...................................................................................30

*Eubank v. Pella Corp.*,
 753 F.3d 718 (7th Cir. 2014) ...........................................................................8, 14, 24

*Faith Constr. 4, Inc. v. Girouard*,
 2014 WL 6679118 (N.D. Ill. Nov. 21, 2014) .........................................................20

*Fosco v. Difronzo*,
 2009 WL 2244611 (N.D. Ill. July 28, 2009)...........................................................29

*George Ryan v. U.S.*,
 688 F.3d 845 (7th Cir. 2012) ...................................................................................24

*Glamour Girlz, LLC v. D.M. Merch., Inc.*,
 2012 WL 6004233 (N.D. Ill. Sept. 24, 2012) .........................................................13

*Goren v. New Vision Intern., Inc.*,
 156 F.3d 721 (7th Cir. 1998) ............................................................................28, 29

*Guaranteed Rate, Inc. v. Barr*,
 912 F. Supp.2d 671 (N.D. Ill. 2012) .........................................................................2

*Harris Custom Builders, Inc. v. Hoffmeyer*,
 1994 WL 329962 (N.D. Ill. July 7, 1994)...........................................................7, 11

*Hemi Group, LLC v. City of New York, N.Y.*,
 559 U.S. 1 (2010).................................................................................................17, 20

*Hexagon Packaging Corp. v. Mandy Gutterman & Associates Inc.*,
 2000 WL 226396 (N.D. Ill. Feb. 17, 2000) ..............................................................7

*Holiday Magic, Inc. v. Scott*,
 282 N.E.2d 452 (Ill. App. 1972) .............................................................................32

*I.S. Joseph Co., Inc. v. J. Lauritzen A/S*,
 751 F.2d 265 (8th Cir. 1984) ....................................................................... passim

*In re Campbell*,
    264 F.3d 730 (7th Cir. 2001) ................................................................................30

*In re Innovatio IP Ventures, LLC Pat. Litig.*,
    921 F. Supp. 2d 903 (N.D. Ill. 2013) ..................................................................25

*Intl. Broth. of Teamsters, Loc. 734 Health and Welfare Trust Fund v. Philip Morris Inc.*,
    196 F.3d 818 (7th Cir. 1999) ................................................................................26

*Jones v. Ada S. McKinley Community Services*,
    1989 WL 105231 (N.D. Ill. 1989) .......................................................................21

*Kerik v. Tacopina*,
    64 F. Supp. 3d 542, 562 (S.D. N.Y. 2014)..........................................................12

*Kimmelman v. Morrison*,
    477 U.S. 365 (1986)................................................................................................9

*King v. First Capital Fin. Services Corp.*,
    828 N.E.2d 1155 (Ill. 2005) .................................................................................33

*Lachmund v. ADM Inv'r Services, Inc.*,
    191 F.3d 777 (7th Cir. 1999) ................................................................................29

*Lockhart v. HSBC Fin. Corp.*,
    2014 WL 3811002 (N.D. Ill. Aug. 1, 2014) ..........................................................7

*Matter of VMS Securities Litig.*,
    103 F.3d 1317 (7th Cir. 1996), overruled on other grounds ................................30

*Menzies v. Seyfarth Shaw LLP*,
    2016 WL 3854626 (N.D. Ill. July 15, 2016)..........................................................2

*Mercatus Group, LLC v. Lake Forest Hosp.*,
    641 F.3d 834 (7th Cir. 2011) ................................................................................26

*Michael v. Letchinger*,
    2011 WL 3471082 (N.D. Ill. 2011) .....................................................................28

*Nakahara v. Bal*,
    1998 WL 35123 (S.D. N.Y. Jan. 30, 1998) ...........................................................7

*Natl. Council on Compen. Ins., Inc. v. Am. Intern. Group, Inc.*,
    2009 WL 466802 (N.D. Ill. Feb. 23, 2009) .........................................................29

*Nesbitt v. Regas*,
    2015 WL 1331291 (N.D. Ill. Mar. 20, 2015).......................................................21

*Neurosurgery and Spine Surgery, S.C. v. Goldman*,
    790 N.E.2d 925 (Ill. App. 2003) ....................................................32

*Nino v. Johnson*,
    2016 WL 6995563 (N.D. Ill. Nov. 30, 2016) ...........................31

*Nowicki v. Delao*,
    506 Fed. App'x. 514 (7th Cir. 2013) ......................................14

*Pettiford v. Sheahan*,
    2004 WL 626151 (N.D. Ill. Mar. 26, 2004) ...........................20

*Prof. Real Est. Inv'rs, Inc. v. Columbia Pictures Industries, Inc.*,
    508 U.S. 49 (1993) .................................................................27

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ...............................................................18

*Rubloff Dev. Group, Inc. v. SuperValu, Inc.*,
    863 F. Supp. 2d 732 (N.D. Ill. 2012) ........................26, 27, 28

*Scheidler v. National Organization for Women, Inc.*,
    537 U.S. 393 (2003) ...............................................................13

*Shapo v. O'Shaughnessy*,
    246 F. Supp. 2d 935 (N.D. Ill. 2002) ......................................4

*Shaun Fauley, Sabon, Inc. v. Metropolitan Life Ins. Co.*,
    2016 IL. App. ..........................................................................14

*Skelton v. General Motors Corp.*,
    860 F.2d 250 (7th Cir. 1988) ..................................................14

*Snow Ingredients, Incorporated v. SnoWizard, Incorporated*,
    833 F.3d 512 (5th Cir. 2016) ...............................................5, 8

*Sommese v. Am. Bank and Trust Co.*,
    2012 WL 3006824 (N.D. Ill. July 23, 2012) ...........................31

*Spivey v. Vertrue Inc.*,
    528 F.3d 982 (7th Cir. 2008) ....................................................3

*St. Germain v. Howard*,
    556 F.3d 261 (5th Cir. 2009) ..................................................24

*Starfish Inv. Corp. v. Hansen*,
    370 F. Supp. 2d 759 (N.D. Ill. 2005) ......................................25

*U.S. v. Bloom*,
   149 F.3d 649 (7th Cir. 1998) ....................................................................................24

*U.S. v. Denedo*,
   556 U.S. 904 (2009)................................................................................................30

*U.S. v. Weimert*,
   819 F.3d 351 (7th Cir. 2016) ............................................................................16, 17

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966)................................................................................................31

*United States v. Pendergraft*,
   297 F.3d 1198 (11th Cir. 2002) ...................................................................... passim

*Universal Mfg. Co. v. Douglas Press, Inc.*,
   1991 WL 83156 (N.D. Ill. May 8, 1991).........................................................11, 12

*Vemco, Inc. v. Camardella*,
   23 F.3d 129 (6th Cir. 1994) ...................................................................................10

*Vollmer v. Selden*,
   350 F.3d 656 (7th Cir. 2003) ................................................................12, 22, 23

*von Bulow by Auersperg v. von Bulow*,
   657 F. Supp. 1134 (S.D. N.Y. 1987)........................................................................6

*Weissman v. Quail Lodge, Inc.*,
   179 F.3d 1194 (9th Cir. 1999) ...............................................................................31

*Williams v. Aztar Indiana Gaming Corp.*,
   351 F.3d 294 (7th Cir. 2003) .................................................................................16

*Wright v. Associated Ins. Companies Inc.*,
   29 F.3d 1244 (7th Cir. 1994) .................................................................................31

*Wrightsell v. Cook County, Ill.*,
   599 F.3d 781 (7th Cir. 2010) .................................................................................14

## STATUTES

705 ILCS § 205/1 ...........................................................................................................33

720 ILCS 5/33-1 .............................................................................................................21

18 U.S.C. § 201(b)(3) .....................................................................................................21

18 U.S.C. § 1503.......................................................................................................19, 20

18 U.S.C. § 1512 ................................................................................................19, 21

18 U.S.C. § 1515(a)(1)(A) .........................................................................................19

18 U.S.C. § 1951 ........................................................................................................10

18 U.S.C. § 1956(a)(1)(A)(i) .....................................................................................25

18 U.S.C. § 1961(5) ...................................................................................................25

18 U.S.C. § 1962(c) ...............................................................................................4, 29

18 U.S.C. § 1962(d) ......................................................................................28, 29, 30

28 U.S.C. § 1331 ..........................................................................................................3

All Writs Act, 28 U.S.C. § 1651 ...............................................................................30

Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ...............................................3, 4

Racketeer Influenced and Corrupt Organizations Act ("RICO") ........................ passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) .......................................................................................18, 19, 21

Fed. R. Civ. P. 11 ........................................................................................12, 22, 23

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 2, 24, 34

Fed. R. Civ. P. 23(e)(5) ..............................................................................................13

Fed. R. Evid. 408(a) ...................................................................................................17

Rule of Professional Conduct 5.4(a) .........................................................................23

U.S. Const. amend. I ..................................................................................................25

## INTRODUCTION

Defendants, Christopher Bandas and the Bandas Law Firm PC (collectively, "Bandas Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully move to dismiss Plaintiff Edelson PC's ("Edelson") first amended complaint with prejudice because it fails to state a claim upon which relief can be granted. Although Edelson has nearly doubled the length of its initial pleading, the amended complaint still fails to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). While Edelson alleges that the Bandas Defendants engaged in litigation activities that may constitute improper behavior; courts across the country and in this district have found that litigation activities *cannot constitute predicate acts of racketeering activity*. Edelson has no basis to allege that the Bandas Defendants' objections to proposed class action settlements can somehow subject them to civil liability under the federal RICO statute. Moreover, since the RICO claims provide the only viable basis for federal jurisdiction, the Court should dismiss the amended complaint with prejudice.

## BACKGROUND

This purported civil RICO class action was filed by Edelson against one of its clients, Gary Stewart, as well as against others including the Bandas Defendants, in retaliation over an objection raised in a class-action matter pending in Cook County Circuit Court--*Clark v. Gannett Co., Inc.*, Case No. 16-CH-06603.[1] (*See* Docket No. 50 at ¶ 83). Mr. Stewart, a member of the *Gannett* class, filed an objection to the proposed class settlement on the grounds that Edelson failed to provide sufficient information to the class members, and that Edelson's proposed award of $5,000,000 in attorney's fees was excessive. (*Id.*) The Cook County Circuit Court overruled

---

[1] On information and belief, Edelson purports to narrow the scope of its RICO class action in this matter from a nationwide class to the so-called "Illinois Objector Enterprise," with the intent to file multiple RICO claims in states throughout the country against the Bandas Defendants. Thus, the Bandas Defendants respectfully request that in ruling on this Motion to Dismiss, the Court address its collateral estoppel effect on any future filings by Edelson.

Mr. Stewart's objection on the merits. (*Id.* at ¶ 85). Following this, the parties attempted to mediate Mr. Stewart's objection on December 1, 2016, but they were unable to reach an agreement. (*Id.* at ¶¶ 86; 90). The *Gannett* case is pending; the parties currently are still litigating a motion for sanctions that Edelson had filed against the Bandas Defendants.

On December 5, 2016, just days after the unsuccessful mediation, Edelson collaterally attacked Mr. Stewart's objection by filing the initial complaint against Mr. Stewart, the Bandas Defendants, as well as two other attorneys allegedly involved in this matter. (Docket No. 1). On January 25, 2017, the Bandas Defendants filed a motion to dismiss Edelson's complaint for failure to state a claim, which led to Edelson seeking leave to file an amended complaint. (Docket No. 29; 47). Edelson then filed this amended complaint. (Docket No. 50). Despite its verbosity, the amended complaint still fails to state a meritorious claim under RICO, the All Writs Act, or the corresponding state law claims.

## **STANDARD**

"To survive a Rule 12(b)(6) motion, the complaint must not only provide defendants with fair notice of a claim's basis, but must also be 'facially' plausible." *Menzies v. Seyfarth Shaw LLP*, 2016 WL 3854626, at *1 (N.D. Ill. July 15, 2016) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court assumes all well pleaded allegations are true and construes all reasonable inferences in plaintiff's favor. *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp.2d 671, 680 (N.D. Ill. 2012) (citations omitted). The amended complaint fails to allege any RICO claim even under this standard.

## ARGUMENT

## I.     THERE IS NO DIVERSITY JURISDICTION OVER THIS MATTER

The Bandas Defendants reiterate that Edelson's RICO claims are the amended complaint's only basis for federal jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). The amended complaint attempts to evade this reality by claiming that federal diversity jurisdiction exists pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). (Docket No. 50 at ¶ 20). However, § 1332(d)(2) is inapplicable to this case.

To find federal diversity jurisdiction under § 1332(d)(2), Edelson must establish that the amount in controversy exceeds $5 million, as well as provide a *plausible explanation* regarding how the amount in controversy exceeds $5 million. *See Spivey v. Vertrue Inc.*, 528 F.3d 982, 986 (7th Cir. 2008). This plausible explanation is a pleading requirement, and a federal court cannot claim jurisdiction until it is established. *Id.* (citations omitted). Simply stating that the amount in controversy exceeds $5 million does not satisfy the plausible explanation requirement. *See Com. St. Express LLC v. Sara Lee Corp.,* 2008 WL 5377815, at *4 (N.D. Ill. Dec. 18, 2008).

The amended complaint makes a conclusory statement that the amount in controversy exceeds $5 million. (Docket No. 50 at ¶ 20). Aside from this statement, the amended complaint never again approaches this topic, nor does it ever provide any explanation as to how the alleged damages will exceed $5 million. The only concrete amount included in the amended complaint is Edelson's allegation that it *agreed* to pay $225,000 to settle the *Gannett* objection, but there is no allegation that they actually paid anything. (*Id.* at ¶¶ 8; 145; 155; 157). Thus, at most, the amended complaint supports less than 5% of the required amount to establish diversity jurisdiction. The remaining allegations concerning damages are vague references to the costs of delay from the *Gannett* settlement, (which include, PACER fees, printing costs, and so forth).

(*Id.* at ¶¶ 6; 8; 197; 208; 220-21; 228-29). But the amended complaint provides no plausible explanation for how these "delay costs" will exceed $5 million.

The amended complaint does not provide any plausible explanation as to how the amount in controversy exceeds $5 million. This Court cannot exert diversity jurisdiction over this matter under 28 U.S.C. § 1332(d)(2). *See Com. St. Express LLC*, 2008 WL 5377815, at *4.

## II.     THE AMENDED COMPLAINT FAILS TO STATE A RICO CLAIM

In order to state a claim in Count I against the Bandas Defendants pursuant to Section 1962(c) of the RICO statute, Edelson's amended complaint must allege: "(1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cement-Lock v. Gas Tech. Inst.*, 523 F. Supp. 2d 827, 849 (N.D. Ill. 2007) (*citing Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 644 (7th Cir.1995)); *see also* 18 U.S.C. § 1962(c). To establish a pattern of racketeering activity, the amended complaint must allege "at least two predicate acts within ten years that have 'continuity plus relationship.'" *Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 954 (N.D. Ill. 2002) (citations omitted). Here, the amended complaint fails to demonstrate that the Bandas Defendants committed any predicate acts of "racketeering activity."

### A.     Litigation activities cannot constitute predicate acts of racketeering activity.

The Bandas Defendants' original motion to dismiss exposed the major flaw within Edelson's RICO claim: federal courts across the country have found that litigation activities cannot constitute predicate acts of racketeering activity. (Docket No. 30 at pp. 3-7; 9-10). Rather than change its theory, Edelson instead presents numerous new and inapplicable federal criminal statutes in a misguided attempt to distract the Court's attention from this crucial issue. The Court need not dive into the weeds of each specific predicate act alleged in the amended complaint. Instead, the Court should follow well established precedent and dismiss this RICO claim on the grounds that litigation activities cannot constitute predicate acts of racketeering activity.

The Fifth Circuit Court of Appeals recently addressed this issue. *See Snow Ingredients, Incorporated v. SnoWizard, Incorporated*, 833 F.3d 512 (5th Cir. 2016). The case involved a sno-ball company that purchased patent and trademark rights, and then proceeded to file "an avalanche" of meritless lawsuits against its competitors. *Id.* at 518. Eventually, a federal appellate court found that the sno-ball company's lawsuits were groundless and brought solely for purposes of harassment. *Id.* at 519. One of the victims of these lawsuits then brought a RICO suit against the sno-ball company, alleging that the sno-ball company's numerous frivolous lawsuits were a pattern of racketeering activity because they constituted the predicate acts of obstructing justice and tampering with witnesses. *Id.* at 524.

In analyzing this issue, the Fifth Circuit relied on the fact that circuits across the country have found that litigation activity cannot constitute a predicate act of racketeering activity for civil RICO claims. *Id.* (citations omitted). The Court also observed that RICO predicate acts must be *criminal* acts; "civil-RICO liability should not exist unless the pleadings allege actual criminal activity." *Id.* at 525 (*citing St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009)). The Court then held: "[Plaintiff] does not allege any actual criminal activity as a predicate act. At most, [plaintiff] alleges that the defendants 'perpetrated a series of obstructive acts in different civil actions … . But *the obstructive acts [plaintiff] alleges are not criminal conduct*. Therefore, they cannot act as a predicate offense for a civil-RICO claim." *Id.* (emphasis added).

The Fifth Circuit is not alone in finding that obstructive litigation activities cannot constitute predicate acts of racketeering activity. The Eleventh Circuit follows this precedent as well, as it found that allowing litigation activities to constitute predicate acts of racketeering activity would transform all state malicious prosecution torts into federal crimes. *See United*

- 5 -

*States v. Pendergraft*, 297 F.3d 1198, 1207-08 (11th Cir. 2002). In rejecting the theory that a

threat to sue can constitute extortion, the Eighth Circuit stated:

> if we were to hold that two threats to file a civil action … constituted a "pattern
> of racketeering activity," citizens and foreigners alike might feel that their right of
> access to the courts of this country had been severely chilled. Judges and lawyers
> often complain that the courts are inundated with a flood of litigation, but the fact
> remains that litigation is as American as apple pie. **If a suit is groundless or filed
> in bad faith, the law of torts may provide a remedy. Resort to a federal
> criminal statute is unnecessary.**

*I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267–68 (8th Cir. 1984) (emphasis added).

Federal district courts across the country agree; they have found that threatening meritless

or unjustified lawsuits cannot constitute a predicate act of racketeering activity. *See, e.g.*, *von

Bulow by Auersperg v. von Bulow*, 657 F. Supp. 1134, 1145 (S.D. N.Y. 1987) ("a complaint

based on nothing more than a party's filing of unjustified suits cannot fulfill the requirement that

a RICO plaintiff plead a predicate act."). For example, in *American Nursing Care of Toledo, Inc.

v. Leisure*, the Court rejected plaintiff's theory that the defendant's threat of litigation if the

plaintiff did not honor the franchise agreements constituted a predicate act of racketeering

activity because "[s]uch a threat does not constitute a criminal act." 609 F. Supp. 419, 430 (N.D.

Ohio 1984). Similarly, in *Luther v. American National Bank of Minnesota*, the Court found that

the plaintiff could not allege predicate acts of racketeering activity by claiming the defendants

filed fraudulent state court filings because "as numerous courts around the country have held,

such documents, generally, cannot be the basis of a RICO claim." 2012 WL 5471123, at *6 (D.

Minn. Oct. 11, 2012) (citations omitted).

These decisions are not outliers. Rather, they represent the view that nearly every court

has adopted regarding this issue. *See E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 13 (D.

D.C. 2014) ("Abusive or sham litigation does not constitute a RICO predicate act."); *Curtis &

*Associates, P.C. v. L. Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 171 (E.D. N.Y. 2010) ("[P]ersuasive authority in this and other jurisdictions suggests that the litigation activities alleged in this Complaint cannot properly form the basis for RICO predicate acts."); *Nakahara v. Bal*, 1998 WL 35123, at *7 (S.D. N.Y. Jan. 30, 1998) ("that the threat of litigation or the initiation of unjustified lawsuits constituting malicious prosecution cannot alone form a predicate act for purposes of RICO, has been reached by numerous courts encountering these circumstances in this jurisdiction and others.").

Multiple courts in the Northern District of Illinois have reached this same conclusion. *See Lockhart v. HSBC Fin. Corp.*, 2014 WL 3811002, at *7 (N.D. Ill. Aug. 1, 2014) ("Courts in this District have explained that 'filing and prosecuting a [civil] complaint is not considered … a predicate act under RICO.") (citations omitted). Several cases have held that filing foreclosure documents containing false statements cannot constitute a predicate act of racketeering activity under RICO. *Id.*; *see also Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 849 (N.D. Ill. 2013); *Carthan-Ragland v. Standard Bank and Trust*, 2012 WL 1658244 (N.D. Ill. May 11, 2012). Similarly, courts have held that filing frivolous lawsuits to enforce "illegally obtained copyright[s]" in order to "extract money from others" cannot constitute a predicate act of racketeering activity under civil RICO. *See Harris Custom Builders, Inc. v. Hoffmeyer*, 1994 WL 329962, at *4 (N.D. Ill. July 7, 1994). Further, courts have found that it is not a predicate act of racketeering activity to write letters falsely claiming ownership of products and trademarks, and then threaten litigation as a result of such false claims. *See Hexagon Packaging Corp. v. Mandy Gutterman & Associates Inc.*, 2000 WL 226396, at *6 (N.D. Ill. Feb. 17, 2000).

The rationale underlying these decisions is three-fold. First, courts are cautious to expand civil RICO's reach beyond *criminal* acts of racketeering activity; and filing meritless litigation is

not a criminal act. *See Snow Ingredients, Incorporated*, 833 F.3d at 524-25. Second, courts do not want to federalize the state law tort of malicious prosecution, which is the proper remedy for parties who defend against frivolous litigation. *See I.S. Joseph*, 751 F.2d at 267. Finally, courts are aware that if meritless litigation can constitute a predicate act of racketeering activity, then defendants who prevail in civil litigation will begin to file RICO countersuits; which would impose a chilling effect upon all litigants who may have meritorious claims, but who fear the expenses involved in defending a RICO countersuit. *See Pendergraft*, 297 F.3d at 1207-08.

At its core, the amended complaint alleges that the "Illinois Objector Enterprise" filed meritless objections to class action settlements, waited for their objections to be over-ruled by the trial court, and then threatened an appeal (thereby delaying payment of the settlement) unless class counsel agreed to settle the objection. (Docket No. 50 at ¶¶ 1-8). Despite the excessive length of the amended complaint, all of the RICO allegations come back to this same theory of liability. (*Id.* at ¶¶ 2-3; 31; 39; 83-84; 108; 127; 147; 150; 156; 168; 172; 177; 179; 190; 200; 210). There is no question that filing an objection to a class action settlement and filing an appeal are litigation activities. Despite Edelson's allegations that the objections were meritless and brought for bad faith purposes, this Court should adopt the precedent that federal courts across the country have established: litigation activities cannot constitute a predicate act of racketeering activity. To hold otherwise will transform a state tort into a federal crime, and will prevent future class members from objecting to collusive and fraudulent class action settlements out of fear of provoking a RICO countersuit. *See Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) (explaining the valuable role of objectors in class action suits).

Moreover, allowing this case to proceed will open the floodgates to future litigants collaterally attacking civil litigation proceedings by filing RICO countersuits alleging frivolous

or meritless litigation. *See Pendergraft*, 297 F.3d at 1207 ("Allowing litigants to be charged with extortion would open yet another collateral way for litigants to attack one another. The reality is that litigating parties often accuse each other of bad faith. The prospect of such civil cases ending as criminal prosecutions gives us pause."). If this Court enables parties to argue that prior litigation constituted a predicate act of racketeering activity, then this Court (and others) will have to second-guess prior proceedings in order to determine whether they were meritless or brought for improper purposes.[2] Any party that defends against frivolous or meritless litigation can seek redress either through the court in the underlying proceeding, or through a state tort action for malicious prosecution; there is no need to create a new, additional route of collaterally attacking final court decisions through federal RICO countersuits. *Cf. Kimmelman v. Morrison*, 477 U.S. 365, 378 (1986) (allowing criminal defendants to collaterally attack final state court decisions by filing *habeas* petitions for ineffective assistance of counsel claims because "collateral review will frequently be the *only means* through which an accused can effectuate the right to counsel") (emphasis added).

For the reasons above, the Court should dismiss the RICO claim in Count I of this amended complaint with prejudice.

> **B.      Edelson fails to adequately plead any of the alleged predicate acts of racketeering activity scattered throughout its amended complaint.**

Were the Court to examine each individual predicate act alleged in the amended complaint, it would discover that the allegations collapse like a house of cards.

> 1.      The amended complaint does not adequately allege a Hobbs Act violation.

Edelson's Hobbs Act claim remains unchanged from its initial complaint. The amended complaint alleges that the Bandas Defendants committed extortion by filing an objection on

---

[2] For example, this case alone would involve re-examining and second-guessing the decisions made by fifteen prior courts over a seven year period. (Document No. 50 at ¶ 109, Table 1).

behalf of Mr. Stewart to the proposed class settlement in the *Gannett* case, and then threatened to file an appeal and delay Edelson's ability to collect its attorney's fees from the proposed class settlement unless Edelson paid to settle Mr. Stewart's objection. (Docket No. 50 at ¶¶ 143-146). As explained in the Bandas Defendant's initial motion to dismiss, such allegations do not amount to a Hobbs Act violation.

The Hobbs Act punishes an individual who, "in any way or degree obstructs, delays, or affects commerce … by … extortion or attempts or conspires so to do." 18 U.S.C. § 1951(a). Extortion is defined under the statute as: "the obtaining of property from another, with his consent, induced by wrongful use of … fear." 18 U.S.C. § 1951(b)(2).

a. Threatening meritless litigation does not constitute extortion under the Hobbs Act.

Every circuit that has examined this issue has found that threatening meritless litigation does not constitute the wrongful use of fear under the Hobbs Act. *See Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) ("We recognize that litigation can induce fear in a defendant; and it would be fair, at least in other contexts, to characterize as 'wrongful' the filing of a groundless lawsuit … But we join a multitude of other courts in holding that meritless litigation is not extortion under § 1951."); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) ("A threat of litigation if a party fails to fulfill even a fraudulent contract, moreover, does not constitute extortion."); *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267–68 (8th Cir. 1984) ("If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary."); *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 n.2 (Fed. Cir. 2014); *Dias v. Bogins*, 134 F.3d 361 (1st Cir. 1998); *First P. Bancorp, Inc. v. Bro*, et al., 847 F.2d 542, 547 (9th Cir. 1988); *U.S. v. Pendergraft*, 297 F.3d 1198, 1207 (11th Cir. 2002).

In *Deck v. Engineered Laminates*, the plaintiff alleged a Hobbs Act violation because the defendant threatened to file meritless litigation if the plaintiff exercised its right to compete against the defendant. 349 F.3 at 1257. The Tenth Circuit Court of Appeals found that the defendant's actions were not extortion. *Id.* at 1257-58. The Court explained:

> **Extortion is the antithesis of litigation as a means of resolving disputes.** To promote social stability, we encourage resort to the courts rather than resort to force and violence. Yet recognizing abusive litigation as a form of extortion would subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim. Whenever an adverse verdict results from failure of the factfinder to believe some evidence presented by the plaintiff, the adverse party could contend that the plaintiff engaged in extortionate litigation. Comfortable that the adjective "wrongful" in the extortion statute was not intended to apply to litigation, we hold that Plaintiff's allegations of bad-faith litigation do not state the predicate act of extortion.

*Id.* at 1258 (emphasis added).

In *Harris Custom Builders, Inc.*, a case in this district, the plaintiff alleged that the defendant obtained "invalid copyright registrations" and used them to file frivolous lawsuits to "extract money from others." 1994 WL 329962, at *4 (N.D. Ill. July 7, 1994). The Court cited the Eighth Circuit's holding in *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, (8th Cir. 1984), as well as several cases from the Southern District of New York, in finding that filing frivolous lawsuits, even if brought in bad faith, does not constitute extortion. *Id.* Another Court in this district similarly found that:

> to hold that filing, or threatening to file, a lawsuit is extortion would have a severe chilling effect on access to the courts … . Other courts addressing the issue have found that the threat to file a lawsuit, or filing a lawsuit, cannot constitute extortion under § 1951, and cannot be a predicate act under RICO. We follow their lead, and find that [plaintiff] has not stated a claim for a violation of § 1951.

*Universal Mfg. Co. v. Douglas Press, Inc.*, 1991 WL 83156, at *2 (N.D. Ill. May 8, 1991).

In addition, this Court should also consider *FindtheBest.com, Inc. v. Lumen View Technology LLC* as persuasive authority because of its analogous facts. 20 F. Supp. 3d 451 (S.D.

- 11 -

N.Y. 2014). In *Lumen*, a "patent troll" filed frivolous infringement lawsuits and demanded "nuisance settlements" to go away. *Id.* at 454. The plaintiff alleged that the patent troll had no business operations other than filing infringement suits, conducted no investigations prior to filing such suits, had no intention of actually litigating any claim, and was unable to explain the basis for its suit against the plaintiff. *Id.* at 454-55. The plaintiff filed a civil RICO suit alleging that the patent troll committed extortion in violation of the Hobbs Act by filing "frivolous lawsuits with the wrongful intent and effect of causing fear of economic loss." *Id.* at 457.

The Court dismissed the complaint because "the instigation of meritless litigation cannot constitute extortion under the Hobbs Act." *Id.* The Court observed that all federal courts of appeals that have addressed this issue have found that threats of meritless litigation are not extortion. *Id.* Further, if frivolous litigation constituted extortion, then all unsuccessful plaintiffs would likely face RICO countersuits from vengeful defendants looking to claim treble damages. *Id.*; *see also Kerik v. Tacopina*, 64 F. Supp. 3d 542, 562 (S.D. N.Y. 2014) ("courts would be wary of holding that the filing of a meritless lawsuit is ... extortionate lest every unsuccessful lawsuit lead to an extortion claim"). The Court also stated that a chilling effect could occur if all claimants were hesitant to bring their disputes to the judicial system for fear of facing a RICO countersuit. *FindtheBest.com, Inc.*, 20 F. Supp. 3d at 457.

Finally, it is worth noting that Edelson's citation to *Vollmer v. Selden* for its definition of extortion in this matter is unavailing because that case did not involve the Hobbs Act; it involved Rule 11 sanctions. (*See* Docket No. 50 at ¶ 33); *Vollmer v. Selden*, 350 F.3d 656 (7th Cir. 2003). Moreover, *Vollmer* relied on Black's Law Dictionary's definition of extortion to analyze whether to impose sanctions; *not* the Hobbs Act's statutory definition. *Vollmer*, 350 F.3d at 660. This distinction is critical, since Rule 11 only imposes monetary sanctions, while the Hobbs Act is a

*criminal statute*. The Supreme Court has cautioned that the Hobbs Act's definition of extortion "must be strictly construed" and "any ambiguity must be resolved in favor of lenity." *See Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 408-409 (2003).

This Court should follow the precedent established by federal courts across the nation and in this district, which holds that the threat of meritless or frivolous litigation does not constitute extortion under the Hobbs Act.

> b.     The claim of right rule prevents any liability under the Hobbs Act.

This Court must also dismiss Edelson's allegations of "extortion" under the Seventh Circuit's claim of right rule. In *Rennell v. Rowe*, the Seventh Circuit addressed the issue of how to determine when imposing fear of economic harm is "hard bargaining," and when it is "extortion" under the Hobbs Act. 635 F.3d 1008, 1011 (7th Cir. 2011). The Court developed the following rule to distinguish between hard bargaining and extortion: "If a defendant has no claim of right to property, the use of fear to obtain that property—including the fear of economic loss—may also amount to extortion." *Id.* at 1012. But, "where the defendant has a *claim of right to property* and exerts economic pressure to obtain that property, that conduct is not extortion and no violation of the Hobbs Act has occurred." *Id.* (emphasis added). Courts have relied on *Rennell* to find that if the defendant had a claim of right to the property at issue, then asserting economic duress or imposing "unpleasant hard dealing" in obtaining said property does not constitute extortion under the Hobbs Act. *See ChampionsWorld, LLC v. U.S. Soccer Federation, Inc.*, 890 F. Supp. 2d 912, 941-42 (N.D. Ill. 2012); *Glamour Girlz, LLC v. D.M. Merch., Inc.*, 2012 WL 6004233, at *2 (N.D. Ill. Sept. 24, 2012).

Individual class members have the right to object to proposed class settlements. *See* Fed. R. Civ. P. 23(e)(5). In fact, the Seventh Circuit has recognized that objectors play an important role in ensuring class counsel does not conspire to obtain settlements that provide substantial

attorney's fees at the expense of the class members. *See Eubank*, 753 F.3d at 720. Further, the law gives class members the right to appeal their objection.[3] *See, e.g.*, *Wrightsell v. Cook County, Ill.*, 599 F.3d 781, 784 (7th Cir. 2010) (*citing Devlin v. Scardelletti*, 536 U.S. 1, 10-11 (2005)). Moreover, the law allows parties to reach settlement agreements that waive their right to appeal. *See, e.g.*, *Skelton v. General Motors Corp.*, 860 F.2d 250, 259 (7th Cir. 1988).

Indeed, the amended complaint does not challenge Mr. Stewart's right to object to the proposed class settlement in the *Gannett* case, which as a class member, Mr. Stewart had every right to do. (*See* Docket No. 50 at ¶¶ 83-93). Nor does the amended complaint challenge Mr. Stewart's right to appeal the denial of his objection. The amended complaint also does not suggest that the Bandas Defendants had no right to negotiate a possible settlement of Mr. Stewart's objection. Further, if Edelson believed that $225,000 was an excessive amount to settle the objection, then it was free to reject the proposal and to challenge the merits of any appeal. *See Nowicki v. Delao*, 506 Fed. App'x. 514, 516 (7th Cir. 2013) (finding proposed settlement offer could not constitute extortion under the Hobbs Act because the plaintiffs "were perfectly free to reject the settlement offer"). Because all of the misconduct alleged in the amended complaint regarding the *Gannett* objection was permitted under law, the "claim of right" rule shields the Bandas Defendants from any liability under the Hobbs Act.

For these reasons, the amended complaint cannot allege that the Bandas Defendants committed the predicate act of extortion in violation of the Hobbs Act.

        2.        The amended complaint does not adequately allege a wire fraud.

To establish wire fraud, Edelson must allege that: (1) the Bandas Defendants participated in a scheme to defraud; (2) the Bandas Defendants committed an act with an intent to defraud;

---

[3] The Illinois Rules of Civil Procedure also authorize class members to file objections to proposed class settlements, and appeal their objections. *See Shaun Fauley, Sabon, Inc. v. Metropolitan Life Ins. Co.*, 2016 IL. App. (2d) 150236, at ¶ 35 (*citing* 735 ILCS 5/2-803).

and (3) the Bandas Defendants used the wires to further their fraudulent scheme. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 657 (7th Cir. 2015) (*citing* 18 U.S.C. § 1343).

a.    Litigation activities cannot form the basis for wire fraud.

Federal courts in this district and elsewhere have found that the mail and wire fraud statutes do not extend to communications sent in litigation activities. *Carthan-Ragland*, 2012 WL 1658244, at *2 ("filing and prosecuting a complaint is not considered mail or wire fraud or a predicate act under RICO"); *Drobny*, 929 F. Supp. 2d at 848 (finding defendant's alleged act of filing false foreclosure complaints could not constitute mail or wire fraud); *Curtis & Associates, P.C. v. L. Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 172 (E.D. N.Y. 2010) (citations omitted). In *Spiegel v. Continental Illinois National Bank*, the district court examined whether correspondence from the opposing party's attorney during a pending state court proceeding could constitute predicate acts of mail fraud under the RICO statute. 609 F. Supp. 1083, 1087-88 (N.D. Ill. 1985), *aff'd*, 790 F.2d 638 (7th Cir. 1986). The Court found that, "Congress could not have intended that the mail fraud statute sweep up correspondence between attorneys, dealing at arm's length on behalf of their parties, concerning an issue in pending litigation, especially where the presiding judge is aware of the alleged scheme and will ultimately rule on the acts in question." *Id.* at 1089. Moreover, subjecting such communications to mail fraud would "chill an attorney's efforts and duty" in representing his or her client. *Id.*

This case is analogous to *Spiegel*. Here, Edelson's wire fraud claim relies on its allegation that while the *Gannett* litigation was pending in the state court, the defendants sent an e-mail to Edelson representing that they had a "good faith objection" to the *Gannett* Settlement that could be resolved to the "benefit of the class," and that the mediation would be conducted by a "neutral third party." (Docket No. 50 at ¶ 153). Edelson's basis for this claim is communications made between two attorneys in the midst of litigation. Further, as in *Spiegel*, here too the case remains

- 15 -

pending in state court, so any issues that Edelson has with the objection can be addressed by the Cook County Circuit Court, rather than through this collateral RICO suit. Therefore, this Court should follow *Spiegel* and reject an overbroad application of the wire fraud statute.

> b. Edelson cannot show any material misrepresentation.

"A necessary element of a scheme to defraud is the making of a false statement or material misrepresentation, or the concealment of a material fact." *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003) (citations omitted). A misrepresentation is "material" if it has "a tendency to influence or to be capable of influencing the decision-maker." *U.S. v. Weimert*, 819 F.3d 351, 355 (7th Cir. 2016) (citations omitted).

The amended complaint alleges that the Bandas Defendants claimed they had a good faith objection that could benefit the class and that a neutral mediator could mediate this dispute; at mediation the Bandas Defendants offered to withdraw their objection for $225,000 without requiring any changes to the *Gannett* class settlement; and that Edelson agreed to pay $225,000. (Docket No. 50 at ¶¶ 153-157). However, Edelson cannot show that any of the Bandas Defendants' statements influenced or was even capable of influencing its decision to agree to pay $225,000. Edelson knew the substance of the Stewart objection at the time of the mediation, since the parties had already litigated it before the Circuit Court of Cook County; and Edelson fails to demonstrate how the intent behind his objection would have influenced its decision to mediate. While Edelson claims it would not have mediated had it known that the mediator was allegedly not a neutral third party, Edelson fails to show how its reliance on the mediator's neutrality, or even how any action or statement by the mediator, influenced Edelson to agree to pay $225,000 for Mr. Stewart to withdraw his objection. Third, that Edelson has in the *Gannett* case affirmatively sought to enforce an alleged settlement for $225,000 further demonstrates that plaintiffs could not have been influenced by any of the allegedly "material misrepresentations."

- 16 -

Statements made in negotiations regarding a party's bargaining position cannot form the basis for wire fraud. *See Weimert*, 819 F.3d at 366. "Congress could not have meant to criminalize deceptive misstatements or omissions about a [party's] negotiating positions … . To state the obvious, [negotiating parties] will often try to mislead the other party about the prices and terms they are willing to accept. Such deceptions are not criminal." *Id.* at 357. Even if the Bandas Defendants' e-mail conveyed that Mr. Stewart would settle his objection on grounds that would benefit the entire class, but then revealed during mediation that he was willing to settle for less, this cannot constitute a fraudulent statement indictable under the federal wire fraud statute.

Moreover, given Edelson's recitation of the Bandas Defendants' alleged "playbook" concerning objections to class action settlements, Edelson cannot allege that it was deceived or defrauded by any communication regarding a possible settlement of Mr. Stewart's objection. Also, under Federal Rule of Evidence 408, Edelson cannot introduce statements made during negotiations into evidence at trial. Fed. R. Evid. 408(a). As a result, Edelson cannot allege any wire fraud on the basis of statements made by the Bandas Defendants as part of their negotiation of the *Gannett* objection.

> c. Edelson cannot establish that the "Illinois Objector Enterprise" committed wire fraud through Defendant Thut's daughter's involvement with *In re Lifetime Fitness*.

Edelson tries to allege an additional predicate act of wire fraud by attacking the integrity of Defendant Thut's daughter. Edelson asserts that Defendant Thut filed a fraudulent claim form on behalf of his daughter in the *In re Lifetime Fitness* class action. (Docket No. 50 at ¶¶ 164-165). This does not constitute a predicate act under RICO for several reasons.

Edelson was not involved with the *In re Lifetime Fitness* action in any way, so this allegedly false claim could not have caused Edelson any injury. *See Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) ("to state a claim under civil RICO, the plaintiff is required

- 17 -

to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'") (Citations omitted). Moreover, Edelson fails to show how this predicate offense was committed by the "Illinois Objector Enterprise," as opposed to Defendant Thut acting in his individual capacity. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) ("[RICO] liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's affairs*,' not just their *own affairs*.") (Emphasis in original). Finally, Edelson fails to conform to Rule 9(b)'s pleading requirements for fraud, because his amended complaint fails to allege any fraudulent statement that was allegedly advanced in pursuit of the claim; instead Edelson simply berates Thut's daughter for not remembering whether her father helped her complete the claim form. (Docket No. 55 at ¶ 166).

### 3. The amended complaint does not adequately allege mail fraud.

The amended complaint claims that the Illinois Objector Enterprise committed mail fraud by mailing their objections to proposed class action settlements. (Docket No. 50 at ¶¶ 167-171). To state a claim for mail fraud, the amended complaint must establish: "(1) the defendants' participation in a scheme to defraud; (2) the defendants' intent to defraud; and (3) the defendants' *use of the mail* in furtherance of the scheme to defraud." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1005 (7th Cir. 2004). Significantly, "[a] number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and *all* have rejected that possibility." *Pendergraft*, 297 F.3d at 1208 (citations omitted). Thus, Edelson cannot claim that the Illinois Objector Enterprise used the mail in furtherance of any scheme by serving their objection through the mail. As discussed above, it is established law in this district that litigation documents cannot constitute the basis for wire or mail fraud. *See, e.g.*, *Carthan-Ragland v. Stand. Bank and Trust*, 2012 WL 1658244, at *2 (N.D. Ill. May 11, 2012) ("filing and prosecuting a complaint is not considered mail or wire fraud … under RICO").

Further, Edelson's amended complaint fails to conform to Rule 9(b)'s heightened pleading requirements for mail fraud because it does not identify a single fraudulent statement contained in *any* of the objections to support its mail fraud allegation. (Docket No. 50 at ¶¶ 167-171). Edelson's vague, broad, and conclusory allegations that the Illinois Objector Enterprise were in a scheme "to defraud" class counsel is insufficient to state a mail fraud claim under Rule 9(b). *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (Rule 9(b) requires "the plaintiff to state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'").

Edelson's allegations fail to show that the Bandas Defendants used "mailings" to further a scheme to defraud because the amended complaint only alleges that the Bandas Defendants mailed objections to further their "extortion" scheme. (Docket No. 50 at ¶ 171). Edelson cannot re-package its extortion claim as a mail fraud claim to save the futility of its amended RICO complaint. Thus, Edelson has failed to allege a viable RICO predicate act of mail fraud.

4. The amended complaint cannot allege predicate acts of obstruction of justice or witness tampering because those statutes only apply to federal proceedings.

In an attempt to add to its meritless extortion and wire fraud allegations, Edelson's amended complaint includes a hodgepodge of additional allegations and claims they constitute "predicate acts" committed by the "Illinois Objector Enterprise." Two of these new claims are obstruction of justice under 18 U.S.C. § 1503 and witness tampering under 18 U.S.C. § 1512. (Docket No. 50 at ¶¶ 172-188). Both of these statutes, however, only apply to federal court proceedings. *See Davit v. Davit*, 366 F. Supp. 2d 641, 655-56 (N.D. Ill. 2004); *see also* 18 U.S.C. § 1503(a); 18 U.S.C. § 1515(a)(1)(A).

Edelson's only alleged injury in this case arises from the *Gannett* litigation, which is still pending in the Circuit Court of Cook County. (Docket No. 50 at ¶¶ 6; 8; 145; 157; 197; 208; 220-221; 228-229).[4] Since that is a state court proceeding, Edelson cannot assert claims under either Sections 1503 or 1512 arising from any actions that occurred in that matter. *See Pettiford v. Sheahan*, 2004 WL 626151, at *11 (N.D. Ill. Mar. 26, 2004) ("To constitute an offense under this statute, defendants' acts must relate to a proceeding in a federal court of the United States.").

Moreover, the amended complaint reveals Edelson's concession of this tenet. The amended complaint includes tables of cases where Edelson claims obstruction of justice and witness tampering allegedly perpetrated by the "Illinois objector Enterprise," specifically, Tables 3 and 4. (Docket No. 50 at ¶¶ 173; 184). Both tables, however, omit *Gannett*. (*Id.*) The problem with this is that Edelson has no connection with the cases that are cited in these tables. Edelson cannot claim it suffered any injury from these cases, which means Edelson has no standing to assert a RICO claim by relying on these alleged predicate acts. "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Group, LLC*, 559 U.S. at 9 (citation omitted). "For RICO purposes, proximate cause is only found where a plaintiff's harm results directly from the defendant's predicate acts." *Faith Constr. 4, Inc. v. Girouard*, 2014 WL 6679118, at *3 (N.D. Ill. Nov. 21, 2014) (*citing Hemi Group, LLC*, 559 U.S. at 9). Because Edelson cannot show that any of the alleged predicate acts of obstruction of justice or witness tampering proximately caused Edelson any harm, Edelson cannot seek to recover against the Bandas Defendants for these alleged predicate acts of racketeering activity.

---

[4] Edelson does state that it was one of the law firms involved in *Wright v. Nationstar*, which was a prior federal court proceeding; but the amended complaint fails to state that it suffered any injury in that matter because the objection was withdrawn without any payments involved. (Docket No. 50 at ¶¶ 170, Table 2; 173, Table 3).

Also, courts in this district have found that claims under Section 1512 are subject to Rule 9(b) when the allegations at issue "sound in fraud." *See Nesbitt v. Regas*, 2015 WL 1331291, at *12 n.21 (N.D. Ill. Mar. 20, 2015); *Jones v. Ada S. McKinley Community Services*, 1989 WL 105231, at *3 (N.D. Ill. 1989). The amended complaint's allegations regarding witness tampering are less than clear, but they seem to allege that the "Illinois Objector Enterprise" solicited clients to file objections containing "false or misleading testimony." (Docket No. 50 at ¶¶ 179-180). This allegation sounds in fraud, so the amended complaint has to comply with Rule 9(b). *See Nesbitt*, 2015 WL 1331291, at *12 n.21. Edelson's amended complaint does not include a single fraudulent statement that was allegedly contained in *any* of the objections cited in its table of cases, nor any false testimony from those cases. (Docket No. 50 at ¶ 184). For those reasons, the amended complaint also does not adequately allege the predicate act of witness tampering under Section 1312 because it fails to comport with Rule 9(b).

5.     The amended complaint does not adequately allege predicate acts of bribery.

Edelson tries to disguise the fact that its claims against the Bandas Defendants are at most state law claims for malicious prosecution by cloaking them in allegations of "bribery" under 18 U.S.C. § 201(b)(3) and 720 ILCS 5/33-1. There is no case law to support this pleading tactic. In fact, federal courts across the country have found that parties cannot convert malicious prosecution claims into federal RICO suits. *See, e.g.*, *I.S. Joseph Co., Inc.*, 751 F.2d at 267–68.

No court in this district has sustained a civil RICO claim alleging bribery of a witness as a predicate act. Only a handful of cases across the country have ever analyzed civil RICO cases involving the federal witness bribery statute. Those cases have found that due to the egregiousness of such an allegation, plaintiffs must plead a *detailed factual basis* alleging the

specific testimony obtained and the value exchanged for this testimony. *See E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 15 (D.D.C. 2014), *aff'd*, 629 Fed. Appx. 1 (D.C. Cir. 2015).

The amended complaint alleges that the "Illinois Objector Enterprise" promised to compensate its client-objectors if the client-objectors in turn would misrepresent to the Court that their objections were filed in good faith, when in fact they were brought for an improper purpose. (Docket No. 50 at ¶¶ 191; 195). The amended complaint does not allege that the "Illinois Objector Enterprise" paid or promised to pay its client-objectors to give false testimony before the Court or provide false statements within their objections; but rather alleges that the "Illinois Objector Enterprise" convinced its clients-objectors to file objections in bad faith. (*See Id.* at ¶ 61). Edelson attacks the *intent* behind the objections, not the *content* of any of the objections. This means that Edelson's claim is at most one for malicious prosecution, but federal courts refuse to recognize malicious prosecution claims under the RICO statute. *See, e.g., I.S. Joseph Co., Inc.*, 751 F.2d at 267–68 ("If a suit is … filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary."). Moreover, this allegation cannot sustain a bribery allegation because there was no false testimony involved.

The amended complaint tries to support its bribery claim by citing excerpts from several depositions of the Bandas Defendants' past clients who testified regarding their ignorance of the substance of the objections filed on their behalf. (Docket No. 50 at ¶¶ 70-73). The Seventh Circuit has held that a client's ignorance of his or her objection does not subject an attorney to Rule 11 sanctions; thus, it is frivolous to argue that a client's ignorance can criminally convict the attorney of bribery. *See Vollmer v. Selden*, 350 F.3d 656, 661-62 (7th Cir. 2003).

In *Vollmer v. Selden*, the Seventh Circuit examined an appeal from two attorneys who filed an objection to a class action settlement and were *sua sponte* sanctioned by the district court

because their client lacked a "passing understanding" of the settlement that he was purportedly objecting to. 350 F.3d 656, 658 (7th Cir. 2003). The issue in the case was, for Rule 11 purposes, whether the attorneys filed the objection to attempt to benefit the entire class, or solely for purposes of getting paid to go away. *Id.* at 661. The Seventh Circuit examined the client's testimony regarding his ignorance of the settlement:

> it would be improper to infer from this evidence alone that [the attorneys'] purpose was extortion. [The attorneys] may have been legitimately concerned that the settlement was inadequate and initiated the intervention for that reason. Even if they were not, they may have been motivated to improve the settlement for the class and to thereby recover a fee, which, as discussed supra, is not improper if the objection is non-frivolous.
> …
>
> If it is fruitless for a court to attempt to determine the motive of a named plaintiff based on his or her ignorance of the case, it would be an even greater inferential leap to use the named plaintiff's ignorance to determine the motive of his or her attorney … . We find that, in and of itself, *the plaintiff's level of familiarity with the details of his case to be of little relevance in determining the specific purpose of his counsel in initiating such case.* It certainly does not show that [the attorneys] were attempting extortion.

*Id.* at 661-62 (emphasis added).

*Vollmer* established that the Court cannot view a client-objector's ignorance of the substance of the class action settlement as evidence that his or her attorney brought the objection in bad faith. Yet, Edelson attempts to introduce the "Illinois Objector Enterprise's" clients' ignorance of the settlements they objected to as an argument that the "Illinois Objector Enterprise" *bribed* them into filing objections. This inferential leap is improper and impermissible under the laws of this circuit.

At worst, the amended complaint's allegations regarding the Bandas Defendants' fee arrangement with its clients might suggest that the Bandas Defendants could have violated Model Rule of Professional Conduct 5.4(a). (Docket No. 50 at ¶ 65). While such conduct may be

unethical, *it is not a federal or state crime*. *See St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) ("the 'patterns of racketeering activity' they allege are at worst violations of the rules of professional responsibility. Because Appellants have not alleged the requisite predicate *criminal* acts under RICO, they have not met the pleading standard of Rule 12(b)(6).") (Emphasis in original); *see also U.S. v. Bloom*, 149 F.3d 649, 651 (7th Cir. 1998) (distinguishing ethical violations from criminal conduct, since "few violations of ethical duties are federal crimes"); *over-ruled on other grounds George Ryan v. U.S.*, 688 F.3d 845, 847 (7th Cir. 2012). The amended complaint cannot rely on any of these fee arrangements to state a claim for bribery.

If the Court adopts Edelson's bribery theory, then it will create a chilling effect on future class action objectors, and further enable collusion between class counsel and defense counsel in establishing class settlements at the expense of class members. *See Eubank*, 753 F.3d at 720 (discussing how class objectors prevent collusion in class settlements). This is because, under Edelson's theory, any disgruntled class counsel could attack a class objector's fee arrangement with his or her counsel by claiming it constitutes a "bribe," and thus expose the objector to civil (and possibly criminal) liability. This Court cannot provide class counsel with such a weapon, as it would effectively silence any detractors from proposed class settlements, no matter how outrageous and collusive the terms and attorneys' fees awards for the class.

6.      The amended complaint does not adequately allege money laundering.

Edelson's final predicate act alleged is that the "Illinois Objector Enterprise" committed money laundering by paying mediator Rod Max from Upchurch, Watson, White, & Max $2,500 in mediation fees. (Docket No. 50 at ¶¶ 209-215). To state a claim for money laundering, the amended complaint must show that the "Illinois Objector Enterprise" knowingly possessed proceeds from "some form of unlawful activity," and conducted or attempted to conduct a

financial transaction involving the proceeds from the "specified unlawful activity," with the intent to promote the carrying of said "specified unlawful activity." 18 U.S.C. § 1956(a)(1)(A)(i).

The alleged "unlawful activities" are the so-called predicate acts contained in Edelson's amended complaint. (Docket No. 50 at ¶ 214). But, for the reasons explained above, the amended complaint fails to establish *any* of the alleged predicate acts. Thus, the amended complaint cannot demonstrate that the "Illinois Objector Enterprise" received proceeds from any "unlawful activity," so Edelson cannot demonstrate that the Bandas Defendants committed money laundering. *See Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 774 (N.D. Ill. 2005) ("None of the allegations … suggest that any of the RICO defendants engaged in activities that constitute 'specified unlawful activity' within the meaning of the money laundering statute. As a result, [plaintiff] has not properly alleged that the RICO defendants engaged in … money laundering.").

### C. The amended complaint does not allege a pattern of racketeering activity.

To establish a "pattern" under RICO, the amended complaint must allege "at least two acts of *racketeering activity*." 18 U.S.C. § 1961(5) (emphasis added). While the amended complaint has alleged a pattern of activity, for the reasons explained above, it has not alleged a pattern of "racketeering" activity. *See Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 772 (N.D. Ill. 2005) ("Not all crimes or misdeeds constitute racketeering activities; instead, only those offenses set forth in 18 U.S.C. § 1961 qualify as predicate acts for purposes of the RICO statute."). Therefore, Edelson has failed to state a claim for civil RICO under Count I.

### D. The *Noerr-Pennington* Doctrine bars any RICO liability in this matter.

"The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people ... to petition the Government for a redress of grievances,' U.S. Const. amend. I, and provides protection from liability for those who petition any department of the government." *In re Innovatio IP Ventures, LLC Pat. Litig.*, 921 F. Supp. 2d 903, 910 (N.D. Ill.

2013). This includes petitioning the courts. *See, e.g,* *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Although the *Noerr-Pennington* doctrine originated in the realm of antitrust, the Seventh Circuit has extended its immunity to RICO lawsuits. *See Intl. Broth. of Teamsters, Loc. 734 Health and Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999) (citations omitted).

In this case, Edelson attempts to hold the Bandas Defendants liable for a civil RICO violation because the amended complaint alleges that the "Illinois Objector Enterprise" filed objections to class action settlements with the intent for them to be over-ruled, so that the alleged enterprise can file an appeal and delay the class counsel's payment from the settlement proceeds. Since these allegations involve petitioning the court, the Bandas Defendants are entitled to immunity under the *Noerr-Pennington* doctrine. *See Rubloff Dev. Group, Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 742-744 (N.D. Ill. 2012) (finding *Noerr-Pennington* doctrine provided immunity from RICO suit).

There are two exceptions to *Noerr-Pennington*'s absolute immunity: the "fraudulent litigation" exception and the "sham litigation" exception. *Id.* at 742. The fraudulent litigation exception requires the plaintiff to show that: (1) the defendant intentionally made a misrepresentation, with knowledge of its falsity; and (2) the misrepresentation "was material, in the sense that it actually altered the outcome of the proceeding." *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 843 (7th Cir. 2011). While the amended complaint includes conclusory allegations that the objections filed by the "Illinois Objector Enterprise" contained misrepresentations, its fails to cite a single statement made in any objection that was false. Moreover, as demonstrated by the tables contained in the amended complaint, none of the objections altered the outcome of the proceedings; all of the cases identified involve appeals that

- 26 -

were withdrawn or lost. (Docket No. 50 at ¶ 109; Table 1). Therefore, the fraudulent litigation exception does not apply in this matter.

Regarding the sham litigation exception, Edelson cannot establish this exception merely by alleging that the objectors were not motivated to succeed in their objection. *See Prof. Real Est. Inv'rs, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 57 (1993). The Supreme Court has held that the subjective intent of the party petitioning the court cannot, by itself, constitute sham litigation. *Id.* Instead, that Court created a two-part test: first, courts have to examine whether the suit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60. "If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized … [and] the sham exception must fail." *Id.* If, however, the litigation is "objectively meritless," then the Court can examine the litigant's subjective motive. *Id. See also Rubloff Dev. Group, Inc.*, 863 F. Supp. 2d at 742-44 (applying the analysis to find *Noerr-Pennington* protection from RICO suit).

The sham litigation exception does not apply here because the amended complaint does not demonstrate that any of the objections filed in any of the previous cases were objectively meritless. While the amended complaint contains several tables listing prior objections allegedly made by the "Illinois Objector Enterprise," none of these tables show the basis for any of the objections. Rather, the amended complaint simply provides conclusory allegations that these objections were brought in bad faith and lacked merit. To survive a motion to dismiss, Edelson cannot rely on threadbare legal assertions, but instead must illustrate that the substantive arguments raised in these prior objections were objectively meritless.

The closest the amended complaint comes to this subject is in paragraph 83, where it alludes to the fact that the objection filed in the *Gannett* case was based on Mr. Stewart's

disagreement with Edelson receiving $5 million in attorney's fees under the settlement. (Docket No. 50 at ¶ 83). But Edelson never explains why no reasonable litigant could object to it receiving $5 million in attorney's fees under the *Gannett* settlement. This is not enough to establish the sham litigation exception. *See Michael v. Letchinger*, 2011 WL 3471082, at *11 (N.D. Ill. 2011) (plaintiffs not entitled to sham litigation exception merely by alleging that judicial proceedings were instituted in "bad faith" and "for discriminatory purposes," but instead had to plausibly suggest that they were "objectively baseless"); *see also Rubloff Development Group, Inc.*, 863 F. Supp. 2d at 742 (finding that although plaintiff alleged defendant's suits were filed "without regard to merit," plaintiff did "not allege that they were objectively meritless").

Moreover, the amended complaint concedes that the Cook County Circuit Court in the underlying *Gannett* litigation overruled Mr. Stewart's objection "on the merits." (Docket No. 50 at ¶ 89). Edelson never alleges that the Court found that the objection was "objectively meritless." Rather, the Court reviewed the objection's merits, but ruled against it. This also confirms that the objection was not frivolous, so the sham litigation exception cannot apply.

## III.   THE AMENDED COMPLAINT CANNOT STATE A CLAIM FOR RICO CONSPIRACY.

18 U.S.C. § 1962(d) provides for liability for a conspiracy to commit a RICO violation, and "in order to state a viable claim under § 1962(d), [Edelson] must allege (1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 732 (7th Cir. 1998). Moreover, to state a viable claim under § 1962(d), Edelson must allege the existence of a specific agreement by the

parties, and cannot rely on "conclusory and vague allegations concerning the collective conduct of the 'defendants.'" *Id.* at 733 (citations omitted).

As discussed above, the amended complaint fails to allege that the "Illinois Objector Enterprise" committed *any* predicate acts of racketeering activity. Since the alleged acts do not constitute predicate acts of racketeering activity, any alleged agreement to commit them cannot give rise to RICO conspiracy liability under § 1962(d). *See Natl. Council on Compen. Ins., Inc. v. Am. Intern. Group, Inc.*, 2009 WL 466802, at *15 (N.D. Ill. Feb. 23, 2009) ("If a plaintiff does not allege conduct that constitutes 'participation in the affairs of an enterprise through a pattern of racketeering activity' in a section 1962(c) claim, a RICO conspiracy claim based on the same allegations also fails.").

Moreover, the conspiracy claim utterly fails to demonstrate that the parties ever reached any agreement that they would commit any specific acts that would constitute a RICO violation. "Conclusory allegations of 'conspiracy' are not sufficient to state a claim' under RICO; rather, the plaintiff must allege "supportive facts." *See Fosco v. Difronzo*, 2009 WL 2244611, at *4 (N.D. Ill. July 28, 2009) (citations omitted). Edelson's amended complaint contains one vague and conclusory paragraph alleging that all the defendants "conspired" to commit predicate acts. (Docket No. 50 at ¶ 225). Nothing in that paragraph or elsewhere in the amended complaint pleads any facts indicating an agreement among the defendants, any discussion of which defendants would play which roles, or even that the parties agreed to the commission of two specific predicate acts of racketeering activity. *See Goren*, 156 F.3d at 732 (finding similar lack of allegations regarding specific agreement or specific roles each party would play insufficient to state a claim for RICO conspiracy). Thus, the amended complaint fails to state a claim for RICO conspiracy. *See Lachmund v. ADM Inv'r Services, Inc.*, 191 F.3d 777, 785 (7th Cir. 1999)

("Absent such particular pleadings, [plaintiff's] complaint contains nothing more than 'conclusory, vague and general allegations of a conspiracy' that are insufficient to state a claim under § 1962(d).") (Citation omitted).

## IV. THE AMENDED COMPLAINT CANNOT BRING A CLAIM UNDER THE ALL WRITS ACT.

Inexplicably, Edelson continues to attempt to bring a claim against the Bandas Defendants pursuant to the All Writs Act, 28 U.S.C. § 1651. (Docket No. 50 at ¶¶ 231-244). As previously explained, however, the All Writs Act does not confer a private right or authorize a cause of action as a matter of law. Instead, the All Writs Act states:

> (a)   The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

> (b)   An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

28 U.S.C. § 1651.

The All Writs Act grants *courts* vast authority to ensure that they have the ability to enforce their orders. It does not grant any rights to *private parties*, nor does it provide a basis for private parties to petition federal courts for equitable relief. *See In re Campbell*, 264 F.3d 730, 731 (7th Cir. 2001) ("The All Writs Act authorizes federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law,' … The Act does not enlarge our jurisdiction.") (Citations omitted); *see also Matter of VMS Securities Litig.*, 103 F.3d 1317, 1324 (7th Cir. 1996), overruled on other grounds by *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983 (7th Cir. 2010), (finding that the All Writs Act is not a "jurisdictional blank check"). "[T]he All Writs Act and the extraordinary relief the statute authorizes are not a source of subject-matter jurisdiction." *U.S. v. Denedo*, 556 U.S. 904, 913 (2009) (citation omitted). Edelson cannot seek relief from a federal court by simply

alleging that its amended complaint is brought pursuant to the All Writs Act. *See Nino v. Johnson*, 2016 WL 6995563, at *7 (N.D. Ill. Nov. 30, 2016) ("the All Writs Act … [does not] provide[] an independent basis of jurisdiction"). Further, the Court has not entered any order in this case that would justify it resorting to the All Writs Act to ensure compliance. Thus, the Court must dismiss Count III.

Despite Edelson's suggestion to the contrary, (*see* Docket No. 50 at ¶ 233); courts have found that an attorney representing a client *cannot* constitute a vexatious litigant. *See, e.g.*, *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1197 (9th Cir. 1999) ("We do not believe that the vexatious litigant doctrine was ever intended to control attorney conduct and we do not propose to approve its application in this case as a means of controlling attorney conduct … . We therefore conclude that an attorney appearing on behalf of a client cannot be sanctioned as a vexatious litigant; by definition, he or she is acting as an attorney and not as a litigant."). This court cannot use the All Writs Act to treat the Bandas Defendants as vexatious litigants.

## V. THE COURT SHOULD NOT EXERCISE PENDENT JURISDICTION OVER THE STATE LAW ABUSE OF PROCESS CLAIM.

The Court should deny exercising pendent jurisdiction over the amended complaint's state law abuse of process claim in Count IV because "judicial economy, convenience and fairness to litigants" does not require the Court to retain jurisdiction. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). This lawsuit was only filed a few months ago, and the Court "has not committed 'substantial judicial resources' to the state claims such that dismissal 'will cause a substantial duplication of effort.'" *Sommese v. Am. Bank and Trust Co.*, 2012 WL

3006824, at *8 (N.D. Ill. July 23, 2012) (citations omitted). Moreover, Edelson is also seeking redress against the Bandas Defendants in the Cook County Circuit Court, where it has filed a motion for sanctions. Thus, the Court should refuse to exercise pendent jurisdiction over the law claims in Count IV of the amended complaint.

Regardless, even if the Court did maintain supplemental jurisdiction, the amended complaint fails to state a claim for abuse of process anyways. Under Illinois law, a plaintiff must demonstrate: "(1) the existence of an ulterior purpose or motive and (2) some act in the use of process that is not proper in the regular course of proceedings." *Neurosurgery and Spine Surgery, S.C. v. Goldman*, 790 N.E.2d 925, 929 (Ill. App. 2003) (citation omitted). "Process" is defined as "any means ***used by the court*** to acquire or to exercise its jurisdiction over a person or over specific property." *Holiday Magic, Inc. v. Scott*, 282 N.E.2d 452, 456 (Ill. App. 1972) (emphasis added). "Because the tort of abuse of process is not favored under Illinois law, the elements must be strictly construed." *Neurosurgery and Spine Surgery, S.C.*, 790 N.E.2d 925, 929-30 (Ill. App. 2003) (*citing Erlich v. Lopin—Erlich*, 195 Ill.App.3d 537, 539 (1990)).

Edelson alleges that the improper process used by the Bandas Defendants was "institut[ing] proceedings" against Edelson by filing "bad faith objections" to proposed class settlements, and then appealing or threatening to appeal them. (Docket No. 50 at ¶ 246). However, Illinois law has long established that instituting proceedings does not constitute a "process" that can give rise to abuse of process liability. *See Holiday Magic, Inc.*, 282 N.E.2d at 455–56 ("It has been repeatedly held in Illinois that mere institution of proceedings does not in and of itself constitute abuse of process."). This is because instituting proceedings are accomplished by individual parties filing documents with the court, while "process" must be an official act issued by the court. *See Community Nat. Bank in Monmouth v. McCrery*, 509 N.E.2d

122, 124 (Ill. App. 1987) (instituting mortgage foreclosures could not constitute abuse of process). Similarly, filing an appeal cannot constitute an abuse of process claim for the same reason; filing an appeal is instituted by the individual defendants and not by the Court.

## VI.  THE AMENDED COMPLAINT CANNOT STATE A CLAIM UNDER THE ILLINOIS ATTORNEY ACT.

Finally, for the reasons stated above, this Court should not exercise pendent jurisdiction over the amended complaint's claim under the Illinois Attorney Act. Moreover, the amended complaint cannot state a claim under the Illinois Attorney Act because it did not use the proper procedure for bringing such a claim. In analyzing the Illinois Attorney Act, courts strictly construe the statutory language to determine the remedies available to private litigants. *See King v. First Capital Fin. Services Corp.*, 828 N.E.2d 1155, 1170 (Ill. 2005). The Illinois Attorney Act provides for a private party to assert a claim for the unauthorized practice of law and seek a remedy from the offending party; but it dictates that:

> The remedies available include, but are not limited to: (i) appropriate equitable relief; (ii) a civil penalty not to exceed $5,000, which shall be paid to the Illinois Equal Justice Foundation; and (iii) actual damages. **Such proceedings shall be conducted in the Courts of the respective counties where the alleged contempt has been committed in the same manner as in cases of indirect contempt and with the right of review by the parties thereto.**

705 ILCS § 205/1 (emphasis added).

Thus, Edelson cannot assert a claim against the Bandas Defendants under the Illinois Attorney Act as part of a collateral federal lawsuit arising from actions that occurred in an Illinois state court. Rather, as the plain language of the statute reads, Edelson had to bring suit in the county in which the alleged contempt was committed (i.e. Cook County). Therefore, this claim is not properly brought before this Court. *See King*, 828 N.E.2d at 1169 ("Under the guise of construction, a court may not supply omissions, remedy defects, annex new provisions,

substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of language employed in the statute.").

## CONCLUSION

Edelson has now had two opportunities to allege a federal suit under the civil RICO statute. Edelson has utterly failed to state any RICO or RICO conspiracy claims as a matter of law. For that reason, the Bandas Defendants respectfully request that this Court dismiss Edelson's amended complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

CHRISTOPHER BANDAS and THE
BANDAS LAW FIRM P.C.

/s/      Darren VanPuymbrouck
          One of their attorneys.

Darren M. VanPuymbrouck
Alexander S. Vesselinovitch
Matthew T. Connelly
Freeborn & Peters LLP
311 South Wacker Drive Suite 3000 Chicago, IL  60606
312-360-6000
dvan@freeborn.com

Dated: April 10, 2017

## CERTIFICATE OF SERVICE

By my signature below, I hereby certify that on April 10, 2017, I electronically filed the foregoing Memorandum of Law with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Rafey S. Balabanian
Benjamin Harris Richman
Eve-Lynn J. Rapp
Edelson PC
350 N. LaSalle Street, 13th Floor
Chicago, IL 60654
(312) 589-6370
rbalabanian@edelson.com
brichman@edelson.com
erapp@edelson.com
*Attorneys for Plaintiff*

Chris C. Gair
Kristi Lynn Nelson
Thomas Reynolds Heisle
Gair Eberhard Nelson Dedinas Ltd
1 East Wacker Drive
Suite 2600
Chicago, IL 60601
312-600-4900
cgair@gairlawgroup.com
knelson@gairlawgroup.com
theisler@gairlawgroup.com

Joseph R. Marconi
Brian C. Langs
Victor J. Pioli
Johnson & Bell, Ltd.
33 West Monroe Street
Suite 2700
Chicago, IL 60603
(312)372-0770
marconij@jbltd.com
langsb@jbltd.com
pioliv@jbltd.com
*Attorneys for Noonan Perillo & Thut Ltd. and C. Jeffrey Thut*

/s/ Darren VanPuymbrouck