IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDELSON PC, an Illinois professional corporation, individually, and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>          v.<br><br>THE BANDAS LAW FIRM PC, a Texas professional corporation, CHRISTOPHER BANDAS, an individual, LAW OFFICES OF DARRELL PALMER PC d/b/a DARRELL PALMER LAW OFFICE, a suspended California professional corporation, JOSEPH DARRELL PALMER, an individual, NOONAN PERILLO & THUT LTD., an Illinois corporation, C. JEFFERY THUT, an individual, GARY STEWART, an individual, and JOHN DOES 1-20,<br><br>          Defendants. | Case No. 1:16-cv-11057 |

**MEMORANDUM IN SUPPORT OF DEFENDANT GARY STEWART'S MOTION TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

NOW COMES Defendant Gary Stewart ("Mr. Stewart"), pursuant to Federal Rule of Civil Procedure 12(b)(6), and respectfully moves this Honorable Court to dismiss Plaintiff Edelson PC's ("Edelson") amended complaint with prejudice because it fails to state a claim against him upon which relief can be granted. While the amended complaint attempts to allege that a group of attorneys constituted an "Illinois Objector Enterprise" that engaged in filing objections to dozens of class action settlements across Illinois over a seven year period, the *only* involvement Mr. Stewart ever had with this group is that he agreed to act as the named objector in *one* class action proceeding in October of 2016. Aside from that single involvement, the

amended complaint does not allege that Mr. Stewart had *any* other relation or association with the "Illinois Objector Enterprise" at issue in this matter.[1]

As a result, the amended complaint fails to show that Mr. Stewart had anything more than a tangential involvement with the alleged "Illinois Objector Enterprise," which is not enough to hold liable Mr. Stewart under the Racketeer Influenced and Corrupt Organizations Act ("RICO") for conducting the affairs of a RICO enterprise. In addition, Edelson's RICO conspiracy claim against Mr. Stewart also fails because the amended complaint does not allege that Mr. Stewart agreed to further a *pattern* of racketeering activity. Rather, it only alleges that he agreed to further a single scheme, with a single purpose, that focused on a single victim, and that resulted in a single injury. The Court must dismiss the amended complaint's claims against Mr. Stewart with prejudice.

## BACKGROUND

Mr. Stewart is not an attorney. (*See* Docket No. 50 at ¶ 18). Mr. Stewart is an individual class member in a class action lawsuit currently pending in the Cook County Circuit Court – *Clark v. Gannett Co., Inc.*, Case No. 16-CH-06603. (*Id.* at ¶ 56). Edelson is class counsel in that case. (*Id.* at ¶ 83).

Mr. Stewart, represented by counsel, filed an objection to the proposed class settlement in the *Gannett* case on the grounds that Edelson failed to provide sufficient information to the class members, and that Edelson's proposed award of $5,000,000 in attorney's fees was excessive. (*Id.*) On November 14, 2016, the Cook County Circuit Court overruled Mr. Stewart's objection on the merits. (*Id.* at ¶ 56). In retaliation over Mr. Stewart's objection, Edelson filed a civil RICO lawsuit against Mr. Stewart.

---

[1] Throughout this Memorandum, Mr. Stewart repeats several of the Plaintiffs' allegations from their Amended Complaint for purposes of providing context for his response. As this Court undoubtedly appreciates, Mr. Stewart does not mean by his recitation of those allegations to in any way admit that they are accurate or true.

On December 5, 2016, just days after an unsuccessful mediation of Mr. Stewart's objection, (*Id.* at ¶ 90), Edelson filed its initial 49-page civil RICO complaint against Mr. Stewart, the attorneys allegedly involved in the objection, each attorney's respective law firm, and 20 John Does. (*See* Docket No. 1). Following the defendants' motions to dismiss, Edelson filed the instant amended complaint asserting a civil RICO claim, RICO conspiracy claim, and a state law abuse of process claim against Mr. Stewart.[2] (Docket No. 50).

Only the RICO claims can provide federal jurisdiction over this matter.[3] Because Edelson's amended complaint fails to state a viable claim for RICO or RICO conspiracy against Mr. Stewart, this complaint should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6).

## **STANDARD**

"To survive a Rule 12(b)(6) motion, the complaint must not only provide defendants with fair notice of a claim's basis, but must also be 'facially' plausible." *Menzies v. Seyfarth Shaw LLP*, 2016 WL 3854626, at *1 (N.D. Ill. July 15, 2016) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court assumes all well pleaded facts alleged in the complaint are true and construes all reasonable inferences in the plaintiff's favor. *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp.2d 671, 680 (N.D. Ill. 2012) (citations omitted). Edelson's amended complaint fails even under this liberal standard.

---

[2] Edelson's claims under the All Writs Act in Count III and the Illinois Attorney Act in Count V are not directed against Mr. Stewart. (Docket No. 50 at ¶¶ 232; 253).

[3] Mr. Stewart's motion to dismiss incorporates the arguments raised in the Bandas Defendants memorandum in support of their motion to dismiss regarding why there is no diversity jurisdiction in this matter.

**ARGUMENT**

**I.   THE AMENDED COMPLAINT FAILS TO STATE A RICO CLAIM IN COUNT I AGAINST MR. STEWART**

In order to state a RICO claim in Count I against Mr. Stewart pursuant to Section 1962(c), the amended complaint must allege: "(1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cement-Lock v. Gas Tech. Inst.*, 523 F. Supp. 2d 827, 849 (N.D. Ill. 2007) (*citing Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 644 (7th Cir.1995)); *see also* 18 U.S.C. § 1962(c). Because the amended complaint fails to demonstrate that Mr. Stewart conducted the affairs of the alleged "Illinois Objector Enterprise," Mr. Stewart cannot be held liable under Section 1962(c) of the RICO statute.[4]

To hold an individual liable under RICO, that individual must have "played 'some part in directing the enterprise's affairs.'" *Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 727 (7th Cir. 1998) (*citing Reves v. Ernst & Young*, 507 U.S. 170, 179, 183 (1993)). "[RICO] does not penalize *tangential involvement* in an enterprise; a plaintiff must plead and prove that a defendant took some part in directing or conducting the alleged 'enterprise' such that it 'participate[d] in the operation or management of the enterprise itself.'" *Crichton v. Golden R. Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009) (emphasis added) (*citing Reves*, 507 U.S. at 185). "Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice." *Id.* (citations omitted).

Mr. Stewart cannot be held liable under Section 1962(c) of the RICO statute if he was "merely a hireling" of the alleged enterprise. *See Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 933 (7th Cir. 1999) (finding investment firm hired by enterprise to defraud victim not liable under RICO, even though knew of the scheme, because the firm could not conduct the

---

[4] Mr. Stewart does not concede that Edelson adequately pled that a RICO enterprise exists in this matter, but assumes so solely for purposes of this argument in support of his motion to dismiss.

enterprise's affairs). In *D.M. Robinson Chiropractic, S.C. v. Encompass Ins. Co. of America*, the plaintiff alleged that an insurance company's software supplier was part of the insurance company's RICO enterprise, which was engaged in defrauding medical service providers. 2013 WL 1286696, at *1 (N.D. Ill. Mar. 28, 2013). Although the plaintiff alleged that the software supplier provided the enterprise with the software that the enterprise used to defraud its victims, and that the supplier knew the enterprise was using the software to defraud these victims, the Court found the software supplier did not conduct the affairs of the enterprise, but rather merely performed a service for the enterprise. *Id.* at *8. Other Courts that have addressed the potential RICO liability for outside parties who allegedly assisted RICO enterprises have reached the same result. *See, e.g.*, *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 688-89 (N.D. Ill. 2012) (finding lawyer that helped the enterprise formulate its plan to defraud victim and cooperated in its execution was not liable under RICO because he did not direct, control, or conduct any aspect of the alleged enterprise); *Amin v. SunTrust Bank*, 2014 WL 3397256, at *4 (N.D. Ill. July 11, 2014) ("[E]ven if [defendants] had knowledge of an organization's illicit activity, that would still be insufficient to demonstrate that either one of them had a managerial or operational role.").

Edelson's amended complaint does not allege that Mr. Stewart played any role in the operation or management of the "Illinois Objector Enterprise." (*See* Docket No. 50 at ¶¶ 115-119). In fact, the amended complaint confirms that Mr. Stewart did not have any history with the "Illinois Objector Enterprise," nor did he play an active role in any part of the alleged enterprise's structure or goals. Mr. Stewart is the only non-lawyer defendant in the "Objector Enterprise," and he is the only defendant without a background in objecting to class action settlements. (*Id.* at ¶¶ 11-18; 37-60). Moreover, while the amended complaint contains tables depicting the prior class actions that the "Illinois Objector Enterprise" was allegedly involved

with over the past six years, there are no allegations that Mr. Stewart played a role in *any* class action objection other than the single *Gannett* objection that gives rise to this suit. (*Id.* at ¶¶ 109, Table 1; 170, Table 2; 173, Table 3; 184, Table 4; 194, Table 5). While the amended complaint alleges that defendants Bandas, Palmer, and Thut operated the "Illinois Objector Enterprise" since 2009, Mr. Stewart's sole involvement was that he agreed to be the named class objector in the October 2016 *Gannett* objection. (*Id.* at ¶ 109, Table 1). In fact, the full extent of the amended complaint's allegations against Mr. Stewart are that he was "co-opted" by Darrel Palmer to file an objection to the *Gannett* class settlement, that Mr. Stewart agreed to be the "named objector" for the "Objector Enterprise," and that Mr. Stewart had knowledge of the "Illinois Objector Enterprise's" scheme. (*Id.* at ¶¶ 56; 135; 148(g); 161(g); 216(g); 227).

Like in *D.M. Robinson* or in *Guaranteed Rate*, the amended complaint merely alleges that Mr. Stewart provided the "Illinois Objector Enterprise" with a service. The amended complaint does not state that Mr. Stewart came up with any plan, developed any goal, or directed any of the "Illinois Objector Enterprise's" affairs over the course of its seven year history. The only role Mr. Stewart allegedly played was in October 2016, when he passively agreed to allow the "Illinois Objector Enterprise" to use his name to establish jurisdiction for their objection to the proposed *Gannett* class settlement. These allegations do not establish that he conducted the affairs of the "Illinois Objector Enterprise;" at most, they illustrate that Plaintiffs' complaint merely casts Mr. Stewart as a "hireling" for the alleged enterprise.

Edelson understands that Mr. Stewart's tenuous link with the "Illinois Objector Enterprise" precludes the Court from finding him liable under Section 1962(c) of the RICO statute; Edelson now asserts a new allegation that Mr. Stewart was "necessary for the furtherance of the [Illinois Objector Enterprise's] scheme." (Docket No. 50 at ¶ 216). Edelson alleges that

Mr. Stewart was necessary because if he had not agreed to act as the named objector to the *Gannett* case, then the "Illinois Objector Enterprise" would have had to convince a "*bona fide* class member" to participate in the scheme. (*Id.*) This new allegation likely stems from a case relied on in Mr. Stewart's earlier motion to dismiss, *Nesbitt v. Regas*. In that case, the Court found that an "important factor" in distinguishing between defendants that conducted the affairs of an enterprise versus defendants that were mere hirelings of an enterprise is whether "the scheme's success depended on a particular defendant's knowing cooperation, or whether that particular defendant played a fungible role that could have been performed by outsiders." *Nesbitt v. Regas*, 2015 WL 1331291, at *8 (N.D. Ill. Mar. 20, 2015). In *Nesbitt*, the Court found that a law firm did not conduct the affairs of an enterprise, even though it was used by the enterprise to further its scheme, because any law firm could have performed the services. *Id.* at *10. Therefore, if that law firm had refused to act on the enterprise's behalf, the enterprise could have simply found a different firm to further the scheme. *Id.*

Although the amended complaint includes a conclusory allegation that the *Gannett* scheme depended on Mr. Stewart's participation, Edelson fails to show why the "Illinois Objector Enterprise" could not have simply convinced a different member of the class to act as the named objector. The amended complaint alleges that Mr. Bandas, Mr. Palmer, and Mr. Thut were "professional objectors" who had filed hundreds of objections to proposed class settlements across the country. (Docket No. 50 at ¶¶ 37-60). Moreover, Table 3 in the amended complaint identifies the individual objectors that the "Illinois Objector Enterprise" allegedly used for their prior objections. (*Id.* at ¶ 173, Table 3). While six of the twenty prior objectors listed were (or "likely" were) associated with Mr. Bandas, Mr. Palmer, or Mr. Thut, the remaining fourteen had no known connection with the members of the "Illinois Objector Enterprise." (*Id.*) As a result,

the amended complaint itself establishes that the alleged "Illinois Objector Enterprise" could have readily used another member of the settlement class. Therefore, based on Plaintiff's own allegations, if Mr. Stewart had refused to act as the named objector, then the alleged "Illinois Objector Enterprise" could have simply co-opted a different *Gannett* class member to act as their named objector.

Any argument that Mr. Stewart was "necessary" to further the scheme, because the "Illinois Objector Enterprise" would have had to find a different class member had he refused to participate, goes against the established precedent in this district. In *D.M. Robinson*, if the software supplier had refused to assist the insurance company in defrauding medical service providers, the insurance company would have had to find a different software supplier. In *Guaranteed Rate* and in *Nesbitt*, if the lawyers did not assist with defrauding the enterprise's victims, then the enterprise would have had to find a different lawyer to corrupt. Yet, in all those cases, the Court found that the software supplier and the lawyers performed fungible roles and were not "necessary" to further scheme. The amended complaint fails to allege that Mr. Stewart's involvement in this case is any different. Thus, this Court cannot hold Mr. Stewart liable under Section 1962(c).

Whether Mr. Stewart was "necessary" for the *Gannett* scheme may be a factor in determining liability under Section 1962(c), but the dispositive issue remains whether he conducted, controlled, or directed the affairs of the alleged enterprise. *See Goren*, 156 F.3d at 728 ("simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself."). Edelson merely alleges that Mr. Stewart was only tangentially involved in this matter; Mr.

Stewart is not alleged to have conducted, controlled, or directed any of the affairs of the "Illinois Objector Enterprise."

## II. THE AMENDED COMPLAINT FAILS TO STATE A RICO CONSPIRACY CLAIM IN COUNT II AGAINST MR. STEWART

To state a claim for a RICO conspiracy under Section 1962(d), Edelson must allege: (1) that Mr. Stewart agreed to conduct or participate in the affairs of an "enterprise," and (2) that Mr. Stewart agreed to the commission of two predicate acts. *Domanus v. Locke Lord LLP*, 847 F.3d 469, 481 (7th Cir. 2017) (citation omitted). But, not only did Mr. Stewart have to agree to the commission of two predicate acts, but those two predicate acts also must constitute a "pattern" of racketeering activity, since "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." *Salinas v. U.S.*, 522 U.S. 52, 65 (1997). The Seventh Circuit Court of Appeals recently clarified this in *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815 (7th Cir. 2016).

In that case, the plaintiff brought a RICO conspiracy claim against the owner of a horse racetrack in Illinois who bribed former Governor Blagojevich into extending legislation that required casinos to share profits with horse racetracks. *Empress Casino Joliet Corp.*, 831 F.3d at 820-21. On appeal, the issue was whether there was sufficient evidence to convict the racetracks' owner of a RICO conspiracy. *Id.* at 822-23. The Court found that the racetracks' owner had committed or agreed to the commission of several predicate acts of racketeering activity in furtherance of the scheme to extend the legislation, specifically, extortion, bribery, and several counts of wire fraud. *Id.* at 827. But, the Court found that the racetracks' owner had not "agreed to predicate acts forming a *pattern of racketeering activity*." *Id.* (emphasis added).

Specifically, the Court found that there was no pattern of racketeering activity because the plaintiff did not establish that there was either close-ended or open-ended continuity involved

with the predicate acts that the racetracks owner agreed to commit. *Id.* at 828 (citation omitted). The Court reiterated that a single scheme over an eight month period cannot establish "close-ended continuity" as a matter of law. *Id.* (citations omitted). Moreover, the Court found there was no "open-ended continuity" because the scheme had a natural ending point; once Governor Blagojevich signed the bill, the scheme was over. *Id.* at 829. In addition, the Court found that, while there was evidence that "Blagojevich's regular way of conducting business involved bribery," the Court's analysis focused specifically on "the scope of what [the racetracks owner] agreed to." *Id.* at 831. The Court concluded, "[t]here is no evidence that [the racetrack owner] agreed to participate in any corrupt scheme except for the one to have Blagojevich sign the [legislation]. A one-time bribe to a corrupt public official is criminal and wrong, but without more it is not enough to prove a pattern of racketeering activity." *Id.*

As in *Empress Casino Joliet*, there is no basis here to find that Mr. Stewart can be sued under Section 1962(d) of the RICO statute because the amended complaint alleges that he only agreed to further a single scheme. Edelson alleges that Mr. Stewart agreed to further the "*Gannett* scheme" by "knowingly agree[ing] to allow Bandas and Thut to file an objection in *Gannett* under his name." (Docket No. 50 at ¶ 227). There are no allegations that he was involved in any of the "Illinois Objector Enterprise's" other prior schemes. This allegation is insufficient to demonstrate a pattern of racketeering activity.

To demonstrate a pattern of racketeering activity, the Supreme Court established "continuity" and "relationship" requirements amongst the predicate acts alleged. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Parties can plead either "close-ended" or "open-ended" continuity. *See Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 473 (7th Cir. 2007). Close-ended is where the criminal activity has ended, but carries an implicit threat of

continuation due to the "substantial period of time" and "repetition" involved with the acts. *Id.* (citation omitted). Open-ended is where the criminal activity presents an on-going threat, despite lacking "duration and repetition." *Id.* (citations omitted). "Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986).

Edelson only alleges that Mr. Stewart agreed to further the single "*Gannett* scheme." In regards to the "*Gannett* scheme," the amended complaint claims that the defendants intended to file a frivolous objection to the *Gannett* class settlement, and then threaten to appeal the objection unless Edelson paid them. (Docket No. 50 at ¶¶ 8; 83-84). This alleged "scheme" clearly ended when Edelson agreed to pay $225,000 if Mr. Stewart would forgo appealing his objection. (*Id.* at ¶ 93). There can be no open-ended continuity with the "*Gannett* scheme" because there is no on-going threat, as "schemes with a 'clear and terminable goal have a natural ending point.'" *Roger Whitmore's Auto. Servs., Inc. v. Lake Cty., Illinois*, 424 F.3d 659, 674 (7th Cir. 2005) (citation omitted). As in *Empress Casino Joliet*, even if the Court found that there was an on-going threat that the defendant attorneys involved in the "Illinois Objector Enterprise" may object to future class action settlements, there is no allegation that *Mr. Stewart* agreed to participate in any other future objection; which is the proper focus for determining whether he is individually liable under Section 1962(d). *See Empress Casino Joliet Corp.*, 831 F.3d at 831.

The amended complaint also fails to adequately plead close-ended continuity. The Seventh Circuit has found that the duration of the scheme alleged is the "single most important aspect of the closed-ended continuity analysis." *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 781 (7th Cir. 1994). Here, the amended complaint alleges that the "*Gannett*

scheme" began on October 26, 2016, when Mr. Stewart filed his objection to the proposed class settlement, and concluded on December 1, 2016, when Edelson agreed to pay $225,000 for the "Objector Enterprise" to drop its appeal. (Docket No. 50 at ¶¶ 90; 93 109, Table 1). A "scheme" that barely lasts more than one month cannot satisfy the close-ended continuity requirement under RICO as a matter of law. *See Meier*, 588 F. Supp. 2d at 903 (citing cases that found no continuity present for schemes lasting from six to thirteen months). Moreover, the amended complaint cannot establish close-ended continuity because the "*Gannett* scheme" involved a single scheme, a single victim (Edelson), and a single distinct injury (Edelson *agreeing* to pay $250,000). *See Vicom, Inc.*, 20 F.3d at 781–82. There are no allegations that Mr. Stewart agreed to anything else, or had any other involvement with the members of the "Illinois Objector Enterprise." Even if Mr. Stewart's alleged "one-time" conduct was wrong, "without more it is not enough to prove a pattern of racketeering activity." *See Empress Casino Joliet Corp.*, 831 F.3d at 831. Therefore, Edelson cannot state a claim against Mr. Stewart for engaging in a RICO conspiracy under Section 1962(d).

## CONCLUSION

For the reasons stated above, and for those incorporated here in the Bandas Defendant's Memorandum in support of their Motion to Dismiss the Amended Complaint (Docket No. ___), Mr. Stewart respectfully requests this Court dismiss Edelson's amended complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

    Respectfully submitted,

    GARY STEWART

    /s/    Darren VanPuymbrouck
    One of his attorneys.

Darren M. VanPuymbrouck
Alexander S. Vesselinovitch
Matthew T. Connelly
Freeborn & Peters LLP
311 South Wacker Drive Suite 3000 Chicago, IL 60606
312-360-6000
dvan@freeborn.com
avesselinovitch@freeborn.com
mconnelly@freeborn.com

Dated: April 10, 2017

## **CERTIFICATE OF SERVICE**

By my signature below, I hereby certify that on April 10, 2017, I electronically filed the foregoing Memorandum in Support of Gary Stewart's Motion to Dismiss the Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Rafey S. Balabanian
Benjamin Harris Richman
Eve-Lynn J. Rapp
Edelson PC
350 N. LaSalle Street, 13th Floor
Chicago, IL 60654
(312) 589-6370
rbalabanian@edelson.com
brichman@edelson.com
erapp@edelson.com
*Attorneys for Plaintiff*

Chris C. Gair
Kristi Lynn Nelson
Thomas Reynolds Heisle
Gair Eberhard Nelson Dedinas Ltd
1 East Wacker Drive
Suite 2600
Chicago, IL 60601
312-600-4900
cgair@gairlawgroup.com
knelson@gairlawgroup.com
theisler@gairlawgroup.com

Joseph R. Marconi
Brian C. Langs
Victor J. Pioli
Johnson & Bell, Ltd.
33 West Monroe Street
Suite 2700
Chicago, IL 60603
(312)372-0770
marconij@jbltd.com
langsb@jbltd.com
pioliv@jbltd.com
*Attorneys for Noonan Perillo & Thut Ltd. and C. Jeffrey Thut*

/s/ Darren M. VanPuymbrouck