**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EDELSON PC, an Illinois professional corporation, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>THE BANDAS LAW FIRM PC, et al.,<br><br>    Defendants. | Case No. 1:16-cv-11057<br><br>Hon. Rebecca R. Pallmeyer |

**NOONAN PERILLO & THUT LTD. AND C. JEFFERY THUT'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

  Defendants, Noonan Perillo & Thut, Ltd., and Jeffery C. Thut (together, the "Thut Defendants"), submit this memorandum in support of their motion to dismiss the Complaint filed by John Crane Inc. ("JCI") for failure to state a claim under FED. R. CIV. P. 12(b)(6) and lack of subject-matter jurisdiction under FED. R. CIV. P. 12(b)(1).

**INTRODUCTION**

  Apparently upset that Defendants, Noonan Perillo & Thut, Ltd. and Jeffery C. Thut (the "Thut Defendants") dared to serve as local counsel for an objector to a state court class action settlement in which Plaintiff was class counsel (*Clark v. Gannett Co.*, Cook County Case No. 16 CH 06603), Plaintiff has filed this ill-advised lawsuit seeking relief under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1960-1968 and other state court claims.

  Plaintiff's amended complaint stands on tenuous factual and legal grounds as to all Defendants, but the allegations against the Thut Defendants are especially weak. Plaintiff claim is that Defendants have engaged in a criminal RICO enterprise by "fil[ing] last-minute objections to

class action settlements, intend that their objections will be overruled, and then threaten to or actually appeal the overruling objection to a higher court unless counsel agrees to participate in a 'mediation.'" *See* Am. Cmplt., at ¶ 2. In other words, all of the conduct allegedly taken by Defendants that forms the basis of Plaintiff's complaints occurred during litigation and litigation related activities.

Plaintiff filed its original Complaint in this matter which badly missed the mark on pleading a claim under RICO (Doc. No. 1). The Thut Defendants filed their motion to dismiss (Doc. No. 20). Rather than respond to Defendants' motions, Plaintiff filed its Amended Complaint (Doc. No. 50). Plaintiff's Amended Complaint still suffers from many of the same defects as its original Complaint and fails to plead a proper cause of action against the Thut Defendants.

Plaintiff simply cannot transform conduct by its opposing counsel in prior litigation (no matter how meritless or frivolous it believes its opponents' positions to be) into a federal RICO case. The *Noerr-Pennington* doctrine and other litigation immunities protect the actions of counsel taken in prior litigation and shield them from claims such as those being asserted by Plaintiff in this case. Plaintiff's claims suffer from the additional defects that they fail to plead the necessary elements for the causes of action asserted. Further, to the extent Plaintiff's claims are premised upon conduct occurring in state court matters, they are barred by the *Rooker-Feldman* doctrine.

## LEGAL STANDARD

A motion under Rule 12(b)(6) looks only to the sufficiency of the allegations in the complaint. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In deciding a motion under Rule

12(b)(1), "the district court may properly look beyond the jurisdictional allegations of the complaint." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008).

## ARGUMENT

I. **PLAINTIFF'S CLAIMS ARE BARRED BECAUSE THE THUT DEFENDANTS' ACTIONS ARE PROTECTED BY LITIGATION IMMUNITY**

A. *Noerr-Pennington* Doctrine

The *Noerr–Pennington* doctrine is an application of the First Amendment's guarantee of "the right of the people … to petition the Government for a redress of grievances." U.S. Const., amend. I; *see New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007). To protect this right, *Noerr–Pennington* provides that "parties may petition the government for official action favorable to their interests without fear of suit, even if the result of the petition, if granted, might harm the interests of others." *Tarpley v. Keistler*, 188 F.3d 788, 794 (7th Cir. 1999). The right to petition—and the corresponding *Noerr–Pennington* immunity—"extends to all departments of the Government," including the "courts." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Thus, under *Noerr–Pennington*, a person "cannot be held liable simply for pursuing a lawsuit, unless the suit was a 'mere sham.'" *Frayne v. Chi. 2016*, No. 08 C 5290, 2009 WL 3229625, at *6 (N.D. Ill. Oct. 2, 2009) (quoting *Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993)) [hereinafter, "*PREI*"].

Critically, *Noerr–Pennington* immunity applies regardless of what theory of liability a plaintiff might attempt to use to hold the defendant liable for his petitioning conduct. Although the doctrine "originated in antitrust law," the Seventh Circuit explicitly has recognized that "its rationale is equally applicable to RICO suits," *Int'l Brotherhood of Teamsters, Local 734 Health and Welfare Trust Fund v. Phillip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999); and "courts have held that it must also extend to state law statutory and common law claims." *In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903, 911 (N.D. Ill. 2013) (collecting cases). Moreover,

3

*Noerr–Pennington* immunity protects not just the *filing* of a lawsuit but all "efforts to influence [the] governmental body," *Tri-Corp Housing Inc. v. Bauman*, 826 F.3d 446, 450 (7th Cir. 2016); which, in the litigation context, means that it protects all "conduct incidental to the prosecution of the suit," including discovery and settlement talks. *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184–85 (9th Cir. 2005) (internal quotation marks omitted). For example, in *Freeman*, the Ninth Circuit held that the "*Noerr–Pennington* cloak" covered the defendant's conduct despite the plaintiff's allegations that the defendant had engaged in "[d]iscovery misconduct, subornation of perjury and witness intimidation." *Id.* at 1185.

Here, the *Noerr–Pennington* immunity applies to bar all of Plaintiff's claims, both RICO and state common law. *Phillip Morris*, 196 F.3d at 826; *In re Innovatio IP Ventures*, 921 F. Supp. 2d at 911. Plaintiff's claims are based solely on Defendants' petitioning conduct: Plaintiff alleges that Defendants' scheme was carried out by "fil[ing] last-minute objections to class action settlements…then threaten to or actually appeal the overruling of the objection to a higher court unless counsel agrees to participate in a 'mediation'…" *See* Am. Compl. ¶ 2. All these alleged actions were incidental to Defendants' petitioning of the courts on behalf of their clients. *Freeman*, 410 F.3d at 1184–85. Thus, to permit this suit to proceed would violate Defendants' First Amendment rights under *Noerr–Pennington*.

Moreover, the "sham" exception to the *Noerr–Pennington* doctrine is not applicable to this case. *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 263 (7th Cir. 1984). "The line between" sham litigation and protected petitioning conduct "is crossed when the defendant's purpose is not to win a favorable judgment against [the plaintiff] but to harass him, and deter others, by the process itself—regardless of outcome—of litigating." *Id.* (internal quotation marks and alterations omitted); *see also, e.g., Bauman*, 826 F.3d at 450 (sham-litigation exception applies to "a lawsuit designed to make the other litigant bear the costs of mounting a defense, even though the suit has no chance of

success"). For this reason, a *successful* lawsuit generally "cannot be characterized as a sham," *PREI*, 508 U.S. at 58; nor can "a lawsuit that was settled for a significant amount." *Rubloff Dev. Grp., Inc. v. SuperValue, Inc.*, 863 F. Supp. 2d 732, 743 (N.D. Ill. 2012) (citing *New West*, 491 F.3d at 722). The only exception to this principle is if the litigation was tainted by an intentional "misrepresentation that affects the very core of a litigant's case," one that "deprives [the] litigation of its legitimacy" and is the very "means" by which the litigant's "success is achieved." *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 843 (7th Cir. 2011) (collecting cases); *see also, e.g., Freeman*, 410 F.3d at 1185 n.2 ("misrepresentations … make a petition a sham if they 'deprive the litigation of its legitimacy'").

Plaintiff simply cherry picks certain class actions where Defendants have represented parties whose objections have been overruled and asserts that they are frivolous and the product of a quasi-criminal enterprise. As most lawyers, Defendants have represented winning and losing sides in lawsuits. Obviously, there is no basis to conclude that the cases where Defendants represented successful objectors were "sham litigation." There is no basis for distinguishing the handful of cases where Defendants represented unsuccessful objectors and labeling those cases "sham litigation." Defendants' actions both in cases where they have represented successful objectors and those where they have represented unsuccessful objectors are protected under *Noerr–Pennington*.

### B. State Law Litigation Privilege

"All fifty states," as well as the federal courts, "recognize some form of the litigation privilege" protecting attorneys from liability for their litigation conduct. *NSB Techs., Inc. v. Specialty Direct Mktg., Inc.*, No. 03 CV 2323, 2004 WL 1918708 (N.D. Ill. Aug. 20, 2004). Plaintiffs' state law claims are barred by the privilege under Illinois law.

In Illinois, the privilege can be stated simply: "'[T]here is no civil cause of action for misconduct which occurred in prior litigation.'" *USA Satellite & Cable, Inc. v. Mac*, Case No. 15 C

5

6331, 2016 WL 3262002, at *4 (N.D. Ill. June 14, 2016) (St. Eve, J.) (quoting *O'Callaghan v. Satherlie*, 36 N.E.3d 999, 1009 (1st Dist. 2015)). Instead,

> Illinois law recognizes an absolute litigation privilege which protects anything said or written in the course of a legal proceeding. The only qualification to this privilege is that the communication pertain to the litigation. This requirement is not applied strictly, and the communication need not be confined to the specific issues involved in the litigation … . The rationale for the privilege is to secure for attorneys as officers of the court the utmost freedom in representing clients. The absolute privilege is afforded even when malice is assumed to have motivated the attorney. All doubts are to be resolved in favor of finding that the privilege applies.

*Squires-Cannon v. Forest Preserve Dist. of Cook Cnty.*, No. 15 C 6876, 2016 WL 561917, at *8 (N.D. Ill. Feb. 12, 2016) (internal quotation marks omitted). In Illinois, then, parties must attempt to "redress injuries resulting from misconduct in judicial proceedings in the same litigation"; if they wait until that litigation is over and attempt to file a separate suit, their action will be barred by the privilege. *Johnson v. Johnson & Bell, Ltd.*, 7 N.E.3d 52, 57 (Ill. Ct. App. 2014); *Squires-Cannon*, 2016 WL 561917, at *8 (applying litigation privilege to dismiss claims with prejudice at 12(b)(6) stage); *USA Satellite & Cable*, 2016 WL 3262002, at *4 (same).

The Illinois privilege insulates the Thut Defendants from all "tort liability" for "anything said or written in the course of a legal proceeding." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998) (internal quotation marks omitted); *Squires-Cannon*, 2016 WL 561917, at *8. Yet Plaintiff alleges no other types of wrongdoing: *all* of Plaintiff's claims are based on things allegedly said or written by Defendants in the course of litigating objections filed on behalf of clients. *See* Am. Compl. ¶ 2 (alleging that Defendants' scheme was carried out by "fil[ing] last-minute objections to class action settlements…then threaten to or actually appeal the overruling of the objection to a higher court unless counsel agrees to participate in a 'mediation'…")

C. Federal Litigation Privilege

Similarly, Plaintiff's RICO claims are barred by the federal litigation privilege. Federal courts applying principles of federal common law, have, like the state courts, recognized the

6

litigation privilege. *See NSB Techs., Inc.*, 2004 WL 1918708, at *4 (finding it "appropriate to recognize a federal litigation privilege in this case" because such a privilege "provides litigants with unfettered access to courts, and the opportunity to fully litigate disputes, without fear of facing subsequent derivative tort actions"). In determining the scope of the federal privilege, the Seventh Circuit has explained that courts should look to "the law of the state whose law would govern in the absence of federal law," so as to both "take[] advantage of the 'states' "richer bodies of common law'" and "'minimize the number of different legal rules to which people are subject.'" *Id.* (quoting *Baravati v. Josephthal, Lyon & Ross*, 28 F.3d 704, 707 (7th Cir. 1994)). Here, as already explained, Illinois law provides absolute immunity to attorneys for their communications pertinent to litigation.

Absolute litigation immunity for lawyers promotes the value of finality. Society demands that "[l]itigation must sometime come to an end," *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 615 (7th Cir. 2006). If parties were not required "to redress injuries from misconduct in judicial proceedings in the same litigation," "litigation would *never* end." *USA Satellite & Cable*, 2016 WL 3262002, at *4 (emphasis added) (internal quotation marks omitted). Further, insulating attorneys from liability for their litigation conduct protects the zealous advocacy that is at the heart of our adversarial system. "All suitors, however bold and wicked, however virtuous and timid," have a right to press their claims in the courts, and those claims can be "justly resolved" only if attorneys are free to advocate for them without fear of liability in a later action. *Post v. Mendel*, 507 A.2d 351, 353 (Pa. 1986); *see also, e.g., NSB Techs.*, 2004 WL 1918708, at *4 ("The policy behind allowing … a litigation privilege is the same in federal courts as it is in California and Illinois; it provides litigants with unfettered access to courts, and the opportunity to fully litigate disputes, without fear of facing subsequent derivative tort actions."). To permit a RICO claim such as Plaintiffs are attempting to assert in the present case to override the litigation privilege would eviscerate these important values.

## II. PLAINTIFF HAS ONCE AGAIN FAILED TO PLEAD THE ELEMENTS NECESSARY TO SUSTAIN A RICO CLAIM

### A. Plaintiff Has Failed To Adequately Plead A Predicate Act By The Thut Defendants Necessary To Sustain A RICO Claim

#### 1. Judicial acts and conduct cannot constitute predicate acts for RICO purposes

"A long line of cases" have held, "as a matter of law," that "litigation activities" "cannot constitute predicate acts for the purposes of RICO." *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 174 (E.D.N.Y. 2010), *aff'd* 443 F. App'x 582 (2d Cir. 2011); *see also, e.g., United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) ("A number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility."); *Carter v. Rogers, Townsend, & Thomas, P.C.*, No. 1:12CV495, 2014 WL 800400, at *4 (M.D.N.C. Feb. 28, 2014) ("[C]ourts have refused to allow 'litigation activities' such as filing fraudulent documents or engaging in baseless litigation to serve as predicate acts for RICO." (internal quotation marks omitted)); *Nolan v. Galaxy Scientific Corp.*, 269 F. Supp. 2d 635, 643 (E.D. Pa. 2003) ("This court is unwilling to expand RICO liability for mail fraud in such a dramatic fashion as to include litigation papers and pre-litigation statements of legal position."); *Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 393 (S.D.N.Y. 2000) ("This Court has soundly rejected the contention that [litigation] conduct by attorneys can constitute mail or wire fraud."). These holdings are based on the commonsense notion that "Congress could not have intended that the mail" and wire fraud "statute[s] sweep up correspondence between attorneys, dealing at arm's length on behalf of their parties, concerning an issue in pending litigation." *Spiegel v. Cont'l Ill. Nat'l Bank*, 609 F. Supp. 1083, 1089 (N.D. Ill. 1985); *see also, e.g., Curtis & Assocs.*, 758 F. Supp. 2d at 174 ("Permitting the 'litigation activities' alleged here to serve as RICO predicate acts would" "effect a wholesale preemption of state civil law.").

8

Indeed, if Plaintiff's interpretation of RICO were tenable and if Plaintiff is allowed to pursue its RICO claims in this case, it "would result in the inundation of federal courts with civil RICO actions that could potentially subsume all other state and federal litigation in an endless cycle where any victorious litigant immediately sues opponents for RICO violations." *Curtis & Assoc.*, 758 F.Supp.2d at 173. No such result is warranted as Defendants' litigation activities cannot not form the basis of a predicate act for a RICO case.

### 2. Plaintiff fails to adequately plead any predicate act against the Thut Defendants

Even assuming, *arguendo*, that Defendants' litigation activities could form the basis of a predicate act for a RICO claim, Plaintiff's Amended Complaint still fails miserably to adequately plead a predicate act. This is especially so in relation to the Thut Defendants.

As an initial matter, virtually all of the predicate act allegations in the Amended Complaint simply "lump together" all Defendants as one. *See, e.g.*, Am Cmplt., at ¶¶ 145-47, 152-53, 172-74, 178-79, 189-90, 200-01, 209-10. Such practice is insufficient to state a RICO claim under Section 1962(c). *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998) ("Instead, for the most part, the amended complaint simply treats all defendants as one; such 'lumping together' of defendants is clearly insufficient to state a RICO claim under § 1962(c)"). *see also Sanders v. JGWPT Holdings, Inc.*, 2016 U.S. Dist. LEXIS 97722, at *48-49 (N.D. Ill. July 26, 2016) (vague allegations generalizing and grouping defendants together insufficient to state predicate acts necessary for RICO claim); *Pelfresne v. Village of Rosemont*, 22 F.Supp.2d 756, 764 (N.D. Ill. 1998) (lumping defendants together to allege mail fraud was insufficient because plaintiff did not allege two specific mailings by each defendant).

The only predicate act that is specifically pleaded in relation to the Thut Defendants is alleged wire fraud regarding the submission of a claim form by Thut's daughter, Lindsey Thut, in *In re: Lifetime Fitness Inc*. *See* Am. Cmplt., at ¶¶162-66. As stated *supra*, filing an objection is a

9

litigation activity which cannot form the basis of a wire fraud claim. Further, "mail and wire fraud acts must be pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure." *Nammari v. Town of Winfield*, 2008 U.S. Dist. LEXIS 87956, at *20 (N. D. Ind. Oct. 29, 2008). Plaintiff has thoroughly failed to plead wire fraud with the particularity required under Fed. R. Civ. P. 9(b).

Plaintiff summarily alleges that "…Illinois Objector Enterprise member Thut used the internet to submit a fraudulent claim form in a class action pending in federal court to the goals of the Illinois Objector Enterprise." *See* Am. Cmplt., at ¶ 164. However, nowhere does Plaintiff identify what statement contained in claim form is false as required to state a fraud claim under Rule 9(b). *See, e.g., Curtis & Assoc.*, 758 F.Supp.2d at 177 (finding no predicate acts of mail and wire fraud under Rule 9(b) where "plaintiffs fail to allege which, if any, statements made by the defendants, whether within the litigation-related documents identified in the Complaint or otherwise were allegedly false or misleading"). Further, Plaintiff recites deposition testimony where Lindsey Thut answers "I'm not sure" and "I don't know" in answers to specific questions about the objection that was filed. It is difficult to understand how or why Plaintiff believes those responses equate to fraud or misconduct by the Thut Defendants. *See Vollmer v. Selden*, 350 F.3d 656, 662 (7th Cir. 2003) ("We find…the plaintiff's level of familiarity with the details of his case to be of little relevance in determining the specific purpose of his counsel in initiating such case").

Plaintiff's attempts to plead predicate acts under Section 1962(d) by lumping all Defendants together fare no better. All of the predicate acts in Plaintiff's laundry list suffer from pleading defects. Plaintiff's attempt to state a claim under the Hobbs Act, 18 U.S.C. § 1951 (*see* Am. Cmplt., at ¶¶ 141-50) fails because "the mere act of filing a lawsuit and demanding a settlement agreement, however baseless the lawsuit or settlement demand may be, does not qualify as extortion under § 1951." *Kimberlin v. Nat'l Bloggers Club*, 2015 WL 1242763, at *8 (D. Md., Mar. 17,

10

2015); *Atl. Recording Corp. v. Raleigh*, 2008 WL 3890387, at *5 (E.D. Mo. Aug. 18, 2008); *Heights Cmty. Cong. v. Smythe, Cramer Co.*, 862 F.Supp. 204, 207 (N.D. Ohio 1994). This is so even where the alleged misconduct involves the alleged "systematic use of unjustified lawsuits as part of a more extensive extortion scheme to obtain money." *Town of Gulf Stream v. O'Boyle*, 654 Fed. Appx. 439, 443 (11th Cir. 2016).

Plaintiff's also seeks in the Amended Complaint to assert predicate acts of obstruction of justice (*see* Am. Cmplt., at ¶¶ 172-76); witness tampering (*id*., at ¶¶ 177-88); and bribery (*id.*, at ¶¶ 189-208). In each instance, Plaintiff provides a table of cases and then summarily argues that an offence occurred in each case. Plaintiff provides no indication of what witnesses were allegedly tampered with or bribed in any case, how they were bribed or tampered with, or how any such bribing or tampering caused any harm to Plaintiff in cases with which it had no interest. Such conclusory pleading is not permitted and not sufficient to avoid dismissal under Rule 12(b)(6). *Pena v. Int'l Union of Operating Eng., Local 150*, 2009 U.S. Dist. LEXIS 62263, at *5 (N.D. Ill. July 21, 2009) ("Threadbare recitals of a cause of action, supported by mere conclusory statements do not suffice [under Rule 12(b)(6)].").

Further, the gravamen of Plaintiff's claims for obstruction of justice, witness tampering, and bribery is that Defendants filed objections on behalf of litigants who later gave deposition where they allegedly reveal that they are "invariably ignorant of their objections at the time they make them, have only the vaguest understanding of class actions, and fail to review settlement documents." *See* Am. Cmplt., at ¶¶ 70-71. The Seventh Circuit has ruled that such evidence does not warrant the imposition of sanctions against an attorney. *Vollmer*, 350 F.3d at 662 ("We find that, in and of itself, the plaintiff's level of familiarity with the details of his case to be of little relevance in determining the specific purpose of his counsel in initiating such case. It certainly does not show that [objector's counsel] were attempting extortion"). Yet, Plaintiff now seeks to

11

transform conduct and evidence that does not even constitute sanctionable conduct into a crime. Plaintiff's efforts fall woefully short of stating a predicate act under RICO.

### B. Plaintiff Has Failed To Plead A Pattern of Racketeering Activity

As set forth *supra*, Plaintiff has utterly failed to establish that Defendants engaged in any predicate act of racketeering activity. Therefore, Plaintiff's conspiracy claim under Count II must fall also. *Curtis & Assoc.*, 758 F.Supp.2d at 179-80 ("Because plaintiff's substantive RICO claims are deficient and cannot survive a motion to dismiss, the RICO conspiracy claims…must also be dismissed"); *Sanders*, 2016 U.S. Dist. LEXIS 97722, at *49 ("Because Plaintiffs' § 1962(c) claim fails against all Defendants, Plaintiffs' RICO conspiracy claims under § 1962(d) fail as well").

### III. PLAINTIFF'S CLAIM UNDER THE ALL WRITS ACT (COUNT III) MUST BE DISMISSED

Count III of Plaintiff's Amended Complaint seeks to assert an action under the All Writs Act, 28 U.S.C. § 1651. The claim is virtually identical to Count II of Plaintiff original Complaint (Doc. No. 1, at pp. 43-46) and suffers from the same infirmities.

Simply, the All Writs Act does not authorize a cause of action such as Plaintiff seeks to assert in Count III of the Amended Complaint. The All Writs Act allows a district court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act only authorizes the issuance of writs "in aid of…jurisdiction." *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 943 (6th Cir. 2002); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1110 (11th Cir. 2004). This means that a federal court has the power to issue such commands…as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *Pennsylvania Bureau of Corrections v. U.S. Marshals Service*, 474 U.S. 34, 40 (1985) (emphasis added). The Act does not create any substantive federal jurisdiction; instead, it

is a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have, derived from some other source. *Klay*, 376 F.3d at 1099.

In the present case, Plaintiff has not and cannot allege that this Court has issued any prior order at all in need of effectuation. There is no basis therefore for a claim under the All Writs Act. Further, to the extent Plaintiff seeks an injunction requiring Defendants to withdraw any objections or appeals from overruled objections filed in state court proceedings (Am. Compl. ¶ 244), the requested relief violates the Anti-Injunction Act, 28 U.S.C. § 2283. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988); *Tropf*, 289 F.3d at 941.[1]

## IV. PLAINTIFF'S ABUSE OF PROCESS CLAIM MUST BE DISMISSED

Count IV of Plaintiff's Amended Complaint is also virtually identical to Count III of its original Complaint and still fails to state a viable claim for abuse of process under Illinois law. Plaintiff once again contends that Defendants abused the process of courts by objecting to class settlements. Plaintiff's claim is based upon a complete misconception of the tort of absue of process.

Under Illinois law, abuse of process has two elements: (1) the existence of an ulterior motive or purpose for the use of regular court process; and (2) an act in the use of *the process* not proper in the regular prosecution of the proceeding. *Doyle v. Shlensky*, 120 Ill.App.3d 807, 816 (1st Dist. 1983) (emphasis added); *Holiday Magic, Inc. v. Scott*, 4 Ill.App.3d 962, 967 (1st Dist. 1972).

---

[1] Further, in light of the seriousness of the remedy of restricting litigants' constitutional right to access to the courts, relief such as Plaintiff seeks in this case "should be a remedy of last resort." *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014). Where other remedies, such as sanctions under Fed. R. Civ. P. 11 or Ill. S. Ct. R. 137 are available, an injunction should not be entered. *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999); *Ringgold-Lockhart*, 761 F.3d at 1062. Here, other remedies are available as Plaintiff is pursuing a pending sanctions motion in Illinois state court in *Clark v. Gannett*.

Moreover, a lawyer who files a handful of objections, some of which his opponent deems meritless, comes nowhere close to the concept of the rare vexatious litigant enjoined under the All Writs Act, who has typically filed hundreds of cases on the same subject matter. *See, e.g., Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007) (defendant filed 400 separate but similar ADA cases); *In re: Martin-Trigona*, 737 F.2d 1254, 1256 (2nd Cir. 1984) (hundreds of vexatious lawsuits).

"Process is issued by the court, under its official seal and must be distinguished from pleadings." *Doyle*, 120 Ill.App.3d at 816 (dismissing claim for failure to allege any use of the court's process); *Holiday* Magic, 4 Ill.App.3d at 968 (same).

In *Villareal v. Arnold*, 2016 WL 7374272 (N.D. Ill. Dec. 20, 2016), a plaintiff claimed that defendant had abused the process of the court by filing a frivolous complaint in order to extort her. The court assumed that the defendant had filed the pleading for a forbidden purpose, but held there was no abuse of process because the filing was a party's pleading and did not employ the court's process. *Villareal*, at *3-4; *see also HITK Corp. v. Reinhard*, 1987 WL 25354 (N.D. Ill. 1987) (dismissing abuse of process claim because it did not allege defendant had caused court to issue an official order to do something that he would not otherwise be required to do); *Doyle*, 120 Ill.App.3d at 816 (same); *Holiday Magic, Inc.*, 4 Ill.App.3d at 967 (same).

In the present case, there was no use or misuse of the court's process and Plaintiff's claim must fail as a result. Plaintiff merely alleges that Defendants "filed bad-faith objections." *See* Am. Cmplt., at ¶ 246. This is not a use of the court's process necessary to sustain a claim for abuse of process. Further, in the interests of judicial economy and convenience, the Court should deny exercising pendent jurisdiction over Plaintiff's state law claim. *See, e.g., Curtis & Assoc.*, 758 F.Supp.2d at 180 (declining to exercise supplemental jurisdiction over state law claims where RICO claim cannot survive motion to dismiss).

V.  **THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS PREMISED UPON CONDUCT IN STATE COURT PROCEEDINGS UNDER THE "ROOKER-FELDMAN DOCTRINE"**

Plaintiff's initial Complaint and its Amended Complaint largely focus on Defendants' actions in a case pending in the Circuit Court of Cook County - *Clark v. Gannett Co.*, Case No. 16 CH 06603. *See, e.g.*, Am. Cmplt, at ¶¶ 85-93. Indeed, it is the only one of the cases cited by Plaintiff in its Amended Complaint in which Plaintiff claims it has incurred damages. *Id.*, at ¶ 93.

14

In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Supreme Court explained that the Supreme Court itself "is the only federal court that may review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). The "*Rooker–Feldman* doctrine," therefore, "prevents the lower federal courts from exercising jurisdiction over cases brought by 'state court losers' challenging 'state-court judgments rendered before the district court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

The straightforward application of *Rooker–Feldman* in this case makes it clear that this Court lacks subject-matter jurisdiction over Plaintiff's claims to the extent they are based on the *Gannett* case or any other state court matters. Plaintiff is seeking to recover damages caused by conduct that allegedly occurred in Illinois state court in the *Gannett* case. While Plaintiff's "complaint does not explicitly request" this Court "to overturn" the results of these underlying cases, "that is not the only circumstance in which *Rooker–Feldman* applies." *Brown v. Bowman*, 668 F.3d 437, 442–43 (7th Cir. 2012). Instead, the Seventh Circuit repeatedly has held that the doctrine "applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations." *Kelley*, 548 F.3d at 603. In other words, *Rooker–Feldman* "applies when the state court's judgment is the source of the injury of which [the] plaintiff[] complain[s] in federal court." *Harold*, 773 F.3d at 885. It is only if the plaintiff's injury is "independent of" state-court litigation—for instance, "[i]f the state court just failed to remedy an injury that predated the litigation"—that the claim survives *Rooker–Feldman*. *Id.* at 886. Such is not the case here. In fact, the *Gannett* case is still proceeding and Plaintiff is currently seeking redress with the Illinois state court through a sanctions motion. *Rooker Feldman* thus bars Plaintiff's claim.

15

## CONCLUSION

For all of these reasons, Defendants, Noonan Perillo & Thut, Ltd., and Jeffery C. Thut, respectfully request the Plaintiff's Amended Complaint be dismissed with prejudice and such other relief as the Court deems just and proper.

           Respectfully submitted,

           NOONAN PERILLO & THUT LTD. and
           C. JEFFERY THUT

           By:____/s/ Joseph R. Marconi_____
                  One of Their Attorneys

Joseph R. Marconi (ARDC #01760173)
Victor J. Pioli (ARDC #6256527)
JOHNSON & BELL, LTD.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603
T: (312) 372-0770
F: (312) 372-9818

*Attorneys for Defendants,*
 *Noonan Perillo & Thut, Ltd.*
 *and C. Jeffery Thut*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ Victor J. Pioli
One of the Attorneys for Defendants,
NOONAN PERILLO & THUT LTD. and
C. JEFFERY THUT