# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| EDELSON PC, an Illinois professional corporation, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 16 C 11057 |
| THE BANDAS LAW FIRM PC, a Texas professional corporation, CHRISTOPHER BANDAS, an individual, LAW OFFICES OF DARRELL PALMER PC d/b/a DARRELL PALMER LAW OFFICE, a suspended California professional corporation, JOSEPH DARRELL PALMER, an individual, NOONAN PERILLO & THUT LTD., an Illinois corporation, C. JEFFREY THUT, an individual, GARY STEWART, an individual and JOHN DOES 1-20, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

The parties to this case are all involved in class action litigation, but the two sides play very different roles. Plaintiff Edelson PC is an Illinois law firm that frequently represents consumers in class action lawsuits. Defendants regularly involve themselves in these case by filing what Plaintiff alleges are frivolous objections in order to leverage lucrative payoffs. Plaintiff alleges that class counsel agree to these payoffs because the alternative is unacceptable: the price to be paid for resisting demands of these "professional objectors" is delayed relief for class members and a long and costly appeals process. Plaintiff brings this suit on behalf of itself and others similarly affected by the Defendants' allegedly extortionate practices. Defendants in this case include Texas attorney Christopher Bandas and his firm, The Bandas Law Firm PC (collectively, "Bandas"); California attorney Joseph Darrell Palmer and his firm, Law Offices of Darrell Palmer PC (collectively "Palmer"); and Illinois attorney C. Jeffrey Thut and his firm, Noonan Perillo & Thut Ltd. (collectively, "Thut"). Plaintiff has also sued numerous other non-attorneys—

California resident Gary Stewart and twenty additional John Doe Defendants—who allegedly aided Bandas, Palmer, and Thut by identifying class action lawsuits and serving as class objectors.

Although courts nationwide have denounced Defendants' behavior—and, in the case of Palmer, suspended him from the practice of law—Plaintiff alleges that Defendants' conduct amounts to something more: criminal racketeering. Plaintiff sued Defendants for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–68, alleging a pattern of racketeering activity that includes extortion, bribery, and money laundering, among other offenses. (First Am. Compl. [50] ("FAC"), ¶¶ 9–10.) Plaintiff also asserted claims under Illinois state law for abuse of process and the unauthorized practice of law. (*Id.*) Finally, Plaintiff urged the court to label Bandas, Thut, and Palmer "vexatious litigants" and issue a permanent injunction pursuant to the All Writs Act, 28 U.S.C. § 1651. (*Id.*) Defendants Bandas [63], Thut [69], and Stewart [66] moved to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

In a previous opinion, this court granted Defendants' motions in part and dismissed Plaintiff's federal RICO claims for failure to allege predicate acts of racketeering. *See Edelson PC v. Bandas Law Firm PC*, No. 16 C 11057, 2018 WL 723287, at *2 (N.D. Ill. Feb. 6, 2018). The court reserved judgment on Plaintiff's state law claims, however, pending further briefing on whether it had subject-matter jurisdiction to hear them, following dismissal of the related federal claims.[1] *Id.* at *13. In response to the court's order to show cause, Plaintiff argues that its state law claims are properly before the court under either supplemental jurisdiction, 28 U.S.C. § 1367, or traditional diversity jurisdiction, 28 U.S.C. § 1332(a). (Plaintiff's Response to Order to Show

---

[1]     As will be discussed further, a typographical error in the concluding paragraph of the court's initial opinion suggested that the court also dismissed Plaintiff's Illinois abuse of process claim (Count IV). *See Edelson*, 2018 WL 723287, at *14. Despite the Defendants' arguments to the contrary, the court explicitly avoided ruling on Plaintiff's state-law claims. This error has since been fixed; Counts III, IV, and V all remain.

Cause [96] ("Pl.'s Juris. Br."), 2.) Defendant Bandas responds that supplemental jurisdiction is improper because Illinois courts remain open to Plaintiff and the putative class, and, further, that Plaintiff cannot meet the $75,000 amount in controversy threshold required to bring this suit in diversity. (Bandas's Response in Opposition to Pl.'s Juris. Br. [101] ("Bandas's Juris. Resp."), 2.)

For the reasons stated, the court is satisfied that it has subject-matter jurisdiction to hear Plaintiff's state-law claims. On their merits, the Defendants' motions to dismiss the Plaintiff's state-law claims are granted in part and denied in part.

## BACKGROUND

This court discussed the details of the Defendants' alleged scheme at length in its previous opinion, and will include only a brief overview of the relevant facts here. Defendants Bandas, Palmer, and Thut are, according to Plaintiff, some of the most prolific "professional" (or "serial") objectors to class action settlements in the United States. (FAC ¶¶ 37–38.) They abuse the nation's courts by filing frivolous, last-minute objections on behalf of purported class members that seek nothing in the way of substantive changes to the terms of the proposed class settlement. (*Id.*) Rather, the Defendants exploit the nuisance value of the objection—and of the appeal after the objection is inevitably overruled—in leveraging demands for hundreds of thousands of dollars from class counsel at secret mediation sessions. (*See generally id.* at ¶¶ 31, 37–60.) Far from benefitting the purported class on whose behalf they filed the objection, however, the Defendants keep nearly all of their ill-gotten gains for themselves as "attorneys' fees." (*Id.* at ¶¶ 42, 65–69.) Furthermore, Plaintiff claims that the objecting class members—often friends, family members, or business associates of Bandas and his partners—are themselves in on the scheme. (*Id.* at ¶ 64.) These individuals pretend to act in good faith, but have little to no understanding of the issues at hand or their reasons for objecting. (*Id.* at ¶¶ 61–74.) Instead, they withdraw their objections as

soon as the Defendants have extracted their unearned "attorneys' fees" from class counsel, in exchange for a nominal cut of the proceeds.[2]  (*Id.* at ¶¶ 42, 179–82.)

Plaintiff has identified fifteen cases since 2009 in which Defendants have repeated this same basic pattern—frivolously object, appeal its denial, settle out of court, withdraw—and suggests that, because the Defendants have hidden their activities in various cases, the true number is much larger.  (*Id.* at ¶¶ 37–41, 109–10.)  The subterfuge allegedly includes "ghostwriting" objections without signing the filed documents, failing to file appearances, and pretending that the objectors are acting *pro se*.  (*Id.* at ¶¶ 51, 82, 111–13, 127.)  Plaintiff believes that Defendants do all of this to avoid the risk of court sanctions.  Nevertheless, courts across the country have excoriated Defendants' exploitative, rent-seeking behavior in cases in which their involvement has come to light.  *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012); *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 159 n. 40 (E.D. La. 2013); *Garber v. Office of Comm'r of Baseball*, No. 12-CV-03704 (VEC), 2017 WL 752183, at *4–6 (S.D.N.Y. Feb. 27, 2017).

Plaintiff claims to have been injured by the Defendants' scheme in a recent class action lawsuit in Illinois state court regarding autodialed telemarketing calls: *Clark v. Gannett Co.*, Case No. 16-CH-06603 (Cir. Ct. Cook Cty., Ill.).  Attorneys affiliated with Plaintiff served as class counsel in *Gannett*, and in August 2016 the parties involved reached a classwide settlement. Before the court could approve the settlement, however, Thut filed an objection on behalf of Stewart.  (*Id.* at ¶¶ 56, 132.)  Although neither Bandas nor Palmer filed appearances in the *Gannett* litigation, Plaintiff claims that Bandas orchestrated the entire scheme: Bandas prepared the objection, enlisted Thut as local counsel, and got Palmer to recruit Stewart, a friend, to act as the supposed class member.  (*Id.* at ¶¶ 56, 254, 259.)  Palmer's lack of candor is particularly troublesome considering he was (and still is) suspended from practicing law.  Shortly after he was

---

[2]      Bandas's standard client retainer agreement limits the amount due to the objector at just $5,000, regardless of the overall take.  (*Id.* at ¶¶ 42, 65–69.)

caught ghostwriting a purportedly *pro se* objection in another Illinois class action suit, the Review Department of the California State Bar suspended his license in January 2016 for "gross negligence" and "moral turpitude." (*Id.* at ¶¶ 51–54.) Plaintiff does not provide the details of Thut and Stewart's objection to the *Gannett* settlement other than mentioning that it was riddled with factual errors. (*Id.* at ¶ 83.) When Plaintiff called Thut to discuss the objection, Thut reportedly admitted that Bandas wrote the objection. Thut himself knew little about the dispute aside from the reported dollar value of the settlement: $5 million. (*Id.*)

Regardless of what the disputed terms were, the judge in the *Gannett* litigation overruled the Defendants' objection and granted final approval of the settlement on November 14, 2016. (*Id.* at ¶ 56.) This, according to Plaintiff, was exactly what Defendants intended:

> Soon after the court overruled Stewart's objection, Bandas communicated with Plaintiff via telephone and e-mail and proposed that the parties enlist a professional mediator to assist them in resolving Stewart's objection without pursuing the appeal process. (*Id.* at ¶ 86.) Plaintiff accepted Bandas's proposal and engaged in a telephone mediation session with Bandas and Bandas's proposed mediator, Rodney A. Max, on December 1, 2016. (*Id.* at ¶ 90.) Plaintiff avers that when it agreed to participate in the mediation, it was not aware that Max and Bandas had worked together before and that Max and Bandas would attempt to use a "confidentiality" agreement to shield their conduct during the mediation from courts. (*Id.* at ¶¶ 87–88.) According to Plaintiff, during the mediation, Bandas never proposed any changes to the class action settlement that Plaintiff had negotiated on behalf of the class members. (*Id.* at ¶ 91.) Instead, he simply demanded tribute; he asked for payment of $400,000 in "attorneys' fees" from Plaintiff and threatened to delay settlement payments to the class (and attorneys' fees to Plaintiff) by pursuing an appeal if Plaintiff refused to pay. (*Id.* at ¶ 92.) To avoid a delay in distribution of the settlement proceeds to the class, Plaintiff capitulated, agreeing to pay Bandas $225,000. (*Id.* at ¶ 93.) Plaintiff claims it had no real choice other than to pay Bandas: The costs of delaying the agreed settlement payments to the class and to class counsel, Plaintiff explains, would have jeopardized the law firm's ability to improve its infrastructure, cover its operating expenses, and pay off existing debt. Delay would impose additional costs, as well, including the cost of staff resources devoted to responding to class members awaiting the settlement recovery. (*Id.* at ¶ 6.) Plaintiff alleges that when it informed Defendants that it would disclose the parties' agreement and seek approval of the court, Bandas responded by falsely claiming that [unspecified] additional terms still needed to be negotiated and demanding that nothing about the agreement be reported to the court. (*Id.* at ¶ 93.)

*Edelson*, 2018 WL 723287, at *2 (footnotes omitted). Plaintiff filed this lawsuit against Bandas and his associates on December 5, 2016—just four days after the mediation session. Plaintiff

asserted that the Defendants' so-called "attorneys' fees" are little more than "protection money," and that the agreed-upon $225,000 payout was the product of Defendants' overall scheme to extort counsel in class action lawsuits. (FAC ¶¶ 1–2.)

The core of Plaintiff's complaint is that the Defendants violated the RICO Act by conducting, and conspiring to conduct, their "objector enterprise" through a pattern of racketeering activity (Counts I and II, respectively). Plaintiffs alleges that Defendants committed numerous predicate acts of racketeering in the course of their scheme, including extortion, mail and wire fraud, obstruction of justice, witness tampering, bribery, and money laundering. Next, Plaintiff requests that the court enjoin Bandas, Palmer, and Thut (the "Attorney Defendants") pursuant to the All Writs Act: labeling them "vexatious litigants" and prohibiting them from objecting in class action lawsuits without prior court approval (Count III). Finally, Plaintiff brings state-law claims for common law abuse of process (Count IV) and the unauthorized practice of law in violation of the Illinois Attorney Act, 705 ILCS 205/1 (Count V).[3]

Defendants Bandas, Thut, and Stewart all moved to dismiss the complaint for the failure to allege actionable "racketeering activity" punishable under the RICO Act. (*See, e.g.*, Memorandum in Support of Bandas's Motion to Dismiss [64] ("Bandas's MTD Br."), 1.) Defendants also claimed that, absent the federal causes of action, this court would lack subject-matter jurisdiction to hear the Plaintiff's remaining state-law claims. (*Id.* at 3.) Defendants cited the general rule that federal district courts should relinquish jurisdiction over pendent state-law claims when all federal claims are dismissed before trial. (*Id.* at 31–32) (citing *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994)). Defendants also challenged Plaintiff's assertion that the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), provided an independent basis for jurisdiction. (Bandas's MTD Br. 3.) Even assuming that jurisdiction does exist,

---

[3] With the exception of Count V, Plaintiff brings all of its claims on behalf of the putative class. Plaintiff asserts Count V for the unauthorized practice of law only on its own behalf.

Defendants argued, Plaintiff also failed to state claims for relief under Illinois law for abuse of process or the unauthorized practice of law. (*Id.* at 32–33.)

In an opinion dated February 6, 2018, this court partially agreed with the Defendants' arguments and dismissed Plaintiff's RICO claims. The court acknowledged the bad faith in Defendants' alleged conduct, but declined to characterize it as "racketeering activity." *Edelson*, 2018 WL 723287, at *2. Defendants had argued that a variety of privileges and immunity doctrines bar this suit, but the court deemed Plaintiff's RICO claims insufficient for a simpler reason: the Defendants' scheme did not amount to *criminal* "extortion." The court's conclusion was in line with "the overwhelming weight of authority" holding that threatened or actual bad-faith litigation is not criminalized by the Hobbs Act, 18 U.S.C. § 1951. *Id.* at *5–9. Furthermore, the court took note of the important role of legitimate objections in class action lawsuits, and expressed concern that extending criminal liability in this context could have a chilling effect on good-faith objectors and on settlement discussions in general. *Id.*

The other predicate racketeering acts alleged in the complaint fared no better. Many of Plaintiff's allegations—witness tampering, obstruction of justice, bribery, and money laundering— overlapped with the Hobbs Act extortion claim. *See id.* at *11–12. Because the underlying act of filing a bad faith objection for pecuniary gain is not a crime, the existence of an attorney-client agreement to share the proceeds of that objection could not constitute criminal bribery. *Id.* at *12. In a similar vein, Defendants' use of the proceeds of their frivolous objections to pay for further sham mediations did not constitute money laundering. *Id.* Finally, Plaintiff's claims that Defendants committed mail and wire fraud required a showing that Defendants' misrepresentations were "material" to Plaintiff's decision to yield to their demands. Instead, however, Plaintiff alleged that:

> . . . it agreed to pay Defendants out of a fear of economic harm, not out of faith in the neutrality of the mediator or confidence in the other side's good faith. Indeed, by the time Plaintiff agreed to pay Defendants, Plaintiff certainly knew that Defendants were not acting in good faith and that the mediation was a sham.

*Id.* at *10.  As a result, the court was compelled to dismiss Counts I and II of Edelson's complaint.  *See id.* at *12 (citing *Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Grp., Inc.*, No. 07 C 2898, 2009 WL 466802, at *15 (N.D. Ill. Feb. 23, 2009) ("Numerous courts have held that '[a]ny claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.'")).

Next, the court turned to the Plaintiff's remaining federal claim: the petition for an injunction under the All Writs Act.  The court agreed with Defendants that the All Writs Act does not provide an independent basis for jurisdiction or create a private cause of action.  *Edelson*, 2018 WL 723287, at *13 (citing *West v. Spellings*, 480 F. Supp. 2d 213, 218 (D.D.C. 2007)).  The court concluded that Plaintiff can request such an injunction only if jurisdiction existed over one of Plaintiff's state-law claims.  *Id.*

Unfortunately, the court was unable to determine from the parties' briefs whether that test was met.  Plaintiff had met CAFA's minimal-diversity requirement, and, despite Defendants' protestations, the court was also satisfied that Plaintiff met the $5 million amount in controversy requirement.  *Id.*  The parties had failed to address a final requirement for CAFA jurisdiction, however, as Plaintiff alleged that the proposed class "likely consists of at least 40 persons"—a number well below the 100 class members required by CAFA.  *Id.*  As a result, the court reserved judgment on the state-law claims, and, without commenting on the merits of those claims, ordered Plaintiff to show cause why they should not be dismissed.

Plaintiff responded to the court's order to show cause on February 22, 2018.  In its response, Plaintiff abandons the argument that jurisdiction exists under CAFA.  (Pl.'s Juris. Br. 2.)  Instead, Plaintiff now argues that this court may maintain supplemental jurisdiction over the state-law claims, notwithstanding its dismissal of the RICO claims, due to the risk that absent class members may be locked out of court entirely.  (*Id.*)  In the alternative, Plaintiff asserts that this court may hear its claims under standard diversity jurisdiction, provided the court severs Thut and the John Doe Defendants from the dispute in order to create the complete diversity required by

28 U.S.C. § 1332(a). (*Id.*) Defendants Bandas and Stewart have responded to Plaintiff's new brief. They argue that the continued exercise of supplemental jurisdiction is improper because Plaintiff has overstated the risk of harm to the purported class members: based on Illinois's Savings Statute, 735 ILCS 5/13-217, state courts remain open to them. (Bandas's Juris. Resp. 5–6.) As for diversity jurisdiction, Defendants appear to concede that the court may sever parties to create complete diversity, but they contend that Plaintiff has not yet alleged an injury in excess of the amount in controversy threshold. (*Id.* at 8–11.) Defendants also reassert the substantive objections in their original motions to dismiss, and urge the court to dismiss Plaintiff's state law claims under FED. R. CIV. P. 12(b)(6). Specifically, Defendants argue that filing an objection in a class action lawsuit is not a "process" of the court that can be abused, and that the Illinois Attorney Act prohibits Plaintiff from bringing a suit for the unauthorized practice of law in federal court. (*Id.* at 11–12; *see also* Bandas's MTD Br. 32–33.)

As a brief aside, Defendants make much of a typographical error (since corrected) in the final paragraph of the court's previous opinion. The court mistakenly stated that it granted the Defendants' motions to dismiss "except with respect to counts three and five of Plaintiff's complaint." *Edelson*, 2018 WL 723287, at *14. This sentence should have read "counts three, *four,* and five of Plaintiff's complaint." The court did not address the merits of Plaintiff's abuse of process claim, something that is obvious from the opinion as a whole. Defendants, though they attempt to take advantage of the court's error, appear to recognize as much in their responsive briefs and, tellingly, repeat their substantive objections to Count IV anyway.[4] (*See* Bandas's Juris. Resp. 4) ("The Court *did not address* the Bandas Defendants' arguments regarding whether Edelson could establish any of its state law claims.") (emphasis in original).

---

[4]     The court's error is the sole issue mentioned in Defendant Stewart's response to Plaintiff's jurisdictional brief—which he treats as signaling his dismissal from the case as a whole. (Stewart's Response in Opposition to Pl.'s Juris. Br. [102] ("Stewart's Juris. Resp."), 1–2.) Not so. Stewart is not named as a defendant in Counts III or V, but he remains party to this suit so long as Count IV survives.

**DISCUSSION**

I.     **Supplemental Jurisdiction**

Under the supplemental jurisdiction statute, 28 U.S.C. § 1367, federal district courts have the power to hear all other claims that are so related to the claims in the action over which the court has original jurisdiction "that they form part of the same case or controversy."  When federal claims are dismissed before trial, however, district courts "should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits."  *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)).  The Court of Appeals has identified three exceptions to this general rule: (1) "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court"; (2) "when substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort"; or (3) "when it is absolutely clear how the pendent claims can be decided."  *Wright*, 29 F.3d at 1251.

Plaintiff avers that the first exception applies in this case.  The statute of limitations for Illinois abuse of process claims is two years.  *See Withall v. Cap. Fed. Savs. of Am.*, 155 Ill. App. 3d 537, 544, 508 N.E.2d 363, 367–68 (1st Dist. 1987) (stating that the two-year statute of limitations commences on the date a court issues the "process" that was allegedly abused).  Plaintiffs assert that many of the putative class members were injured by the Defendants' objections in other class action lawsuits before the spring of 2016.  (Pl.'s Juris. Br. 2–3) (identifying six cases in which a class member's cause of action would have accrued no later than March 2016).  As a result, Plaintiff argues, Illinois courts are now closed to those members, and the court should retain supplemental jurisdiction to avoid unfair prejudice to the putative class as a whole. (*Id.* at 3–4.)

It is well-established that the commencement of a class action lawsuit in federal court tolls the statute of limitations for each member of the proposed class.  *See Collins v. Village of Palatine,*

*Ill.*, 875 F.3d 839, 840–41 (7th Cir. 2017) (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 550 (1974)); *see also Artis v. Dist. of Columbia*, 138 S. Ct. 594, 598 (2018).  The same rule applies for class action lawsuits brought in Illinois courts.  *See Portwood v. Ford Motor Co.*, 183 Ill. 2d 459, 463, 701 N.E.2d 1102, 1103 (1998).  Plaintiff correctly observes, however, that Illinois does not recognize "cross-jurisdictional tolling" for class actions originally filed in federal court that parties later seek to bring in state court.  *See id.* at 465–66, 701 N.E.2d at 1104.

This may be true, but, as Defendants recognize, this limitation has no bearing on the present dispute.  (*See* Bandas's Juris. Resp. 5–7.)  The Illinois Code of Civil Procedure states that any plaintiff whose case is dismissed by a federal district court for lack of jurisdiction may refile his case in state court within one year, "whether or not the time limitation for bringing such action expires during the pendency of [the federal case]."  735 ILCS 5/13-217.  This "rule of tolling," *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008), appears to apply in this case.  The statute of limitations for the unnamed class members allegedly injured in the six previous lawsuits identified by Plaintiff had not expired as of the date Plaintiff filed this federal suit.  As a result, a dismissal for lack of jurisdiction would give them another year to refile their claims in state court.  *See id.* ("[Section 5/13-217] means that Davis is not barred by the statute of limitations from filing her defamation claim in state court. . . . Thus, the court did not abuse its discretion in declining to exercise jurisdiction over Davis's defamation claim."); *see also White v. City of Chicago*, 149 F. Supp. 3d 974, 983–84 (N.D. Ill. 2016); *Aberman v. Bd. of Educ. of City of Chicago*, 242 F. Supp. 3d 672, 695 (N.D. Ill. 2017).  Accordingly, the general rule applies in this case, and the supplemental jurisdiction statute does not support continuing jurisdiction over Plaintiff's remaining state-law claims.

## II.    Diversity Jurisdiction

As stated, Plaintiff originally claimed that subject-matter jurisdiction existed under CAFA's modified diversity jurisdiction provisions.  Although the parties are undoubtedly "minimally diverse," this court questioned whether Plaintiff's complaint alleged that the putative class

included at least 100 members, as required by CAFA.  *Edelson*, 2018 WL 723287, at *13 (citing 28 U.S.C. § 1332(d)(5)(B)).  In response to the court's order to show cause, Plaintiff now argues that this court may hear its state-law claims under traditional rules of diversity jurisdiction, which require complete diversity of citizenship and an amount in controversy of more than $75,000.  (Pl.'s Juris. Br. 4) (citing 18 U.S.C. § 1332(a)).  Plaintiff concedes that complete diversity does not currently exist: both Plaintiff and Defendant Thut are Illinois citizens.  Plaintiff also concedes that John Doe defendants are not permitted in diversity cases.  (*Id.* at 5) (citing *Howell v. Tribune Entm't Co.*, 106 F.3d 215, 218 (7th Cir. 1997)).  Accordingly, Plaintiff requests that this court sever and dismiss those defendants from the case in order to create complete diversity and exercise jurisdiction under Section 1332(a).

Federal Rule of Civil Procedure 21 allows district courts "to dismiss a dispensable party whose presence spoils statutory diversity jurisdiction" in lieu of dismissing the suit.  *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 380 (7th Cir. 2000) (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989)); *see also Teamsters Local Union No. 727 Health & Welfare Fund v. L & R Group of Cos.*, 844 F.3d 649, 652 (7th Cir. 2016).  This rule exists to prevent the needless waste that would arise "[i]f a suit c[ould] start over in the same court immediately after being tossed out[.]"  *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004).  The question for this court, then, is whether Thut and the Doe Defendants are dispensable parties.

The court concludes that they are.  Indispensable parties are those without whom "the court cannot afford complete relief."  FED. R. CIV. P. 19(a)(1)(A).  Dismissal will not deprive Thut or the Does of their ability to protect any relevant interest, and it will not harm the remaining Defendants by leaving them subject to excess liability.  *See id.*; *Altom Transport, Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416, 420–21 (7th Cir. 2016).  That Thut is not even a party to Plaintiff's unauthorized practice of law claim simply reinforces the court's conclusion.  Defendants appear to concede that dismissal is proper as well.  Bandas does not object to dismissing Thut and the Doe Defendants in order to create complete diversity.  (*See* Bandas's

Juris. Resp. 7.) Thut did not file a brief in response to Plaintiff's jurisdictional arguments, but the court assumes that he has no objection to being dismissed from this lawsuit either.

Despite agreeing that this court may sever and dismiss Thut and the Does from Plaintiff's lawsuit, Bandas maintains that more is required to establish complete diversity. Bandas asserts that this court must also dismiss any putative class members who are citizens of California or Texas—the states in which remaining Defendants Bandas, Palmer, and Stewart reside. (*Id.*) This objection is poorly founded. It is black-letter law that the citizenship of putative class members is irrelevant for diversity purposes. *Coleman v. Labor & Indus. Rev. Comm. of Wisc.*, 860 F.3d 461, 474 (7th Cir. 2017); *Snyder v. Harris*, 394 U.S. 332, 340 (1969).

Finally, although Defendant Bandas contests whether Plaintiff has met the amount in controversy threshold as well, there is no serious case to be made that Plaintiff has not put more than $75,000 in dispute. Plaintiff lists a variety of alleged injuries that it claims exceed $75,000 (*see* Plaintiff's Reply in Support of Jurisdiction [105] ("Pl.'s Juris. Reply"), 6–14), but only one bears mentioning. This case is, at its core, a dispute over whether Plaintiff must pay Defendants the $225,000 in "attorneys' fees" from the *Gannett* litigation. (FAC ¶¶ 92–93.) It is undisputed that Plaintiff has not yet paid any money to Defendants—who, for their part, deny that a contract was formed at all.[5] This, however, does not deprive the court of subject-matter jurisdiction. Plaintiff takes the position that an agreement was reached, and asserts that the question of its enforceability (or unconscionability) concerns the merits of the dispute, not the jurisdictional

---

[5] Bandas also claims that Plaintiff is precluded from claiming that a contract exists because "the Cook County Circuit Court in *Gannett* . . . ruled that there was no enforceable settlement agreement." (Bandas's Juris. Resp. 8–9.) This argument fails for two reasons. For one, Bandas mischaracterizes the *Gannett* court's statements. The court declined to enforce the settlement in the context of a sanctions hearing and instead ordered an additional evidentiary hearing to address whether Bandas filed his class-action objection for improper reasons. (*See* Transcript of Proceedings in *Clark v. Gannett* held on 5/19/17, Ex. A to Bandas's Juris. Resp. [101-1], 6:3–15.) It did not make any findings on the validity of the settlement itself. Second, this hearing did not occur until May 19, 2017—six months after Plaintiff filed its federal complaint. The amount in controversy is determined at the outset of the case; "events after the suit begins do not affect the diversity jurisdiction." *Johnson*, 361 F.3d at 993.

requirements. (Pl.'s Juris. Reply 8–9.) From the face of the Amended Complaint, a decision in Plaintiff's favor will save it from having to pay out $225,000 to the Defendants. Plaintiff is seeking injunctive relief under the Illinois Attorney Act, so Bandas's cost of complying with that injunction would be at least $225,000 because he would be barred from collecting any fees from Plaintiff. *See, e.g., Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002) (discussing the "either viewpoint" rule of determining the amount in controversy). Furthermore, Illinois law permits punitive damages for abuse of process claims, *see Slovinski v. Elliot*, 237 Ill. 2d 51, 58, 927 N.E.2d 1221, 1225 (2010), and it is even likely that the trebled damages sought in each of Plaintiff since-dismissed RICO claims still count towards meeting the threshold as well. As stated by the Court of Appeals: "It is the *case*, rather than the *claim*, to which the $75,000 minimum applies. If the complaint as filed puts more than $75,000 at issue, then a district court has jurisdiction and may resolve on the merits every legal theory and aspect of damages." *Johnson*, 361 F.3d at 993 (emphasis in original). Overall, there is no legal certainty that the benefit to Plaintiff or cost to Defendants will be less than $75,000. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

III.    **Defendants' Motions to Dismiss Plaintiff's State-Law Claims**

Now that it has dismissed Thut and the twenty John Doe Defendants from this suit, the court is satisfied that is has subject-matter to hear the merits of Plaintiff's state-law claims. The court therefore turns to the Defendants' Motions to Dismiss [63, 66] for failure to state a claim under FED. R. CIV. P. 12(b)(6). When reviewing a motion to dismiss, a court treats all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017).

A.    **Abuse of Process**

Plaintiff alleges that Defendants committed the common law tort of abuse of process by manipulating the class-action objection process to serve their own ends. By filing bad-faith objections and wasteful appeals with the aim of "extorting" class counsel into paying them to go

away, Plaintiff claims, Defendants "have instituted proceedings against Plaintiff and the Class for an improper purpose" beyond the goals of the objection mechanism. (FAC ¶¶ 246–47.) To plead an abuse of process, Illinois law requires "(1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Pace v. Timmerman's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 757 (7th Cir. 2015) (quoting *Kumar v. Bornstein*, 354 Ill. App. 3d 159, 165, 820 N.E.2d 1167, 1173 (2d Dist. 2004)) (internal quotation marks omitted). The first element requires a plaintiff to plead facts showing that the defendant instituted proceedings against him for an improper purpose, such as extortion. *Kumar*, 354 Ill. App. 3d at 165, 820 N.E.2d at 1173. The second element requires a plaintiff to show that the defendant used the process "to accomplish some result which is beyond the purview of the process," or which compels plaintiff to do some collateral thing he could not legally be compelled to do. *Id.*; *Comm. Nat. Bank in Monmouth v. McCrery*, 156 Ill. App. 3d 580, 583, 509 N.E.2d 122, 124 (3d Dist. 1987). "Because the tort of abuse of process is not favored under Illinois law, the elements must be strictly construed." *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 339 Ill. App. 3d 177, 183, 790 N.E.2d 925, 929–30 (2d Dist. 2003).

Plaintiffs' complaint adequately alleges the first element, but it is not clear that it meets the second. Illinois courts define "process" as "any means used by the court to acquire or exercise jurisdiction over a person or over specific property." *Neurosurgery*, 339 Ill. App. 3d at 183, 790 N.E.2d at 930. Actions solely undertaken by a party are not process; "[p]rocess is issued by the court, under its official seal." *Comm. Nat. Bank*, 156 Ill. App. 3d at 583, 509 N.E.2d at 124. For this reason, the act of instituting proceedings, even if for an improper purpose, is not considered an abuse of process. *See id.*; *Neurosurgery*, 339 Ill. App. 3d at 183, 790 N.E.2d at 930. Plaintiff's alleged injuries arose from Defendants' bad-faith objection and the threat of an appeal after the objection was overruled. These activities are analogous to initiating a lawsuit and do not implicate any "process" issued by a court. *See, e.g., Kirchner v. Greene*, 294 Ill. App. 3d 672, 684, 691 N.E.2d 107, 117 (1st Dist. 1998) (where no court process is involved, "it is axiomatic that there

can be no abuse of process").[6] Plaintiff concedes as much in its response, acknowledging that objections to class-action settlements are not "process." (Plaintiff's Combined Response to Defendants' Motions to Dismiss [76] ("Pl.'s MTD Resp."), 48.) Instead, Plaintiff points to the state-court order that *overruled* the Defendants' objection as constituting the required process: "Defendants are using the court's order overruling their objection to accomplish a result—payment of attorney's fees—that is entirely beyond the purview of the process." (*Id.*) This argument is defeated by Plaintiff's own allegations. Plaintiff alleged that the "extortion" in this case stemmed from the threat of a time- and money-wasting appeal by Defendants, not from the order itself. More importantly, Plaintiff's allegations do not support the conclusion that they were "compelled" to pay off the Defendants based on the court's order. *See Comm. Nat. Bank*, 156 Ill. App. 3d at 583, 509 N.E.2d at 124; *HITK Corp. v. Reinhard*, No. 87 C 191, 1987 WL 25354, at *5 (N.D. Ill. Nov. 23, 1987) ("The compulsion must be directly judicial; merely creating a situation in which the victim feels pressured to act in some way is not enough."). The *Gannett* court denied the Defendants' objection; it did not require anything of Plaintiff. Plaintiff undoubtedly found itself in a difficult position with respect to its duties as class counsel, but the complaint states plainly that Plaintiff *chose* to pay off Defendants rather than litigate an appeal that Plaintiff believes it almost certainly would have won. (*See* FAC ¶¶ 8, 85–93.)

Abuse of process "has been generally defined by the courts of Illinois as existing only in instances in which plaintiff has suffered an actual arrest or a seizure of property." *Stoller v.*

---

[6]     A recent decision from this District summarized factual scenarios from Illinois abuse of process cases and stated:

> [I]t is worth noting that actions such as (1) filing a legitimate lawsuit to use as leverage in negotiating an outcome in another lawsuit, (2) causing an opposing party to incur legal expenses, (3) calling police officers to help enforce legal visitation rights, and (4) pursuing a legitimate wage garnishment action, are all done by a party and not by the court; thus they would not support a claim for abuse of process.

*Villareal v. Arnold*, No. 16 CV 603, 2016 WL 7374272, at *3 (N.D. Ill. Dec. 20, 2016) (Shah, J.) (citing *Kirchner*, 294 Ill. App. 3d at 683, 691 N.E.2d at 116).

*Johnson*, 2017 IL App (1st) 161613-U, ¶ 36 (quoting *Holiday Magic, Inc. v. Scott*, 4 Ill. App. 3d 962, 969, 282 N.E.2d 452, 457 (1st Dist. 1972)).  Some Illinois court have clarified that an arrest or seizure is not strictly required to state a claim for abuse of process, but they have failed to elaborate on what other "proper factual context[s]" might qualify.  *Kumar*, 354 Ill. App. 3d at 165, 820 N.E.2d at 1173 (stating that "a proper factual setting without an arrest *may* be sufficient to sustain a claim," but dismissing the plaintiff's case anyway) (emphasis in original).  Clearly, in practice, the failure to allege an arrest or seizure is fatal to abuse of process claims.  *See, e.g., Holiday Magic*, 4 Ill. App. 3d at 969, 282 N.E.2d at 457; *Neurosurgery*, 339 Ill. App. 3d at 184, 790 N.E.2d at 930; *Stoller*, 2017 IL App (1st) 161613-U, at ¶ 36.  As stated, the tort abuse of process is narrow and disfavored by Illinois law.  Plaintiff's alleged injury does not come close to meeting the usual standard.  This fact militates against expanding abuse of process liability to cover settlement demands that are, as explained earlier, difficult to distinguish from "lawful hard bargaining" or from "demands to settle ordinary *frivolous* lawsuits, which courts do not consider extortion." *Edelson*, 2018 WL 723287, at *7 (emphasis in original).[7]

Count IV of the Amended Complaint is dismissed.  As Count IV is the only remaining claim asserted against Defendant Stewart, Stewart is also dismissed from this lawsuit.

### B.    Unauthorized Practice of Law

Plaintiff's final claim seeks an injunction against Defendants Bandas and Palmer for the unauthorized practice of law pursuant to the Illinois Attorney Act.[8]  (FAC ¶¶ 251–63.)  Plaintiff alleges that Bandas prepared the *Gannett* objection, represented Stewart in the action, and coordinated the sham mediation session despite the fact that he "is not licensed to practice law

---

[7]    Although Bandas does not argue that Plaintiff's abuse of process claim is barred by issue preclusion, this court again notes that the *Gannett* court declined to issue sanctions against Defendants and concluded that Thut did not file the objection with an improper purpose. *Edelson*, 2018 WL 723287, at *14.

[8]    Plaintiff's First Amended Complaint lists the twenty John Doe Defendants in Count V as well, but, as discussed above, the court dismisses those defendants in order to establish diversity jurisdiction.  *Supra*, section II.

in Illinois, did not move for *pro hac vice* admission, and did not file an appearance with the Court in *Gannett* in order to avoid submitting himself to [its] jurisdiction[.]" (*Id.* at ¶¶ 254c, 259a.) Plaintiff accuses Palmer of the same actions. (*Id.* at ¶¶ 254a–b, 259c.) Palmer's involvement makes the violation particularly egregious, Plaintiff claims, because Palmer is currently suspended from practicing law by his home state of California. (*Id.*) Plaintiff seeks the injunction to prevent Bandas and Palmer from collecting any of the $225,000 in "attorneys' fees" that Bandas demanded at the mediation session in exchange for withdrawing the objection, and, more generally, from engaging in similar schemes in Illinois. (*Id.* at ¶¶ 257, 261–63.)

The Illinois Attorney Act states that "[n]o person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State" and, furthermore, that "[n]o person shall receive any compensation directly or indirectly for any legal services other than a regularly licensed attorney[.]" 705 ILCS 205/1. Although "no private right of action for damages exists under the Attorney Act for the unauthorized practice of law," the Illinois Supreme Court has held that aggrieved parties may sue for injunctive relief. *King v. First Cap. Fin. Servs. Corp.*, 215 Ill. 2d 1, 24, 828 N.E.2d 1155, 1168 (2005). Other attorneys and law firms have standing to sue for such an injunction "[b]ecause the practice of law by an entity not licensed constitutes an infringement upon the rights of those who are properly licensed." *Richard F. Mallen & Assocs., Ltd. v. Myinjuryclaim.com Corp.*, 329 Ill. App. 3d 953, 956, 769 N.E.2d 74, 76 (1st Dist. 2002); *see also King*, 215 Ill. 2d at 26, 828 N.E.2d at 1169 (same). Any person found to be engaging in the practice of law in Illinois without a license "is guilty of contempt of court and shall be punished accordingly, upon complaint being filed in any Circuit Court of this State." 705 ILCS 205/1. The Act specifies that "[s]uch proceedings *shall be conducted* in the Courts of the respective counties where the alleged contempt has been committed[.]" *Id.* (emphasis added).

Bandas argues that Plaintiff's claim for relief is barred by this final provision: "as the plain language of the statute reads, Edelson had to bring suit in the county in which the alleged

contempt was committed (i.e. Cook County)." (Bandas's MTD Br. 33.) In effect, Bandas contends that the statute strips jurisdiction from federal courts—but that has long been held impossible based on the Supremacy Clause of the U.S. Constitution. *See Albert Trostel & Sons Co. v. Notz*, 679 F.3d 627, 629 (7th Cir. 2012) (citing *M'Kim v. Voorhies*, 11 U.S. (7 Cranch) 279, 280 (1812) and *Railway Co. v. Whitton's Admin.*, 80 U.S. (13 Wall.) 270, 286 (1872)). Instead of reading a state statute in a manner that would render it unconstitutional, the Court of Appeals has instructed that it is best to read statutory language which purports to confine actions to certain state courts "as allocating authority with [a state's] own judiciary"—i.e., as relating to *venue* rather than jurisdiction.[9] *Id.* For example, in *Albert Trostel & Sons Co. v. Notz*, 679 F.3d 627 (7th Cir. 2012), the Court of Appeals considered a provision of Wisconsin corporate law requiring a corporation to file an appraisal action "in the circuit court for the county where its principal office . . . is located"; that provision did not preclude the exercise of diversity jurisdiction by a federal court in the Eastern District of Wisconsin, the Seventh Circuit held. *Id.* at 629 (quoting Wis. Stat. § 180.1330(2)); *see also Truck Components Inc. v. Beatrice Co.*, 143 F.3d 1057, 1061–62 (7th Cir. 1998) (holding the same regarding a nearly identical provision in a Delaware statute). Given the Illinois Attorney Act's clear similarities to the Wisconsin statute addressed in *Albert Trostel & Sons*, this court concludes that the provision at issue simply governs venue within Illinois's own courts and cannot prevent a plaintiff from filing an action in diversity in federal court.

Admittedly, parties have rarely sought to enforce the Illinois Attorney Act in federal court, but there is no basis for concluding this is because there is a prohibition (jurisdictional or otherwise) against doing so. Bandas cites to *Lawrence v. Interstate Brands*, 278 Fed. Appx. 681 (7th Cir. 2008), for the proposition that "[o]nly the Supreme Court of Illinois has the power to discipline attorneys admitted to the Illinois Bar, and that court has delegated the task of

---

[9]        Defendants do not argue that the case should be dismissed for improper venue. In any event, this court is not convinced that the doctrine of *forum non conveniens* applies to make dismissal proper here. *See Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 866 (7th Cir. 2015) (discussing the relevant factors to consider).

investigating and prosecuting claims of attorney misconduct to the [Attorney Registration and Disciplinary Commission]." *Id.* at 684 (internal citations omitted). Plaintiff in that case, however, was explicitly invoking federal-question jurisdiction, not diversity jurisdiction as is the case here. *Id.* Another decision from the Court of Appeals, *United States v. Johnson*, 327 F.3d 554 (7th Cir. 2003), established that the inherent disciplinary powers of the federal courts exist in tandem with the statutory penalties outlined in the Illinois Attorney Act. *Id.* at 560–61 (rejecting the appellant's efforts to raise the Illinois Attorney Act as a defense against discipline imposed by other means). Despite Bandas's insistence to the contrary, the court's opinion did not suggest that federal courts may not hear Illinois Attorney Act claims. In fact, several courts in this district have reached the merits of plaintiffs' claims for violations of the Act, and none have mentioned that those claims should have been filed in state court. *See, e.g., Blair v. Supportkids, Inc.*, 222 F. Supp. 2d 1038, 1044–45 (N.D. Ill. 2002) (finding that the plaintiff stated a claim for relief under the Illinois Attorney Act) (St. Eve, J.); *Cady v. Sheahan*, No. 02 C 5989, 2003 WL 288472, at *5 (N.D. Ill. Feb. 7, 2003) (dismissing a plaintiff's claims under the Illinois Attorney Act on the merits) (Grady, J.).

Finally, Bandas launches a halfhearted attack on the substance of Plaintiff's claim for relief. Bandas does not contest Plaintiff's categorization of his and Palmer's activities in the *Gannett* litigation as constituting the "practice of law"—which it almost certainly was. *See, e.g., People ex rel. Courtney v. Assoc. of Real Estate Taxpayers of Ill.*, 354 Ill. 102, 109–10, 187 N.E. 823, 826 (1933) (stating that the practice of law includes "the preparation of pleadings," "the management of [ ] actions," and "in general, all advice to clients"); *People v. Peters*, 10 Ill. 2d 577, 581–82, 141 N.E.2d 9, 11 (1957) ("[T]he practice of law involves not only appearance in court in connection with litigation, but also services rendered out of court and includes the giving of advice or the rendering of any service requiring the use of any legal skill or knowledge[.]"). Instead, Bandas states only that "Edelson [ ] does not allege that Mr. Bandas is an unlicensed attorney. Rather, the amended complaint acknowledges that he is an attorney, but claims that he is not licensed to practice in Illinois and never moved for *pro hac vice* admission." (Bandas's Reply to

Pl.'s MTD Resp. [84] ("Bandas's MTD Reply"), 29) (internal citations omitted). This clumsy attempt at linguistic gymnastics ignores the text of the statute. The Illinois Attorney Act does not simply prohibit the practice of law by "non-attorneys"; it prohibits the practice of law by *anyone* not licensed by the State of Illinois. *See* 705 ILCS 205/1; *Lozoff v. Shore Heights, Ltd.*, 66 Ill. 2d 398, 401–02, 362 N.E.2d 1047, 1048–49 (1977) (holding that the Act prohibited a Wisconsin attorney from collecting legal fees related to the negotiation of a land sale in Illinois). Bandas is licensed to practice only in Texas, and Palmer is not licensed to practice anywhere.

This is not to say that Plaintiff has already proved its case that either Bandas or Palmer performed the alleged legal services *in Illinois* as required by the Act, however. *See Lozoff*, 66 Ill. 2d at 402–03, 362 N.E.2d at 1049 (recognizing that there may be "circumstances that will allow an out-of-State attorney who is [not admitted *pro hac vice*] to recover for legal services."); *Berthold Types Ltd. v. Abode Systems, Inc.*, 186 F. Supp. 2d 834, 837–38 (N.D. Ill. 2002) ("Section 205/1 does not bar recovery of attorneys' fees for their work in California simply because it relates to a case pending in federal court in Illinois."). It may perhaps be important that the mediation session, for example, was conducted telephonically between individuals then-residing in Texas (Bandas), California (Plaintiff's representative), and Florida (Max, the mediator). (*See* FAC ¶ 154.) Plaintiff has alleged that Bandas and Palmer covertly managed the *Gannett* litigation and drafted all of the pleadings for in-state figureheads (Thut and Stewart) with the explicit purpose of evading the court's jurisdiction. The court concludes only that these allegations are sufficient to state a plausible claim for the unauthorized practice of law. *See In re Heirich*, 10 Ill. 2d 357, 363–64, 140 N.E.2d 825, 828–29 (1956) (reviewing the disciplinary board's findings that an out-of-state attorney illegally conspired with Illinois attorneys to practice law in Illinois without a license).

## CONCLUSION

As this court stated in its previous opinion, "Defendants have engaged in a pattern of reprehensible conduct that has harmed Plaintiff and others and benefits no one other than Defendants themselves." *Edelson*, 2018 WL 723287, at *13. The court is troubled by the fact

that until now its decisions appear to leave Plaintiff and those similarly affected without an adequate remedy—and may fail to deter the Defendants from further rent-seeking. This court can only repeat its earlier advice that class counsel facing similar demands may be best served by calling the professional objector's bluff and seeing the objector's appeal through to its conclusion. *Id.* at *14. "In cases involving meritless, bad-faith objections, the likelihood of prevailing on appeal and recovering damages would likely be high." *Id.* The court also notes that the Supreme Court has recently transmitted an amendment of FED. R. CIV. P. 23 to Congress. If allowed to go into effect, the new Rule would require district court approval before any objector can withdraw an objection or appeal in exchange for money or other consideration. *See Proposed Amendments to the Federal Rules of Civil Procedure, Rules 5, 23, 62, and 65.1*, Slip Order at *11 (U.S. Apr. 26, 2018), https://www.supremecourt.gov/orders/courtorders/frcv18_5924.pdf; *see also Pearson v. Target Corp.*, 893 F.3d 980, 987 (7th Cir. 2018).

For the reasons stated, the court is satisfied by Plaintiff's showing that it has subject-matter jurisdiction to hear this dispute. Revisiting the Defendants' Motions to Dismiss [63, 66, 69] the Plaintiff's state-law claims, the court GRANTS the motions with respect to Count IV of the Amended Complaint, and DENIES them with respect to Count V. Defendants Thut, Stewart, and the John Doe Defendants are dismissed from this action. The case will proceed only on the injunctive relief sought in Count V of the Amended Complaint, which is asserted by Plaintiff on its own behalf against Defendants Bandas and Palmer. Plaintiff is welcome to re-assert its requests for judicial action pursuant to the All Writs Act during the course of the litigation.

ENTER:

Dated: July 20, 2018

_____
REBECCA R. PALLMEYER
United States District Judge